**2024-1757**

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

NATIONAL VETERANS LEGAL SERVICES PROGRAM, NATIONAL
CONSUMER LAW CENTER, ALLIANCE FOR JUSTICE, Plaintiffs-
Appellees,

v.

UNITED STATES, Defendant-Appellee.

v.

ERIC ALAN ISAACSON, Interested Party-Appellant

_____

Appeal from the United States District Court
for the District of Columbia
in 1:16-cv-00745-PLF
The Honorable Paul L. Friedman

APPELLANT'S OPENING BRIEF

ERIC ALAN ISAACSON
LAW OFFICE OF ERIC ALAN ISAACSON
6580 Avenida Mirola
La Jolla, CA 92037-6231
Telephone: (858) 263-9581
Email: ericalanisaacson@icloud.com
eri628@g.harvard.edu

**CORPRATE DISCLOSURE STATEMENT**

Eric Alan Isaacson is a natural person.

# TABLE OF CONTENTS

**Page**

CORPRATE DISCLOSURE STATEMENT ............................................... i

I. JURISDICTION .................................................................... 1

    A. Jurisdiction in the District Court ................................ 1

    B. Appellate Jurisdiction ............................................. 3

II. ISSUES PRESENTED ............................................................ 4

III. STATEMENT OF THE CASE ..................................................... 5

    A. Early Proceedings in the District Court ....................... 5

    B. Summary Judgment and Interlocutory Appeal ............... 8

    C. Settlement on Remand .......................................... 10

    D. Final Approval Opinion and Order ........................... 11

IV. SUMMARY OF ARGUMENT .................................................... 12

V. STANDARDS OF REVIEW ....................................................... 13

VI. ARGUMENT ...................................................................... 17

    A. The Little Tucker Act Divested the District Court of Jurisdiction Over Class Members Whose Claims Exceeded $10,000 Apiece ........................................ 17

    B. The Settlement's *Pro Rata* Allocation of Many Millions of Dollars to the Large PACER Users Who Were Fully Reimbursed by Their Clients or By Court Orders in Other Class Actions is Fundamentally Unfair .................... 40

    C. The District Court Strayed from Precedent and Abused its Discretion by Accepting Class Counsel's Request for 19.1% of the Settlement Fund, Effectively Compensating Attorney's at Rates Approaching $5,000 an Hour ................................................................. 47

D. The Supreme Court's Foundational Common-Fund Precedents Prohibit Paying "Service Awards" to Representative Plaintiffs ....................................................... 67

VII. CONCLUSION ................................................................... 70

# TABLE OF AUTHORITIES

**Page**

[Insert Table of Authorities **here**]

# I.    JURISDICTION

## A.    Jurisdiction in the District Court

The District Court was alleged to have subject-matter jurisdiction "under 28 U.S.C. §1331 and the Little Tucker Act, 28 U.S.C. §1346(a)," APX__(DE1:4¶5), which authorizes federal districts court to exercise jurisdiction over a "civil action or claim against the United States, not exceeding $10,000 in amount." 28 U.S.C. §1346(a)(2); *see United States v. Bormes,* 568 U.S. 6, 10 (2012); *United States v. Hohri,* 482 U.S. 64, 66-67 n.1 (1987).

Even if Little Tucker Act claims as initially pleaded comply with the $10,000 limitation, a district court loses jurisdiction if, over the course of the litigation, they eventually come to exceed $10,000. For "the question is settled—district courts lose their Little Tucker Act jurisdiction once the amount claimed accrues to more than $10,000, even though jurisdiction was previously proper in the district court." *Simanonok v. Simanonok,* 918 F.2d 947, 950-51 (Fed.Cir.1990); *see, e.g., Smith v. Orr,* 855 F.2d 1544, 1552-53 (Fed.Cir.1988).

A class action complies with the Little Tucker Act's jurisdictional limitation only if, throughout the litigation, "the 'claims of individual

members of the clas[s] do not exceed $10,000' apiece." *Bormes,* 568 U.S. at 10 n.1 (quoting *United States v. Will*, 449 U.S. 200, 211 n.10 (1980)). This Court accordingly holds that "[t]he claim of each member of the class must be examined separately to determine whether it meets the jurisdictional requirement," and that any class member for whom complete relief would total over $10,000 must be "dismissed for lack of jurisdiction." *Chula Vista City School District v. Bennett,* 824 F.2d 1573, 1579 (Fed.Cir.1987); *see Skaar v. McDonough,* 48 F.4th 1323, 1332 (Fed.Cir.2022)(citing and parenthetically quoting *Chula Vista*).

The District Court ignored these requirements. Its judgment approving the class-action Settlement in this case fails to exclude from the Settlement all individual Class Members whose claims came to more than $10,000. Most Class Members are short-term small-time users whose Class Period PACER billings totaled less than $350 apiece. Yet many are users whose Class Period PACER expenditures, reimbursed or not, run into the thousands of dollars. A significant number are large law firms, whose Class Period PACER expenditures run into the tens of thousands, or even hundreds of thousands, of dollars. But the District Court did nothing to exclude from this litigation, and from the Settlement

of this case, PACER's heaviest users—including large law firms and class-action lawyers—whose PACER payments for billings over the eight-year Class Period ran into very large amounts and produced claims exceeding the Little Tucker Act's $10,000 jurisdictional maximum. The Little Tucker Act bars jurisdiction over those Class Members' claims, requiring them to be excluded from the Settlement and "dismissed for lack of jurisdiction." *Chula Vista,* 824 F.2d at 1579.

## B. Appellate Jurisdiction

The District Court entered both its Opinion approving the settlement of this matter, APX___(DE169) and its Final Judgment and Order on Final Approval of Class Action Settlement, Attorney's Fees, Costs, and Service Awards, APX___(DE170), on March 20, 2024, thereby finally disposing of all claims asserted below. *See* APX__(DE169); APX___(DE170).

Objector-Appellant Eric Alan Isaacson, a member of the class who timely objected below, and who is bound by the judgment below, filed a timely notice of appeal on April 18, 2024, APX___(DE173), thereby exercising his right to appeal under *Devlin v. Scardelletti,* 536 U.S. 1, 14 (2002).

"[T]he Federal Circuit ... has exclusive jurisdiction 'of an appeal from a final decision of a district court of the United States ... if the jurisdiction of that court was based, in whole or in part, on' the Little Tucker Act." *Bormes,* 568 U.S. at 9 (quoting 28 U.S.C. §1295(a)(2)); *see Hohri,* 482 U.S. at 68-76.

## II.   ISSUES PRESENTED

Did the District Court err by including in the Settlement Class PACER users whose individual expenditures and resulting claims for the eight-year Class Period exceed the Little Tucker Act's $10,000 jurisdictional maximum?

Did the District Court err by approving the Settlement as fair, reasonable, and adequate, when Class Members with some of the largest Class Period PACER expenditures—including large law firms and class-action lawyers—already have been reimbursed for their Class Period PACER expenditures by their clients or through court orders in other class actions?

Did the District Court abuse its discretion by awarding Class Counsel attorney's fees in the amount of $23,863,345.02?

Did the District Court err by focusing on the claimed reasonableness of Class Counsel's request for a $23,863,345.02 fee, rather than starting with its own independent analysis to determine the reasonable attorney's fee award?

Did the District Court err by awarding the three Named Plaintiffs "service awards" or "incentive payments" of $10,000 apiece as compensation for their service as class representatives?

## III.  STATEMENT OF THE CASE

### A.    Early Proceedings in the District Court

Named Plaintiffs filed a class-action Complaint on April 21, 2016, APX___(DE1), alleging jurisdiction under the Little Tucker Act, 28 U.S.C. §1346(a)(2). APX___(DE1:14¶33) & APX___(DE1:4¶5).

The Named Plaintiffs asserted the Administrative Office of the U.S. Courts ["AO"] has been overbilling for access to documents on PACER that Congress determined should be made "freely available to the greatest extent possible." APX___(DE1:1) & APX___(DE1:6¶12) (both quoting S.Rep.107–174, 107th Cong., 2d Sess. 23 (2002)). In fact, the E-Government Act of 2002 authorizes PACER fees "as a charge for services rendered," but "only to the extent necessary" "to reimburse expenses in

providing these services." APX___(DE1:1) & APX___(DE1:6¶12) (both quoting 28 U.S.C. §1913 note).

The Named Plaintiffs alleged that the Government has been violating the legislative mandate by charging excessive fees, proceeds from which are diverted to improper uses, and that "noncompliance with the E-Government Act has inhibited public understanding of the courts and thwarted equal access to justice." APX___(DE1:2). They asserted that "the AO has further compounded those harms by discouraging fee waivers, even for pro se litigants, journalists, researchers, and nonprofits; by prohibiting the free transfer of information by those who obtain waivers; and by hiring private collection lawyers to sue people who cannot afford to pay the fees." APX___(DE1:2).

Challenging the government's overall fee structure and use of funds, they asked the District Court more "to determine that the PACER fee schedule violates the E-Government Act and to award them a full recovery of past overcharges." APX___(DE1:2). They asked the District Court to "[a]ward monetary relief for any PACER fees collected by the defendant in the past six years that are found to exceed the amount authorized by law," and also to "[a]ward the plaintiffs their costs,

expenses, and attorney's fees under 28 U.S.C. §2412 and/or from a common fund." APX___(DE1:15).

The Government moved to dismiss the action arguing that Named Plaintiffs had failed to exhaust remedies under user agreements that required them to "alert the PACER Service Center to any errors in billing within 90 days of the date of the bill." APX___(DE11:___-___). The District Court denied the Government's motion, APX___(DE11), noting that even "if the notification requirement constituted a contractual condition, it would not apply to the plaintiffs' challenges to the legality of the fee schedule." APX___(DE25:___). The Government filed its answer on December 19, 2016. APX___(DE27).

Even before the Government had even entered an appearance, Named Plaintiffs on May 2, 2016, filed a motion to certify the matter as a class action. APX___(DE8). Named Plaintiffs described "the relief the plaintiffs are seeking" as "a full refund of excess fees charged within the limitations period, plus a declaration that the fees violate the E-Government Act." APX___(DE8:16).

The District Court granted class certification on January 24, 2017. APX___(DE32) (order); APX___(DE33) (opinion). It certified a class of "All

individuals and entities who have paid fees for the use of PACER between April 21, 2010, and April 21, 2016, excluding class counsel in this case and federal government entities." APX___(DE32:1).

### B. Summary Judgment and Interlocutory Appeal

After both sides moved for summary judgment on liability, APX___(DE52), APX___(DE73), the District Court denied the Named Plaintiffs' motion and granted the Government's motion only in part. APX___(DE88); APX___(DE89). The District Court rejected the Named Plaintiffs' contention that PACER fees should be limited to marginal cost, rejected some of Plaintiffs' contentions concerning the appropriate use of PACER proceeds, but rejected the Government's contention that Named Plaintiffs had no claims at all. APX___(DE89). The District Court then certified its summary-judgment order for interlocutory appeals under 28 U.S.C. §1292(b), APX___(DE104), APX___(DE105), making way for both sides to take cross appeals to the Federal Circuit.

This Court affirmed. *NVLSP v. United States,* 968 F.3d 1340 (Fed.Cir.2020). It held that the E-Government Act "limits the use of PACER fees to expenses incurred in providing (1) electronic access for members of the public (2) to information stored on a federal court

docketing system." *NVLSP,* 968 F.3d at 1351-52. It disagreed with Named Plaintiffs' contentions concerning marginal cost, and affirmed the District Court's determination that Named Plaintiffs properly challenged some but not all uses of PACER proceeds. *See id.*

This Court noted in passing that "Plaintiffs alleged that each individual download of a public record for which they were charged gave rise to a separate 'illegal exaction' claim—that is, a claim that money was 'improperly paid, exacted, or taken from the claimant' in violation of law," *NVLSP,* 968 F.3d at 1345-46, but it did not pass on whether each download in fact amounted to a separate claim for purposes of the Little Tucker Act's $10,000 limitation. That issue was neither raised nor contested. This Court noted that the District Court had "certified one class claim: 'that the fees charged for accessing court records through the PACER system are higher than necessary to operate PACER and thus violate the E-Government Act, entitling plaintiffs to monetary relief from the excessive fees under the Little Tucker Act.'" *NVLSP,* 968 F.3d at 1346.

### C. Settlement on Remand

On remand the parties negotiated a $125 million common-fund Settlement, for which they sought and received the District Court's Preliminary Approval under Federal Rule of Civil Procedure 23(e). APX___(DE153).

In response to an email Class Notice Notice, Isaacson submitted a timely objection, APX___(DE166-5), in the manner set out in the Class Notice—by sending it to Class Counsel and emailing it to Judge Friedman on September 12, 2023. Neither Class Counsel nor the District Court placed any Class Members' objections on the public record, until Isaacson on October 11, 2023, submitted a further Written Statement to both Class Counsel and Judge Friedman, objecting to the impropriety of conducting settlement proceedings in secrecy. APX___(DE166-6). Class Counsel filed class members' objections later that day, just one day before the October 12, 2023, Final Approval Hearing. APX___(DE166).

Isaacson objected that the Settlement allocated to much money to pro rata distribution reimbursing large users, including law firms and class-action plaintiffs' counsel, who had already been reimbursed by clients or from settlements in other cases. APX___(DE166-5:___).

Isaacson also observed that the Little Tucker Act precluded including in the Settlement Class any Class Members whose PACER expenditures exceeded $10,000. APX(DE166-5:___). He objected to the amount of the requested attorney's fees, contending that Class Counsel would be adequately compensated by an unenhanced lodestar award—for which they had submitted inadequate documentation. APX___(DE166-5:2-3). Isaacson also objected that "service award" payments of $10,000 apiece to each of the Named Plaintiffs are prohibited by Supreme Court precedent. APX___(DE166-5___).

Isaacson appeared at the October 12, 2023, Final Approval Hearing to press his objections in person. APX___(DE175:36(13)-45(20)); APX___(DE175:84(13)-90(12).

### D. Final Approval Opinion and Order

On March 20, 2024, the District Court filed an opinion and judgment overruling Isaacson's objections, approving the Settlement as fair, reasonable and adequate, and giving Class Counsel and the Named Plaintiffs exactly what they asked for in attorney's fees and incentive awards. APX___(DE169) (Opinion); APX___(DE170) (Judgment).

The District Court "approve[d] the settlement agreement and award $23,863,345.02 in attorney's fees, $1,106,654.98 in costs, and $30,000 in service awards." APX___(DE169:1-2).

Isaacson filed a timely notice of appeal on April 18, 2024, APX___(DE173).

## IV.  SUMMARY OF ARGUMENT

The District Court plainly exceeded its jurisdiction by including in the Settlement Class PACER users whose Class Period PACER expenditures and resulting claims exceeded $10,000. *Infra* 17-40.

The District Court abused its discretion by allowing a pro rata allocation of many millions of dollars to the largest PACER users, many of which were already reimbursed by their own clients or from class-action settlements in other cases. *Infra* 40-47.

The District Court abused its discretion by awarding common-fund attorney's fees that compensate Class Counsel at what amount to hourly rates approaching $5,000. This Court's decision in *Health Republic* required the District Court to independently determine a reasonable fee, rather than deferring to Class Counsel's request for $23,863,345.02. *Infra* 47-67.

Finally, the District Court erred by awarding $10,000 apiece to each of the three Named Plaintiffs as "service awards" for their service as representative plaintiffs. The Supreme Court's foundational common-fund precedents condemn such payments to representative plaintiffs as both "decidedly objectionable" and "illegally made." *Trustees v. Greenough,* 105 U.S. 527, 537 (1882); *accord Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116, 122 (1885); *see Johnson v. NPAS Sols., LLC,* 975 F.3d 1244, 1248, 1255-61, 1264 (11th Cir.2020), *reh'g denied* 43 F.4th 1138 (11th Cir.2022). *Infra* 67-70.

## V. STANDARDS OF REVIEW

"Issues of jurisdiction receive plenary review on appeal." *Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1572 (Fed.Cir.1996); *see also International Custom Products v. United States,* 467 F.3d 1324, 1326 (Fed.Cir.2006)(jurisdiction reviewed de novo).

This Court reviews orders approving class-action settlements for abuse of discretion. *Haggart v. Woodley,* 809 F.3d 1336, 1346 (Fed.Cir.2016).

This Court "review[s] the determination of reasonable attorney fees for abuse of discretion. ... However, errors of law in the award of attorney

fees are corrected without deference." *Haggart,* 809 F.3d at 1354; *see, e.g., Health Republic Ins. Co. v. United States,* 58 F.4th 1365, 1372 (Fed.Cir.2023).

"A court abuses its discretion when it makes 'a clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings.'" *Health Republic,* 58 F.4th at 1372 (citations omitted). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.,* 572 U.S. 559, 564 (2014)(citation omitted). Thus, any questions of law underlying a district court's exercise of discretion, whether in approving a settlement or in determining attorney's fees, are subject to de novo review. *Haggart,* 809 F.3d at 1346, 1353 (reviewing "legal holdings de novo").

Moreover, "an abuse would occur in a Rule 23(b)(3) class action when the district court breaches its fiduciary duty to the absent class members." *Drazen v. Pinto,* 101 F.4th 1223, 1253 (11th Cir. 2024). For "[u]nder Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." *Drazen,* 101 F.4th

at 1253. Indeed, this Court holds that when reviewing a class-action settlement, or awarding attorney's fees to class counsel, "the trial court has a 'fiduciary duty' to protect the interests of the class, given the general non-alignment of the interests of class counsel and the class when a common-fund fee is proposed." *Health Republic,* 58 F.4th at 1377.

Whether "Supreme Court precedent prohibits incentive awards" to representative plaintiffs, as the Eleventh Circuit has held, *Johnson v. NPAS Sols., LLC,* 975 F.3d 1244, 1255 (11th Cir. 2020), presents a question of law subject to de novo review.

Reviewing a District Court's order evaluating the adequacy of a Little Tucker Act Rule 23 class-action settlement, and the accompanying award of attorney's fees, implicates the resolution of claims in proceedings over which this Court exercises exclusive appellate jurisdiction. 28 U.S.C. §1295(a)(2). Thus, all issues in this appeal relating to assertion and settlement of Little Tucker Act claims, and to any attorney's fees or service awards related to the settlement of those Little Tucker Act claims, are properly governed by Federal Circuit law, rather than by precedents of the regional Circuit in which the District Court sat. "It would contravene the intent of Congress to achieve uniformity in the

adjudication of Tucker Act claims ... to apply regional circuit law in appeals from district court Little Tucker Act decisions, since those cases usually involve the same legal issues as do appeals from the Claims Court." *United States v. One (1) 1979 Cadillac Coupe De Ville*, 833 F.2d 994, 998 (Fed.Cir.1987); *see Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 859 (Fed.Cir.1991)(review of sufficiency of evidence); *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.,* 908 F.2d 951, 953 (Fed.Cir.1990)("when the question on appeal is one involving substantive matters unique to the Federal Circuit, as in this case, we apply to related procedural issues the law of this circuit); *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983) (review for substantial evidence: "Logic, as well as the express congressional desire for uniformity, dictate that similar standards of review and the precedents of this circuit should obtain in a proceeding in a district court that is substantially identical, except for jurisdictional amount, to one in the Claims Court, and we so hold.").

## VI.  ARGUMENT

### A.  The Little Tucker Act Divested the District Court of Jurisdiction Over Class Members Whose Claims Exceeded $10,000 Apiece

The District Court exceeded the Little Tucker Act's jurisdictional grant by failing to exclude from the Settlement Class all Class Members' whose PACER expenditures and resulting claims for the eight-year Class Period exceed $10,000. For while the Tucker Act grants jurisdiction to the U.S. Court of Federal Claims to adjudicate monetary claims against the United States without regard to the amount at issue, 28 U.S.C. §1491(a)(1), the Little Tucker Act strictly limits regional district courts' jurisdictional authority in such matters to a "civil action or claim against the United States, not exceeding $10,000 in amount." 28 U.S.C. §1346(a)(2); *see Hohri,* 482 U.S. at 66-67 n.1; *Smith v. Orr,* 855 F.2d 1544, 1552 (Fed.Cir.1988).

A District Court may exercise jurisdiction over a Little Tucker Act class action only to the extent that "the 'claims of individual members of the clas[s] do not exceed $10,000' apiece." *Bormes,* 568 U.S. at 10 n.1 (quoting *Will*, 449 U.S. at 211 n.10). This Court accordingly holds that "[t]he claim of each member of the class must be examined separately to

determine whether it meets the jurisdictional requirement." *Chula Vista City School District v. Bennett,* 824 F.2d 1573, 1579 (Fed.Cir.1987); *see Skaar v. McDonough,* 48 F.4th 1323, 1332 (Fed.Cir.2022) (parenthetically quoting *Chula Vista*). Any class member for whom complete relief would total over $10,000 must be excluded from the class and "dismissed for lack of jurisdiction." *Chula Vista,* 824 F.2d at 1579.

Even if a complaint facially complies with the $10,000 limitation as initially filed, district courts lose their Little Tucker Act jurisdiction to the extent that, over the course of the litigation, the recovery sought on behalf of any plaintiff or class member grows to exceed $10,000. This Court holds "the question is settled—district courts lose their Little Tucker Act jurisdiction once the amount claimed accrues to more than $10,000, even though jurisdiction was previously proper in the district court." *Simanonok v. Simanonok,* 918 F.2d 947, 950-51 (Fed.Cir.1990). As the Department of Justice puts it: "Although the general rule is that jurisdiction is established at the time of filing, a claim which is for $10,000 or less when filed, but is accruing so that it will be for more than

$10,000 at the time of judgment is within the exclusive jurisdiction of the Court of Federal Claims."[1]

This has long been the rule. A district court held in *Otis Elevator Co. v. United States,* 18 F.Supp. 87, 88-89 (S.D.N.Y.1937), for example, that although claims against the United States were for less than $10,000 as originally pleaded, the district court lost its Little Tucker Act jurisdiction when the accumulation of interest on those claims caused the relief ultimately sought to exceed $10,000. Although district court decisions generally lack significant precedential weight, the Supreme Court cited *Otis Elevator* with approval in *Franklin v. United States,* 308 U.S. 516, 516 (1939), and again in *United States v. Sherwood,* 312 U.S. 584, 592 (1941); *see McMichael v. United States*, 63 F.Supp. 598, 600 (N.D.Ala.1945) (observing that *Otis Elevator* "also case has twice been cited with approval by the Supreme Court"). More recent authorities hold that even attorney's fees can push asserted claims' aggregate value over

---

[1] U.S. D.O.J., *Justice Manual: Civil Resource Manual* §47 (updated Sept. 2013) (favorably citing *Simanonok*), *available online at* https://www.justice.gov/jm/civil-resource-manual-47-court-federal-claims-litigation *and at* https://bit.ly/DOJcrm47 *and Permalinked at* https://perma.cc/7ADZ-35CP

the $10,000 jurisdictional limit. *See, e.g., Graham v. Henegar,* 640 F.2d 732, 733 (6th Cir.1981).

So the question here cannot be whether the District Court had jurisdiction over the Named Plaintiffs' claims when they filed their complaint in 2016, or even in 2017 when the District Court certified a six-year class period, over which each of the Named Plaintiffs claimed to have paid considerably less than $10,000 each in PACER fees.[2] The District Court plainly erred in 2023 when it approved a Settlement— covering an expanded eight-year Class Period—and failed to exclude all Class Members whose claims against the United States for the eight-year period exceed the Little Tucker Act's $10,000 limit. They should have

---

[2] In declarations supporting certification of the six-year class period, Named Plaintiff NCLC claimed to have paid some "$5,863.92 in fees to the PACER Service Center to obtain public court records within the past six years." APX___(DE29:1¶2) (Rossman Decl.). Named Plaintiff AFJ claimed it had paid "$391.40 in fees to the PACER Service Center to obtain public court records within the past six years." APX___(DE28:1¶2) (Goldberg Decl.). Named Plaintiff NVLSP's Executive Director attested that "[i]n 2016, NVLSP paid $317 in fees to PACER Service Center to obtain public court records," and "estimate[d] that we paid similar amounts annually over the past six years." APX__(DE30:1¶2 (Stichman Decl.).

been excluded from the Settlement Class, and "dismissed for lack of jurisdiction." *Chula Vista,* 824 F.2d at 1579.

Although most PACER registrants for the relevant Class Period were small-time users who paid $350 or less in Class Period PACER billings, the Settlement's class definition, as approved by the District Court, fails to exclude the many large law firms and class-action attorneys whose Class Period PACER billings ran into the tens of thousands or even of hundreds of thousands of dollars.

As a solo-practitioner who opened his own PACER Account (No. 4166698) in March of 2016, Isaacson paid Class Period PACER billings that totaled $3,823.50 over less than three years of the eight-year Class Period. APX___(DE165-6:19¶¶7-12); APX___(DE165-6:ExC[ECFpp31-40). If Isaacson, as a start-up solo-practitioner accrued $3,823.50 in PACER fees over less than three years then many users—including large law firms and plaintiffs' side class-action firms—must have paid Class Period PACER bills totaling tens and even hundreds of thousands of dollars. APX___(DE166-5:8). The District Court plainly exceeded its jurisdiction by including them all in the Class to whom the $125 million Settlement will be distributed. Those whose Class Period PACER

expenditures exceeded $10,000 should have been excluded from the Class, and their claims dismissed without prejudice.[3] The filing of this action tolled the limitations period for them to file their own individual actions in the U.S. Court of Federal claims.[4]

Named Plaintiffs chose to file this class action in the U.S. District Court for the District of Columbia, whose jurisdictional authority is limited to class members' whose claims do not exceed $10,000, rather than in the U.S. Court of Federal Claims which would have had jurisdiction over those with larger claims. They contend that they were justified in doing so because each download from PACER, typically costing $3.00 or less, is far below the Little Tucker Act's $10,000 jurisdictional limit. According to their Complaint, "[e]ach download thus gave rise to a separate claim for illegal exaction in violation of the E-Government Act." APX___(DE1:2). Their Complaint then conclusorily

_____

[3] *See Textile Prods., Inc. v. Mead Corp.,* 134 F.3d 1481, 1486 (Fed.Cir. 1998)(dismissals for want of subject-matter jurisdiction should be "without prejudice").

[4] *See China Agritech, Inc. v. Resh,* 584 U.S. 732, 736, 739-40, 747 (2018); *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 350 (1983); *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 553 (1974).

asserts: "Each plaintiff and putative class member has multiple individual illegal-exaction claims against the United States, none of which exceeds $10,000." APX___(DE1:4¶5). Allegations of legal conclusions like these are not to be credited.[5] They cannot be credited here as the remedy sought has always been defined in terms of the aggregate fees that Class Members paid for using PACER.[6] As approved by the District Court's judgment, the Settlement Agreement defines the Class not in terms of Class Period download transactions, but in terms of payments that Class Members made over the course of an expanded eight-year Class Period, "regardless of when such persons or entities used the PACER system." APX___(DE149-1:1[ECFp2]) (First Amendment to Settlement Agreement). The Class is explicitly defined in terms of "the

---

[5] *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

[6] The Complaint originally defined the Class as "All individuals and entities who have paid fees for the use of PACER within the past six years, excluding class counsel and agencies of the federal government." APX___(DE1:12¶27). It asked the District Court to "Award monetary relief for any PACER fees collected by the defendant in the past six years that are found to exceed the amount authorized by law." APX___(DE1:15).

payment of PACER fees in the specified period rather than the use of PACER in the specified period." APX___(DE149-1:1[ECFp2]) (First Amendment to Settlement Agreement).

Named Plaintiffs hoped to avoid the Little Tucker Act's limitation on jurisdiction by fragmenting these claims for overbilling over the eight-year Class Period into countless download-by-download subclaims. But as a matter of law, Little Tucker Act plaintiffs cannot evade the $10,000 limitation on jurisdiction by fragmenting claims into subsidiary parts. In backpay cases, for example, plaintiffs cannot be deemed to present a separate "claim" for each pay period, and this Court holds that if, over the course of litigation, the aggregate amount of backpay for additional pay periods grows to exceed $10,000, a district court necessarily loses its Little Tucker Act jurisdiction. *Simanonok v. Simanonok,* 918 F.2d 947, 950-51 (Fed.Cir.1990); *Smith v. Orr,* 855 F.2d 1544, 1552-53 (Fed.Cir.1988); *accord, e.g., Charles v. Rice,* 28 F.3d 1312, 1322 (1st Cir.1994)(following *Smith v. Orr*).

Appellate precedents have long held that claimants against the federal government cannot comply with the Little Tucker Act's $10,000 limit by fragmenting their case into multiple smaller claims. In *United*

*States v. Lindberg Corp.,* 882 F.2d 1158, 1164 (7th Cir.1989), for example, where a vendor to the United States sought recovery for the uncompensated taking of 265 gears. The Seventh Circuit rejected an invitation to consider the taking of each gear as a separate claim: "The appellant's breaking down the total amount to a less-than-$10,000 amount-per-gear is untenable. Any claim that Lindberg seeks to bring against the federal government must be brought in the United States Claims Court." *Id.*

Other courts have held in litigation over bonds that the total value or amount sought is the relevant claim for Tucker Act purposes, not the amount represented by each individual bond. *See, e.g., Watson's Estate v. Blumenthal,* 586 F.2d 925, 926-29 (2d Cir.1978)(suit on bonds of various series that in aggregated to claims in excess of $10,000); *Glaskin v. Klass,* 996 F.Supp. 67, 73 (D.Mass.1998)("Each bond involved in this action is a separate contract, but the dispute centers upon the reissuance applications, each of which encompassed multiple bonds," such that "'recovery on each [bond] would rise and fall on the same facts and legal arguments'")(quoting *United States v. Lindberg Corp.,* 686 F.Supp. 701, 705 (E.D.Wis.1987), *aff'd,* 882 F.2d 1158 (7th Cir.1989)); *Insurance Co. of*

*N. Am. v. United States,* 561 F.Supp. 106, 117 (E.D.Pa.1983)("The district court does not have the power to sever one claim against the US into multiple civil claims so that no claim is greater than $10,000.").

The precedents similarly reject plaintiffs' attempts, in cases involving real estate, to avoid the $10,000 limit by asserting their claims on a parcel-by-parcel basis, or by segregating damages by the year in which they were incurred, or by whether they are for past or future harm. In *Washington v. Udall,* 417 F.2d 1310, 1311 & 1320-21 (9th Cir.1969), where the State of Washington contested a federal agency's ruling limiting delivery of water to its agricultural properties, the Ninth Circuit rejected contentions "that a controversy involving separate parcels of real property creates inherently separate causes of action." The "same factual and legal issues pertain" to all the parcels affected, the Ninth Circuit explained, *id.* at 1320-21, just as here the Government's liability for PACER billings is based on a single unitary theory—that the PACER billing schedule is unlawful. The principle has been applied many times in the lower courts.[7]

---

[7] *See also, e.g., Eccles v. United States*, 396 F.Supp. 792, 794-95 (D.N.D.1975)("Plaintiffs have but one action under several counts, which

In *Sutcliffe Storage and Warehouse Co. v. United States,* 162 F.2d 849 (4th Cir.1947), to take another example, a landowner lessor filed four separate actions against the United States, purporting to assert in each of them a single claim for less than $10,000, arising from the Government's use of land during each of four separate lease periods. *Id.* at 850-52. Observing that "claims for amounts due on running accounts" ordinarily "must include all amounts due at the time action is brought," *id.* at 851-82, the First Circuit found "no reason why a plaintiff cannot make all his claims on a running account at one time without piecemeal presentation," and held that together the four cases exceeded the Little Tucker Act's $10,000 jurisdictional limitation. *Id.*

In this case too, a suit to recover payments made on running accounts cannot be atomized into countless separate claims based on individual overcharges, whether on a page-by-page, document-by-document, or download-by-download basis. Each Class Member has a single claim against the Government for PACER billings over the eight-

_____

cannot be divided as to tracts or time to vest the Court with jurisdiction."); *United States v. 255.21 Acres in Anne Arundel County,* 722 F.Supp. 235, 241 (D.Md.1989)(following *Washington v. Udall* and *Eccles*).

year Class Period. And the heaviest PACER users' claims without question exceed the Little Tucker Act's $10,000 jurisdictional limitation—as Isaacson pointed out below. APX___(DE166-5:7-8).

The District Court acknowledged, but rejected, Isaacson's concern that its "common fund allocations to many large-scale claimants are improper because entities whose aggregated claims total over $10,000 fall outside of Little Tucker Act jurisdiction." APX__(DE169:26n.9). Citing an earlier, superseded, class-certification order in this case, the District Court asserted:

> "A suit in district court under the Little Tucker Act may seek over $10,000 in total monetary relief, as long as the right to compensation arises from separate transactions for which the claims do not individually exceed $10,000." Class Certification Op., 235 F.Supp.3d at 38 (citing *Am. Airlines, Inc. v. Austin*, 778 F.Supp. 72, 76-77 (D.D.C.1991); *Alaska Airlines v. Austin,* 801 F.Supp. 760, 762 (D.D.C.1992); *United States v. Louisville & Nashville R.R. Co.,* 221 F.2d 698, 701 (6th Cir.1955)).

APX__(DE169:26n.9).

The cited cases, however, are both nonprecedential for this Court, and clearly distinguishable. Each relates to Little Tucker Act claims grounded in, and governed by, the terms of discrete contracts—reflected in individually pleaded bills of lading in the Sixth Circuit's *Louisville*

decision, and in individual contracts for airline tickets in the *American Airlines* and *Alaska Airlines* cases. This case, in stark contrast, asserts no similar contract-based claims.

In the *Louisville* case, the Sixth Circuit evaluated whether a district court had jurisdiction over cases "filed under the Tucker Act, 28 U.S.C. [§]1346, for separate amounts less than $10,000 each claimed to be due plaintiff from defendant for numerous shipments made at diverse times, under diverse schedules, between diverse points, and under diverse rates." *Louisville,* 221 F.2d at 700. In essence these were breach-of-contract claims, each governed by the specific terms of a different contract, as reflected in separate bills of lading. One complaint sought "recovery on 74 separate and distinct claims for freight alleged to be due on separate and independent shipments, each separate claim being for an amount less than $10,000," and "[e]ach shipment as set up in the complaint was embodied in a separate count." *Id.* at 701. Because the case would require proof varying with the terms and facts relating to each of numerous independent contracts, each bill of lading represented a distinctly separate claim. The Sixth Circuit explained:

> The decisive fact is that each claim is founded upon a different contract. The various shipments involved items of different weights, moving between different points, having different routes and under different applicable rates. The evidence, therefore, does not, as contended by defendant, apply equally to all of the separate claims.

*Louisville,* 221 F.2d at 701.

The 74 bills of lading not only constituted 74 distinct contracts, the Sixth Circuit emphasized, "these 74 claims arise out of diverse and separate acts and agreements and totally different evidence is necessary to support them." *Id.* at 702. The Sixth Circuit answered the government's request to lump them all together: "But here there were numerous actions which prayed for different judgments, each one less than $10,000." *Id.*

This case, in stark contrast with *Louisville,* does not involve "numerous actions which prayed for different judgments." *Louisville,* 221 F.2d at 702. The Complaint here presents a unified claim for across-the-board overbilling, rather than separate claims based on independent contracts, each entered on disparate terms, each of which was set out in a separate count, and every one of which was subject to wholly independent proof, as in *Louisville.* The Sixth Circuit's 1955 *Louisville*

decision provides no justification at all for the District Court's exercise of jurisdiction in this case over the claims of those Class Members whose Class Period PACER billings totaled over $10,000.

The District Court placed reliance on two district court rulings from the early 1990s which together significantly extended the Sixth Circuit's *Louisville* decision, concerning bills of lading, to cases concerning the government's liability for purchases of airline tickets: *American Airlines, Inc. v. Austin,* 778 F.Supp. 72, 76-77 (D.D.C.1991), and *Alaska Airlines v. Austin,* 801 F.Supp. 760, 762 (D.D.C.1992), *aff'd in part and rev'd in part on other grounds sub nom. Alaska Airlines v. Johnson,* 8 F.3d 791 (Fed.Cir.1993). APX__(DE169:26n.9). District court rulings, it may be noted, generally lack significant precedential weight. *American Elec. Power Co. v. Connecticut,* 564 U.S. 410, 428 (2011). Even so, these two decisions applied *Louisville* to operative facts that are dramatically different from this case.

In *American Airlines* the plaintiff airlines sought payment for airline tickets that the United States had contracted to purchase, but for which it had refused to pay on the ground that the tickets were not used. Several airlines filed suit in the U.S. District Court for the District of

Columbia seeking declaratory and injunctive relief, relying not on the Little Tucker Act, but instead "relying on the APA's waiver of sovereign immunity" and its provision for "judicial review of agency action to parties seeking nonmonetary relief." *American Airlines,* 778 F.Supp. at 75 & n.4 (citing 5 U.S.C. §702). "Section 702 of the APA was amended in 1976 'to remove the defense of sovereign immunity as a bar to judicial review of federal administrative action' in a federal court," with federal jurisdiction "grounded on 28 U.S.C. §1331." *American Airlines,* 778 F.Supp. at 75 (citation omitted). APA §702 authorized actions against the United States "seeking relief ***other than money damages*** and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority," 5 U.S.C. §702 (emphasis added), with 28 U.S.C. §1331 providing federal-question jurisdiction. *See American Airlines,* 778 F.Supp. at 75 & n.4.

The *American Airlines* district court concluded that the Little Tucker Act's jurisdictional limitation nonetheless applied to the extent that the airlines sought monetary relief on the airline tickets as contracts. It held that "plaintiffs' claims here are grounded on the numerous individual ticket contracts between the airlines and the

Government. Each ticket represents a separate contract and any rights plaintiffs have to any form of relief flow originally from the existence or non-existence of the contracts." *American Airlines,* 778 F.Supp. at 76 (fn. omitted). On that basis, it ruled "that each ticket represents a separate claim. The airline tickets are analogous to the 74 bills of lading in *U.S. v. Louisville & N.R.R. Co.* that the court found to be 'separate and distinct claims.'" *American Airlines,* 778 F.Supp. at 76 (quoting *Louisville,* 221 F.2d at 701). "Each ticket represents an independent contract between the government and an airline, and therefore each ticket represents an individual claim." *Id.* With the plaintiffs' claims thus "grounded on contracts, jurisdiction is proper in this Court because each contract is for less than $10,000." *Id.* at 76-77.

Of course, this case is ***not*** one based on the variable terms of any individual contracts. Rather than alleging individualized contracts, it presents a single count captioned: "CLAIM FOR RELIEF: ILLEGAL EXACTION." (DE1:14). It presents no contract-based claims. (DE1:14¶¶33-34). Its PRAYER FOR RELIEF says nothing about enforcing contractual rights, but instead asks the District Court to "[a]ward monetary relief for

any PACER fees collected by defendants in the past six years that are found to exceed the amount authorized by law." APX___(DE1:15).

The District Court in this case also cited *Alaska Airlines v. Austin,* 801 F.Supp. at 762, another matter involving airline tickets, in which two of plaintiff airlines' fourteen counts asked for injunctive relief, with many other counts seeking monetary relief based on contractual claims reflected in individual airline tickets. *Alaska Airlines v. Austin,* 801 F.Supp. at 762. The case was one in which "different evidence will be needed to decide each claim for each individual ticket." *Id.* at 762. "Hence," the district court held, "each claim is considered separately for purposes of determining jurisdiction, and the Little Tucker Act, granting jurisdiction to this Court, applies."[8]

---

[8] *Id.* at 762. When it proceeded to consider summary-judgment motions on two of the fourteen counts alleged, the district court reiterated that "[f]or the controlled-capacity fare tickets" at issue in the case, "each transaction, gives rise to a separate contract with its own terms." *Alaska Airlines v. Austin,* 801 F.Supp. at 768-69 (footnote omitted). "In the absence of a statute or an over-arching contract giving the government a right to the lowest applicable fare, the circumstances of each ticket purchase transaction establish the rights of the parties." *Id.* at 769

Here, by contrast, the Named Plaintiffs and Class press no contract-based claims—each alleges only an illegal-exaction claim. On that single claim, each seeks "monetary relief for any PACER fees collected by the defendant in the past six years that are found to exceed the amount authorized by law." APX___(DE1:14¶c).

After considering jurisdictional issues related to all fourteen counts pleaded, the *Alaska Airlines* district court proceeded to the plaintiffs' two summary-judgment motions, which were limited to two of the fourteen counts as to which jurisdiction was not based on the Little Tucker Act: "one for summary judgment on count one, seeking an injunction enforcing the decisions of the Comptroller General, and one for summary judgment on count two, seeking an injunction preventing further violations of the Administrative Procedure Act." *Alaska Airlines v. Austin,* 801 F.Supp. at 764.

The district court found that "the claims raised in counts one and two," limited to injunctions requiring compliance with the Comptroller General's determinations, "are not primarily contractual in nature and therefore fall outside the ambit of the Tucker Act," which restricts claims seeking monetary relief for breach of contract. *Id.* at 763. With respect to

count one, the district court ordered the government to comply with the Comptroller General's decisions concerning its audits, and with respect to count two, it concluded that "the matters remaining under the APA are incidental and can be resolved by agreement between the parties." *Id.* at 770-71.

Noting that "the monetary claims are not the subject of a motion for summary judgment," the district court held that "as part of the injunctive relief" under count one, it "will now order the return of all monies held improperly with the exception of offsets for which the government may have information with respect to particular transactions that proves government travelers did request lower fares, seats were available at those fares, yet tickets were issued at higher fares." *Id.* at 771.

The Government appealed to this Court from the summary-judgment order granting injunctive relief on count one. This Court noted that the after securing favorable rulings from the Comptroller General, the airlines had

> brought suit in the district court, seeking review of GSA's audit procedures under the Administrative Procedure Act, 5 U.S.C. §702 (1988), and requesting an injunction to compel GSA to comply with the Comptroller General's decisions. ***In the alternative,*** the airlines brought multiple claims based

on the contracts inherent in the individual tickets pursuant
to the Little Tucker Act, 28 U.S.C. §1346(a)(2) (1988).

*Alaska Airlines v. Johnson,* 8 F.3d at 794 (emphasis added). "The district court agreed with the Comptroller General that GSA's audit procedure was impermissible," *id.*, and entered injunctive relief—thereby obviating any need, in the alternative, to reach the "multiple claims based on the contracts inherent in the individual tickets pursuant to the Little Tucker Act, 28 U.S.C. §1346(a)(2)." *Id.* This Court accordingly had no occasion to reach or to consider the district court's jurisdiction, under the Little Tucker Act, with respect to individual contract claims that neither the lower court, nor this Court, ever had occasion to reach or decide. *See id.*

On appeal, the Government challenged the district court's authority, sitting in equity, to "direct[] the return of all funds withheld by the government because of its illegal audits." *Alaska Airlines v. Johnson,* 8 F.3d at 796. It "challenge[d] the [district] court's authority to order such relief, arguing that the 'return' of money ordered by the court was in fact an award of 'money damages'" that by APA §702's terms cannot be awarded "incident to an injunction where the underlying right to the money arises by contract." *Id.* at 796-97.

This Court flatly rejected the Government's contentions that the injunctive relief amounted to "money damages" on contractual claims: "The relief granted by the district court in our case was not specific performance or even based primarily on contractual obligations; it was based on the statute authorizing post-payment audits, 31 U.S.C. §3726(b)." *Alaska Airlines v. Johnson,* 8 F.3d at 797. The district court had "also declared that because GSA holds funds withheld illegally, funds rightfully belonging to the airlines, to provide complete relief, and based on its conclusion that under the statute the government had no right to the withheld money, that money had to be returned." *Id.* at 797. "Thus," this Court held, "the airlines received money to which they were entitled under the statute, not 'money damages,'" barred by APA §702. *Id.* at 797.

Here, on the other hand, the Named Plaintiffs have disavowed any claim for class-wide injunctive relief under the APA: "The judiciary is exempt from the Administrative Procedure Act, so injunctive relief is unavailable." APX___(DE140:2[ECFp6]). Rather, the Named Plaintiffs

> asked the Court to determine that the PACER fee schedule
> violates the E-Government Act and to award a full recovery of
> past overcharges—the only relief available to them under the
> Little Tucker Act. See 28 U.S.C. §1346(a). Because the
> judiciary is not subject to the APA, 5 U.S.C. §§701(b)(1)(B) &

704, the plaintiffs could not seek injunctive relief requiring the AO to lower PACER fees in the future.

APX___(DE140:2[ECFp6]). This Court's holding in *Alaska Airlines v. Johnson,* concerning whether the injunctive relief obtained amounted to "monetary damages" proscribed by the APA accordingly has no relevance here.

In obiter dictum this Court added, without any discussion of this issue: "In this case, the district court had concurrent jurisdiction with the Court of Federal Claims over the contracts." 8 F.3d at 797. Such dictum, concerning claims that were not at issue on appeal, is not a precedential holding.[9] Were it a holding, moreover, it would amount only to an affirmation that the district court had jurisdiction "over the contracts," relating to individual airline tickets. *See supra* at 34 & n.8. It provides no basis at all for the District Court's exercise of jurisdiction in this case, which involves no contract claims.

---

[9] *See, e.g., Terry v. Principi,* 367 F.3d 1291, 1295 (Fed.Cir.2004); *Co-Steel Raritan, Inc. v. Int'l Trade Comm'n.,* 357 F.3d 1294, 1307-08 (Fed.Cir.2004).

The remedy is plain: "The claim of each member of the class must be examined separately to determine whether it meets the jurisdictional requirement," and any class member for whom complete relief would have totaled over $10,000 must be removed from the class governed by the Settlement, and "dismissed for lack of jurisdiction." *Chula Vista City School District v. Bennett,* 824 F.2d 1573, 1579 (Fed.Cir.1987).

**B.    The Settlement's *Pro Rata* Allocation of Many Millions of Dollars to the Large PACER Users Who Were Fully Reimbursed by Their Clients or By Court Orders in Other Class Actions is Fundamentally Unfair**

The District Court plainly abused its discretion by approving the Settlement as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)(2).

Rule 23(e)(2) authorizes judicial approval a class-action settlement only upon "finding that it is fair, reasonable, and adequate after considering," among other things, whether "(C) the relief provided for the class is adequate, taking into account ..." "(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," and the "(iii) the terms of any proposed award of attorney's fees," as well as whether "(D) the proposal

treats class members equitably relative to each other." Fed.R.Civ.P. 23(3)(2)(c).

Here, the award of attorney's fees Class Counsel sought under the Settlement Agreement paid the senior attorneys, William Narwald and Deepak Gupta, effective hourly rates approaching $5,000 an hour. That is too much. *See infra* ___-___. The provision of $10,000 "service awards" or "incentive awards" to each of the Named Plaintiffs, moreover, is both illegal and inequitable. *See infra* ___-___.

Even more fundamentally, the Settlement allocates far too much of the cash obtained to the large law firms and plaintiffs' class-action lawyers whose Class Period PACER expenditures already have been reimbursed, whether by their clients, or by Court orders directing payments from the settlements in other cases. The District Court brushed Isaacson's concerns aside, asserting that his "dissatisfaction arises from the amount of the common fund, not its allocation." APX___(DE169:25). But that is not so. Isaacson objects that it is inequitable allocate so much money to PACER's heaviest users who have already been reimbursed by clients or from the settlement of other class actions. Had the $125 million Settlement fund been equitably allocated

it could have been appropriately approved under Rule 23(e)(2) as fair reasonable. But it wasn't.

As Isaacson pointed out below, among the largest users are large law firms or plaintiffs' class-action attorneys, whose Class Period PACER payments were reimbursed by their clients or from class-action settlements in other cases. APX___(DE166-5:4-9[ECFpp5-10]) (Isaacson Objection). Many law firms, particularly the larger ones, pass the PACER charges that they incur on to their clients and are reimbursed for them on thirty-day billing cycles.[10] Plaintiffs' side class-action lawyers have to wait a little longer—but they typically are reimbursed for PACER charges when class actions settle.[11] And we know that the great majority

---

[10] *See Hallmark v. Cohen & Slamowitz, LLP,* 378 F.Supp.3d 222, 236 (W.D.N.Y.2019)(holding PACER fees are among "those ordinarily charged to clients"); *Godson v. Eltman, Eltman, & Cooper, P.C.,* 328 F.R.D. 35, 68 (W.D.N.Y.2018)(holding PACER fees are among "those ordinarily charged to clients"); *Decastro v. City of New York,* No. 16-cv-3850 (RA), 2017 WL 4386372, at *10 (S.D.N.Y. Sept. 30, 2017)(PACER fees are among the "out-of-pocket expenses ordinarily charged to clients").

[11] *See, e.g., Ciapessoni v. United States,* 145 Fed.Cl. 564, 565 (2019); *Godson v. Eltman, Eltman, & Cooper, P.C.,* 328 F.R.D. 35, 67 (W.D.N.Y. 2018); *In re Broadwing, Inc. ERISA Litig.,* 252 F.R.D. 369, 382 (S.D. Ohio 2006); *see also* APX____(DE165-5n.3) (collecting additional cases).

of class actions settle.[12] Indeed, Class Counsel's own fee expert conceded that "the typical class action settles in only three years." APX___(DEDE158-4:14¶21) (Fitzpatrick decl.). So class-action lawyers, like those representing the Named Plaintiffs in this matter, generally receive full reimbursement for their PACER expenditures by court order when the class actions they litigate quite predictably settle.

It is the smaller users, with Class Period PACER expenditures of under $10,000 for the eight-year Class Period who are least likely to have received any such reimbursements. Both Named Plaintiffs and the Government acknowledged, moreover, that people of limited means— whose total Class Period expenditures are apt to be far smaller than those of large law firms—have suffered the most from PACER's illegal billing structure, which the Government continues to use.

The Named Plaintiffs initially purported to litigate this case in the interest of the little user. Their Complaint demanded compliance with

---

[12] *See* Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* 6 (Federal Judicial Center, 2005)(according to a 2005 study, certified class actions settled ninety percent of the time).

Congress' intent that court documents "be 'freely available to the greatest extent possible.'" DE1:1 (quoting S.Rep. 107–174, 107th Cong., 2d Sess. 23 (2002)). They said that excessive PACER fees had "inhibited public understanding of the courts and thwarted equal access to justice," asserting that "the AO has further compounded these harms by discouraging fee waivers, even for pro se litigants," and "by hiring private collection lawyers to sue people who cannot afford to pay the fees." APX___(DE1:1-2); *see also* APX___(DE1:11¶23); APX___(DE1:12¶25). Plaintiff NCLC said it "seeks to achieve consumer justice and economic security for low-income and other disadvantaged Americans." APX___(DE1:3¶2).

Yet when it came time to negotiate a settlement, the Named Plaintiffs abandoned such users—and the public interest—by advocating a purely pro-rata distribution of settlement funds that would favor large institutional users, providing windfalls both to large law firms that long ago passed their PACER charges on to paying clients, and to plaintiffs-side class-action lawyers who have been reimbursed from settlement funds in other cases.

Class Counsel conceded below that in settlement negotiations with the Government, they and the Named Plaintiffs

> argued that funds should be distributed pro rata to class members, while the government vigorously insisted that any settlement include a large minimum amount per class member, which it maintained was in keeping with the AO's longstanding policy and statutory authority to "distinguish between classes of persons" in setting PACER fees—including providing waivers—"to avoid unreasonable burdens and to promote public access to such information," 28 U.S.C. §1913 note.

APX(DE158-5:10¶28) (Gupta decl.); *see also* APX(DE158:23[ECFp31]) ("plaintiffs and class counsel vigorously advocated for a pro-rata approach").

The District Court acknowledged: "Consistent with the judiciary's policy of offering waivers and other pricing mechanisms to make PACER cheaper for some groups of users, the government wanted more of the settlement fund to go to reimbursing those who used PACER less." APX___(DE169:24). But the Government eventually gave in to "a compromise of these competing approaches: a minimum payment of $350—the smallest amount that the government would agree to—with a pro rata distribution beyond that amount." APX___(DE158-5:10) (Gupta decl.).

The Government was right from the start to oppose a pro rata distribution as fundamentally unfair and inequitable. And the "blend" eventually reached as a compromise still allocates far too much to a pro-rata distribution that unfairly advantages large users and law firms that already have been reimbursed—and who accordingly receive inequitable windfalls under the Settlement.

No portion of the Settlement fund should have been allocated to Class Members' for Class Period PACER expenditures that exceeded $10,000. The first distribution, affording smaller users full reimbursement, should have been capped at a much higher level than $350 apiece. Any pro-rata distribution of remaining funds should have been based on Class Members' expenditures only *up to* $10,000 apiece.

Better yet, those Class Members whose Class Period expenditures exceeded the Little Tucker Act's jurisdictional limit of $10,000 apiece should be excluded from the Class and their claims dismissed without prejudice—as argued in the foregoing section on jurisdiction.

**C. The District Court Strayed from Precedent and Abused its Discretion by Accepting Class Counsel's Request for 19.1% of the Settlement Fund, Effectively Compensating Attorney's at Rates Approaching $5,000 an Hour**

Class Counsel requested an award of attorneys' fees, settlement-administration and notice costs, litigation expenses, and service awards for the three class representatives in a total amount equal to 20% of the $125 million common fund. From that, Class Counsel sought approval of $23,863,345.02 in attorneys' fees, APX___(DE158:4), which they characterized as a request for 19.1% of the $125 million common fund. APX___(DE158:27-28). They submitted summary tables listing billing rates and hours billed by attorneys who worked on the case, without any indication of what tasks any of the time was devoted to, let alone why the time was necessary. APX___(DE158-5:22-23:¶¶62-64) (Gupta decl.); APX___(DE158-6:5¶¶12-13) (Oliver decl.). As it happens, the requested award amounts to a multiple of 3.96 times Class Counsel's "lodestar," calculated by multiplying the hours devoted to the case by their hourly rates—which were themselves quite extravagant, far above those normally charged for complex litigation in the District of Columbia's federal courts. *See* APX___(DE159:5-6) (Government

Response to Fee Motion). And the District Court gave them exactly what they wanted.

The District Court plainly abused its discretion by accepting the amount requested by Class Counsel, and then evaluating whether that amount might somehow be deemed reasonable—rather than acting as a fiduciary for the Class and independently calculating a reasonable fee, as it was required to do by this Court's decision in *Health Republic Ins. Co. v. United States,* 58 F.4th 1365, 1376-77 (Fed.Cir.2023).

According to *Heatlh Republic,* a court awarding common-fund attorney's fees cannot "treat the request as presumptively the proper award but must play a more neutral role, characterized as a fiduciary on, in deciding what fee is warranted." *Health Republic,* 58 F.4th at 1378. The result of deviating from the course mandated by *Health Republic* is a fee award that overcompensates Class Counsel, with the leading attorneys on the case end up being paid nearly $5,000 an hour. William Narwald, who ordinarily bills at $1,250 an hour, APX___(DE158-6:5¶12), with his requested 3.96 multiplier rubber-stamped by the District Court, gets $4,950 an hour for his work in this case. Deepak Gupta, who ordinarily bills $1,150 an hour, APX___(DE158-5:22¶63), with the 3.96

multiplier, gets paid $4,554 hourly. The District Court's award of Class Counsel's requested attorney's fees should be vacated, with directions to start anew, determining a reasonable fee from scratch, without deference to the fee requested by Class Counsel. *See Health Republic,* 58 F.4th at 1378.

This Court has recognized that the common-fund doctrine was established in the 1880s by two leading Supreme Court decisions:

> The common fund doctrine is rooted in the traditional practice of courts of equity and derives from the equitable power of the courts under the doctrines of *quantum meruit*, *Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116, 128 (1885), and unjust enrichment, *Trustees v. Greenough,* 105 U.S. 527, 532 (188[2]).

*Haggart v. Woodley*, 809 F.3d 1336, 1352 (Fed.Cir.2016). "Since the decisions in *Trustees v. Greenough*, 105 U.S. 527 (1882), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885), [the Supreme] Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *see Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 257-58 (1975); *Knight v. United States,* 982 F.2d 1573, 1580 (Fed.Cir.1993)(discussing *Greenough* and

*Pettus*); *see generally* John P. Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds,* 87 Harv.L.Rev. 1597, 1601-09 (1974).

Together, *Greenough* and *Pettus* hold that attorney's fees may be awarded from a common fund or equitable fund based either on the attorney's fees reasonably incurred and billed, *see Greenough*, 105 U.S. at 530-31, 537-38, or as a very modest percentage of the fund, *see Pettus,* 113 U.S. at 128 (cutting fee award from 10% to 5%). Here, a common-fund fee award approaching five thousand dollars an hour apiece for Narwald and Gupta cannot be deemed reasonable under the common-fund doctrine of *Greenough* and *Pettus.*

*Greenough* approved of paying a representative plaintiff's reasonable attorney's fees from a common-fund recovery, provided the award is "made with moderation and a jealous regard to the rights of those who are interested in the fund." *Greenough,* 105 U.S. at 536-37. *Pettus* similarly required moderation, cutting a 10% fee award to just 5%. *Pettus,* 113 U.S. at 128. It appears, in fact, that the Supreme Court has never approved of a common-fund fee award exceeding 10% of the fund.[13]

---

[13] *See, e.g., Harrison v. Perea,* 168 U.S. 311, 325 (1897)(noting with approval the reduction of a $5,000 fee award (or about 14% of an

And its decisions defining a "reasonable attorney's fee" under fee-shifting statutes plainly establish a "strong presumption" that plaintiffs' counsel's unenhanced lodestar is sufficient to attract and adequately compensate competent counsel. *See, e.g., Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 546, 552-53 (2010); *Haggart,* 809 F.3d at 1355 n.19.

If unenhanced lodestar sufficiently compensates lawyers claiming a statutory entitle to a "reasonable attorney's fee," it is hard to see how a District Court acting as a fiduciary on behalf of Class Members could agree to pay nearly four times Class Counsel's claimed lodestar. At nearly

---

equitable fund) to just 10% of the fund); *Pettus,* 113 U.S. at 128 (cutting 10% awarded below to just 5%). In *United States v. Equitable Trust Co.,* 283 U.S. 738 (1931), the Second Circuit reduced a common-fund fee award to $100,000 (about 15% of the fund) warning that "[t]he allowance is a payment for legal services, not a speculative interest in a lawsuit." *Barnett v. Equitable Trust Co.,* 34 F.2d 916, 919 (2d Cir.1929)(Learned Hand). The plaintiff's lawyers complained to the Supreme Court that "from a percentage standpoint, the allowance of $100,000 is but slightly over fifteen per cent," and that "never yet have counsel been cut down to such a low percentage in any contested case taken upon a contingent basis." Brief for Respondents to Whom Allowances Were Made, *United States v. Equitable Trust,* 283 U.S. 738 [Oct. Term 1929 No. 530], at 55-56 (filed April 16, 1930). But the Supreme Court found even "the allowance of $100,000 unreasonably high, and that to bring it within the standard of reasonableness it should be reduced to $50,000," which was about $7^{1}/_{2}$% of the fund. *Equitable Trust,* 283 U.S. at 746.

four times Class Counsel's claimed hourly rates, and several times the percentages supported by Supreme Court common-fund precedents, *see supra* at 50-51 & n.13, the attorney's fee award that Class Counsel sought—and that the District Court rubber-stamped—is clearly excessive.

It may be worth noting that the Complaint in this case prays for the District Court to "[a]ward the plaintiffs their ... attorney fees under 28 U.S.C. §2412 and/or from a common fund." APX___(DE1:15). If unenhanced lodestar would be a reasonable fee for their work on this case under §2412, *see Perdue,* 559 U.S. at 546, 552-53, it is hard to see why Class Counsel should be able to ***quadruple*** that fee award by instead taking the money from the Class's recovery.

In *Haggart v. Woodley,* 809 F.3d 1336, 1357-58 (Fed.Cir.2016), this Court held that in a case where class counsel's efforts produced a common-fund recovery, the lawyers were adequately compensated by an unenhanced lodestar fee paid by the government under the URA, and that they therefore had no equitable claim to receive even a penny more from the common fund. An unenhanced lodestar would have adequately compensated Class Counsel in this case too.

The District Court wound up awarding Narwald and Gupta nearly five thousand dollars an hour, though, because of where its attorney's fee analysis began: by starting with the amount of Class Counsel's fee request itself, and asking whether the request could be deemed reasonable. That approach is reversible error under *Health Republic*.

This Court held in *Health Republic* that the Claims Court erred by starting with the lawyers' fee request, and then evaluating whether it was outside "the realm of reasonableness," rather than making its own independent determination of what a reasonable fee would be. *Health Republic,* 58 F.4th at 1376 (citation omitted). In so doing,

> the Claims Court misconceived its task as one in which the request for fees was presumptively to be granted, subject only to challengers' demonstration that the request is outside the range of reasonableness and must be reduced. In fact, the Claims Court pervasively framed its inquiry that way once it decided to apply the percentage-of-the-fund method. *See, e.g., id.* at 77 (proceeding "to evaluate the reasonableness of ***Class Counsel's requested fee***" (emphasis added)); *id.* (finding "nothing in this category [quality of counsel] that ***justifies a reduction in the requested fee***" (emphasis added)); *id.* at 79 (applying risk factor to "support[ ] [counsel's] fee request"); *id.* at 81 (stating that task is "to evaluate the reasonableness of ***Class Counsel's fee request***," and addressing "why a ***reduction of fees is not justified***" (emphases added)).

*Health Republic,* 58 F.4th at 1376 (Court's emphasis). "That approach is improper." *Id.*

The District Court in this case did exactly what *Health Republic* prohibits, by taking Class Counsel's requested fee as the starting point for its analysis, which began: "The Court must independently **determine the reasonableness of the requested fees**, costs, and service awards." APX___(DE169:29). The District Court even captioned its analysis of the appropriate fee award as: "B. **Reasonableness of Requested Attorney's Fees**." APX___(DE169:33). It said: "The Court will first analyze **the percentage requested** ... and then will conduct a lodestar cross-check." APX___(DE169:34). Here, as in *Health Republic,* the District Court erred by evaluating whether Class Counsel's requested amount fell within the "realm of reasonableness," *Heatlh Republic,* 58 F.4th at 1376, instead of itself calculating a reasonable fee. The question to be decided, the District Court thought, was "the **reasonableness of Class Counsel's requested fee**." APX___(DE169:38). "Furthermore," it found "**the requested percentage** is around the average for common funds in the range of the fund created by this settlement." APX___(DE41). "Because **the requested fee award fits neatly** within the relevant statistical range

and aligns with the best case analogues, this factor strongly counsels in favor of approval of the attorney's fees request." APX___(DE169:41). "***Class Counsel's requested fee*** award would compensate them at slightly below four times their hourly rates for the work they performed in this case." APX___(DE169:44-45). The District Court's conclusion: "***The Court will award the full amount of attorney's fees requested*** by Class Counsel." APX___(DE169:45) (all emphasis in this paragraph added).

"That approach is improper," in this case, just as it was in *Health Republic,* 58 F.4th at 1376. Rather that starting with Class Counsel's requested fee as the presumptive award, "***the court's task is to make its own determination of what fee to award***, within the range of reasonable possibilities, considering the relevant principles and precedents addressing comparable facts." *Id.* at 1377 (emphasis added). This the District Court failed to do—with the result that it awarded Class Counsel fees approaching $5,000 an hour.

The fee likely would have been very different had the Court started instead with basic principles—that common-fund attorney's fees must be "made with moderation and a jealous regard to the rights of those who

are interested in the fund," *Greenough,* 105 U.S. at 536-37, that Class Counsel's unenhanced lodestar is presumptively adequate compensation, *Perdue,* 559 U.S. at 546, 552-53, that a percent-of-fund award ought not be used to overcompensates class counsel,[14] and that a District Judge acting as a fiduciary to the Class will not award a percent-of-fund fee that greatly exceeds the lodestar.[15]

We know why Class Counsel requested fees as a percentage of the common fund. As Judge Jacobs recently observed, awarding "fees based on the percentage of the fund method ... nearly always results in an award that exceeds the lodestar method." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.,* 62 F.4th 704, 729 (2023)(Jacobs, Cir.J., concurring). That suggests courts awarding common-fund fees should be strongly skeptical of requests for percent-of-fund awards. But the District Court in this case, quite possibly influenced by D.C. Circuit law that it is

---

[14] *See Equitable Trust,* 283 U.S. at 746; *Pettus,* 113 U.S. at 128; *cf. Haggart,* 809 F.3d at 1357-58.

[15] *See Health Republic,* 58 F.4th at 1374 n.2 ("policies that govern a court's determination of a 'reasonable' percentage-of- the-fund attorney's fee under Rule 23(h) ... might well call for a lodestar cross-check as part of the inquiry at least as a general matter") (dictum).

required to apply in other cases, threw caution to the wind—and embraced Class Counsel's request for a percent-of-fund award that it would then only lightly and deferentially "cross-check."

Favorably citing a Court of Claims URA common-fund decision that this Court overruled in *Haggart*, the District Court wrote that "[w]hile courts have discretion to use either method, fee awards in common-fund cases are 'typically based on some percentage of the common fund.'"[16] The District Court then cited the D.C. Circuit's opinions in *Swedish Hospital Corp. v. Shalala,* 1 F.3d 1261, 1271 (D.C. Cir. 1993), and *Democratic Central Committee of D.C. v. Washington Metro. Area Transit Comm'n*, 3 F.3d 1568, 1573 (D.C.Cir. 1993), which together mandate that in the U.S. District Court for the District of Columbia attorney's fees in common-fund cases shall be awarded as a percentage of the fund. That, of course, is **not** Federal Circuit law, which indulges no

---

[16] APX___(DE169:30) (quoting *Moore v. United States,* 63 Fed.Cl. 781, 786 (2005) (awarding percent-of-fund fees in URA common-fund cases), *overruled by Haggart v. Woodley,* 809 F.3d 1336, 1359 (Fed.Cir.2016) ("The URA provides a reasonable fee," under the lodestar approach, "and thus forecloses application of the common fund doctrine" awarding fees as a percentage of the fund).

systematic preference for percent-of-fund fee awards to the exclusion of fees calculated on the basis of counsel's lodestars. *See Health Republic,* 809 F.3d at 1371 (citing *Haggart,* 809 F.3d at 1355).

In *Swedish Hospital* the D.C. Circuit joined the Eleventh Circuit in "in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases." *Swedish Hospital,* at 1271. But the Eleventh Circuit is an outlier on this issue. Every other Circuit to consider the question has rejected the position, embraced by the D.C. Circuit and the Eleventh Circuit alone, that attorney's fees in common-fund cases must be awarded as a percentage of the fund.[17] And the D.C. Circuit's requirement that fees be awarded as a percentage of the fund is quite at odds with Supreme Court

---

[17] *See, e.g., Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir.2000)(refusing to follow "the District of Columbia and Eleventh Circuits [which] mandate the exclusive use of the percentage approach in common fund cases"); *Gottlieb v. Barry,* 43 F.3d 474, 483 (10th Cir.1994)(rejecting "two cited cases, *Swedish Hosp. Corp.* and *Camden I Condominium Ass'n,* [as] the only two circuit decisions explicitly rejecting the use of the lodestar method in common fund cases"); *In re WPPSS Litig.,* 19 F.3d 1291, 1295 (9th Cir.1994); *Rawlings v. Prudential-Bache Properties, Inc.,* 9 F.3d 513, 515-16 (6th Cir.1993)(also declining to follow *Camden I* and *Swedish Hospital*).

precedent. In *Democratic Central Committee,* the D.C. Circuit asserted that "every Supreme Court case that has addressed the issue has determined reasonable fees payable from a common fund on a percentage of the fund basis.*" Democratic Cent. Comm. of D.C. v. Washington Metro. Area Transit Comm'n,* 3 F.3d 1568, 1573 (D.C.Cir.1993). But that is not true. The Supreme Court's leading decision is *Greenough,* which awarded common-fund attorney's fees not as a percentage of the fund, but on the basis of itemized attorney's fees actually incurred and paid.[18] Thus, the D.C. Circuit's precedents limiting the U.S. District Court for the District of Columbia to awarding common-fund fees as a percentage of the fund flatly conflict with Supreme Court precedent.

This Court holds that trial courts must exercise discretion in common-fund cases, choosing on a case-by-case basis, as a fiduciary on the lookout to protect the class's interests, whether attorney's fees should

---

[18] *See Greenough,* 105 U.S. at 530 (citing an itemized "statement of expenditures made by Vose in the cause ... being for fees of solicitors and counsel, costs of court, and sundry small incidental items"); *see also Trustees v. Greenough,* [Oct. Term 1881 No. 601], Transcript of Record at 711-23, 770-78 (original) 228-32, 247-56 (print)(1881)(listing the itemized expenditures).

be calculated primarily using counsel's lodestar, or primarily as a percentage of the fund. *Health Republic,* 809 F.3d at 1371 (citing *Haggart,* 809 F.3d at 1355).

Here, Class Counsel precluded a meaningful exercise of that discretion by withholding the information necessary for a court even to begin evaluating their claimed lodestar. All they provided were summary tables with total hours worked by each attorney, multiplied by their claimed hourly rates—with no indication of what they actually worked on, when, or why. APX___(DE158-5:22-23:¶¶62-64) (Gupta decl.); APX___(DE158-6:5¶¶12-13) (Oliver decl.).

That really is not enough for a court to evaluate the claimed lodestar—not even for purposes of a cross-check. "As part of the lodestar cross-check on remand" in *Health Republic* this Court required the Court of Claims to "readdress the Objectors' contentions that Quinn Emanuel has not done enough to justify the lodestar itself," directing that "the Claims Court should provide more explanation ... concerning the adequacy of Quinn Emanuel's hours and rates." *Health Republic,* 58 F.4th at 1378. *Health Republic* requires a more detailed accounting for Class Counsel's time in this case too.

The District Court nonetheless opted to follow the wayward D.C. Circuit precedents, asserting that "as the D.C. Circuit has noted, 'the latest guidance from the High Court counsels the use of a percentage-of-the-fund methodology.'" APX__(DE169:33) (quoting *Swedish Hospital,* 1 F.3d at 1268 (citing *Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984)). The "latest guidance" was actually a passing obiter dictum in *Blum,* a statutory fee-shifting case, stating in a footnote that the matter before it did not involve a common-fund fee award in which the fee might have been calculated as a percentage of a fund.[19] *Blum* did not purport to overrule *Greenough's* holding that a common-fund award may be based on fees as incurred and billed, let alone to hold that common-fund fee awards generally ***should*** be awarded as a percentage of the fund rather than with reference to attorneys' hours and billing rates.

That common-fund fees ***can*** be calculated as a percentage of the fund has been apparent since the Supreme Court slashed an excessive

---

[19] *Blum*'s footnote said that "[u]nlike the calculation of attorney's fees under the 'common fund doctrine,' where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under §1988 reflects the amount of attorney time reasonably expended on the litigation." *Blum,* 465 U.S. at 900 n.16.

common-fund fee award from an unreasonable 10% to just 5% of the fund in *Pettus*, 113 U.S. at 128. But the District Court exercised no meaningful discretion when it deferred in this case to Class Counsel's request that they approve their large fee request as a percent-of-fund award. And the percentage that it blessed is far out-of-line anything the Supreme Court's common-fund precedents have ever approved. Five percent would have been quite sufficient here, as it was in *Pettus*.

Of course, there is a reason why class-action lawyers request percent-of-fund fee awards in mega-fund cases that produce a common fund exceeding $100 million. As Judge Jacobs recently observed, awarding "fees based on the percentage of the fund method ... nearly always results in an award that exceeds the lodestar method." *Fikes Wholesale*, 62 F.4th at 729 (Jacobs, Cir.J., concurring). Thus it would seem that a judge, when acting as a fiduciary on behalf of the Class in cases like this, ought to seriously consider awarding fees using lawyers' lodestars which—according to the Supreme Court provides the fairest and most objective way to calculate a lawyer's "reasonable fee" under fee-shifting statutes in contingent-fee class-action litigation. *See Perdue,* 559 U.S. at 546, 552-53. Even in common-fund cases, such as this, "[t]here is

a 'strong presumption' that the lodestar figure represents a reasonable fee." *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1007 (9th Cir.2002)(citation omitted). But the District Court gave no serious consideration to a lodestar award.

The information concerning Class Counsel's lodestar was inadequate to permit any serious consideration. The Government noted below that "Plaintiffs' counsel do not present any data in support of their claimed rates." APX___(DE159:5). Those rates were far above those that their own expert witness had identified as reasonable market rates for compensating counsel in complex litigation before federal forums in the District of Columbia. Class Counsel's own expert on fees, Professor Brian Fitzpatrick, developed a matrix of reasonable "Hourly Rates ($) for Legal Fees for Complex Federal Litigation in the District of Columbia," widely known as the "Fitzpatrick Matrix."[20]

---

[20] *See* APX____(DE166-5:ExD[ECFpp42-50). While Isaacson initially submitted a copy of the Matrix with rates current to 2021, APX____(DE166-5:ExD[ECFpp42-50), the Government provided a url links to the 2023 version of the Fitzatrick Matrix, which can be found here: https://www.justice.gov/usao-dc/page/file/1504361/dl and for which Isaacson has prepared a bitly link, https://bit.ly/Fitzpatrick2023 and also a permalink: https://perma.cc/CX5B-RCWM.

Professor Fitzpatrick has said his "Fitzpatrick Matrix" is based on research that "allowed us to determine the real hourly rates charged in the market" in complex federal litigation in the District of Columbia. APX___(DE166-6ExE:[ECFp49]). Yet in this case, Class Counsel's claimed lodestar was built on billing rates grossly exceeding what the Matrix allows for complex litigation in the District of Columbia. A 2002 Georgetown graduate, Deepak Gupta's time is billed at $1150 an hour, while 2010 Harvard graduate Jonathan E. Taylor's time is billed at $975 an hour, DE158-5:22¶63, well over the rates that are reasonable for complex litigation in the District of Columbia. APX___(DE159:5) (2023 Fee Matrix rates); APX___(DE166-5) (2021 Fee Matrix rates). Turning to the Motley Rice lawyers, we find William Narwold billing at $1250 an hour, and Meghan Oliver at $950 an hour, DE158-5:5¶12, again far higher than the rates on the Matrix. *See* APX___(DE159:5) (2023 Fee Matrix rates); APX___(DE166-5) (2021 Fee Matrix rates).

As the Government observed in its response to Class Counsel's fee request:

———————————————

Importantly, though Plaintiffs rely on the declaration of Brian T. Fitzpatrick ("Fitzpatrick Decl.," ECF No. 158-4) in support of the reasonableness of their fees, they have chosen (with no explanation) not to utilize the U.S. Attorney's Office Fitzpatrick Matrix (created in conjunction with the very same Brian Fitzpatrick). See https://www.justice.gov/usao-dc/page/file/1504361/download. This is evident because class counsel seeks compensation for Gupta's 2023 rate of $1,150, which is significantly more than the top of the Fitzpatrick Matrix rate (see id., which indicates $807 per hour for attorneys with over 35 years of practice). Gupta graduated from law school in 2002, making his 2023 rate $742, approximately $408 less per hour than the rate at which he seeks compensation.

APX___(DE159:5).

The District Court rejected the Fitpatrick Matrix's relevance on the basis that it was designed for calculating reasonable lodestar fee awards, not lodestar cross-checks of percent-of-fund awards:

But the Fitzpatrick Matrix was not designed to be used for lodestar cross-checks in common fund class actions; instead, "[t]he matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover 'reasonable' attorney's fees." U.S. ATT'Y'S OFF. FOR D.C., THE FITZPATRICK MATRIX, Explanatory Note 2, www.justice.gov/usao-dc/page/file/1504361/download [https://perma.cc/EVQ5-NNMC]

APX___(DE169:43). That is a distinction that makes no sense.

The District Court's analysis is flawed in many other ways. It ruled, for example, that "each class member who was also part of the original

class agreed to a contingency fee of up to 30% by declining to opt out." APX___(DE169:37). That is nonsense. Class Counsel could not, by slipping a sentence into the Class Notice about a potential 30% fee award, forfeit Class Members' right under Federal Rule of Civil Procedure 23(h)(2) to object to Class Counsel's request for fees. The very attempt was overreaching and unethical. The original Class Notice and Class Certification were, in any event, superseded by the Settlement Class for a longer Class Period, the E-mail Notice for which told Settlement Class Members, including Isaacson, "you may object to any aspect of the proposed settlement." APX___(DE166-5:ECFp23). The District Court also erred by giving any weight to the fact that Named Plaintiffs' contingency fee agreements allowed for a 33% fee. Named Plaintiffs plainly lacked power to bind the Class. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013).

The District Court also gave Class Counsel credit for things they never achieved. "As one of the attorneys representing the class describes, before this lawsuit, 'litigation against the federal judiciary was not seen as a realistic way to bring about reform of the PACER fee regime,'" the District Court wrote, overlooking the fact that Class Counsel achieved no

meaningful "reform of the PACER fee regime." APX___(DE169:35). At the time of this writing, PACER fees remain ten cents a page, just as when this action was filed.

The District Court's award of attorney's fees should be reversed, with instructions first to calculate a reasonable fee independent of the amount that Class Counsel argue is reasonable.

### D. The Supreme Court's Foundational Common-Fund Precedents Prohibit Paying "Service Awards" to Representative Plaintiffs

The District Court erred as a matter of law by paying each of the Named Plaintiffs a "service award" or "incentive award" to reward them for their service as representative plaintiffs in this case.

Although *Greenough* approved of paying a representative plaintiff's reasonable attorney's fees from a common-fund recovery, provided the award is "made with moderation and a jealous regard to the rights of those who are interested in the fund," *Greenough,* 105 U.S. at 536-37, it rejected as "decidedly objectionable" any compensation "for the personal services" rendered by the representative plaintiff in recovering the fund. *Id.* at 537. Just three years later, the Supreme Court explained in *Pettus*:

In *Trustees v. Greenough*, 105 U.S. 527, we had occasion to consider the general question as to what costs, expenses, and allowances could be properly charged upon a trust fund brought under the control of court by suits instituted by one or more persons suing in behalf of themselves and of all others having a like interest touching the subject-matter of the litigation. That suit was instituted by the holder of the bonds of a railroad company, on behalf of himself and other bondholders, to save from waste and spoliation certain property in which he and they had a common interest. It resulted in bringing into court or under its control a large amount of money and property for the benefit of all entitled to come in and take the benefit of the final decree. His claim to be compensated, out of the fund or property recovered, for his personal services and private expenses was rejected as unsupported by reason or authority.

*Pettus,* 113 U.S. at 122. Simply put, under the Supreme Court's common-fund precedents, representative plaintiffs' reasonable litigation expenses—including attorney's fees—may be paid from a common-fund recovery that their litigation produces, but they cannot be paid for their own service in a representative capacity. *Id.*

In this case, however, the District Court rejected the holdings of *Greenough* and *Pettus,* to award each of the Named Plaintiffs a "service award" of $10,000. APPX___(DE169:46). This was reversible error. The Eleventh Circuit has soundly concluded that that "Supreme Court precedent prohibits incentive awards" that compensate litigants for their

service as representative plaintiffs. *Johnson v. NPAS Sols.,* LLC, 975 F.3d 1244, 1255 (11th Cir.2020), *reh'g denied,* 43 F.4th 1138 (11th Cir.2022).

A panel of the Second Circuit has acknowledged: "The Supreme Court has held that it was 'decidedly objectionable' for cash allowances to be 'made for the personal services and private expenses' of a creditor who brought suit on behalf of himself and other similarly situated bondholders." *Fikes Wholesale,* 62 F.4th at 721. But even if "[s]ervice awards are likely impermissible under Supreme Court precedent," the Second Circuit has continued to sustain them on the authority of its own decisions. *See id.* (following *Melito v. Experian Mktg. Sols. Inc.,* 923 F.3d 85, 96 (2d Cir.2019), and *Hyland v. Navient Corp.,* 48 F.4th 110, 123-24 (2d Cir.2022)); *see also Moses v. N.Y. Times Co.,* 79 F.4th 235, 253 (2d Cir. 2023) (following *Melito, Hyland,* and *Fikes Wholesale*).

Discussing the Eleventh Circuit's "thorough and well-reasoned opinion" from *Johnson v. NPAS,* the *Fikes Wholesale* opinion's author, Judge Dennis Jacobs, reiterated in a concurring opinion that the Supreme Court's decisions in *Greenough* and *Pettus* bar paying named plaintiffs for their service as representative plaintiffs. "But this Court

has twice come out the opposite way," he lamented, first in *Melito*, which without explanation asserted that *Greenough* and *Pettus* involved different "factual settings," and then in *Hyland* which "over-read *Melito* to hold that "Rule 23 does not per se prohibit service awards like the one at issue here." *Fikes,* 62 F.4th at 729 (Jacobs, Cir.J., concurring).

The truth is that Rule 23 says nothing that can be taken to authorize "incentive awards" or "service awards" to representative plaintiffs in common-fund cases. No statute, rule, or regulation authorized the $10,000 payments to each of the Named Plaintiffs in this case. Under *Greenough* they were "illegally made" and "should be reversed." *Greenough,* 105 U.S. at 538.

The $10,000 "service awards" paid to each of the Named Plaintiffs must be reversed.

## VII. CONCLUSION

For all the foregoing reasons, the judgment below should reversed, and the matter remanded with instructions to exclude from the Settlement  Class and dismiss without prejudice the claims of all Class Members whose Class Period PACER expenditures exceeded $10,000. If Class Members whose Class Period PACER expenditures exceeded $10,000 are not excluded and dismissed, the District Court's finding that

the Settlement is fair, reasonable, and adequate, should be reversed or vacated. The District Court's awards of attorney's fees and service awards both should be vacated.

DATED:  July 1, 2024

/s/ Eric Alan Isaacson
Eric Alan Isaacson

LAW OFFICE OF ERIC ALAN ISAACSON
6580 Avenida Mirola
La Jolla, CA 92037-6213
Telephone:  (858) 263-9581
Email: ericalanisaacson@icloud.com
eri628@g.harvard.edu

Objector-Appellant

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 2024-1757

**Short Case Caption:** Nat'l Veterans Legal Servs. Prog. v. US (Isaacson appeal)

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes  13,772  words.

- [ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

- [ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: July 1, 2024

Signature: /s/ Eric Alan Isaacson

Name: Eric Alan Isaacson

Save for Filing