No. 24-1757

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

NATIONAL VETERANS LEGAL SERVICES PROGRAM, NATIONAL
CONSUMER LAW CENTER, ALLIANCE FOR JUSTICE
Plaintiff-Appellees,

v.

UNITED STATES,
Defendant-Appellee

v.

ERIC ALAN ISAACSON,
Interest Party-Appellant.

---

On Appeal from the United States District Court for the District of Columbia
in case no. 1:16-cv-00745, Judge Paul L. Friedman

---

### BRIEF FOR APPELLEE UNITED STATES

---

BRIAN M. BOYTON
Principal Deputy Assistant
Attorney General
KIRK T. MANHARDT
Director
MARCUS S. SACKS
Senior Litigation Counsel

ALEXIS M. DANIEL
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. BOX 875, Ben Franklin Station
Washington, DC 20044-0875
Telephone: (202) 507-6073
*Attorneys for Appellee United States*

# <u>TABLE OF CONTENTS</u>

STATEMENT OF RELATED CASES ................................................................ 1

STATEMENT OF JURISDICTION .................................................................. 1

STATEMENT OF THE ISSUES ....................................................................... 2

INTRODUCTION ........................................................................................... 3

STATEMENT OF THE CASE SETTING OUT RELEVANT FACTS ................. 5

   I.    Congress Authorizes the Judiciary to Charge Reasonable PACER Fees..... 5

   II.   The Named Plaintiffs Sued the United States in District Court Alleging Violations of the E-Government Act and Obtained Class Certification ............... 7

   III.  This Court Affirmed the District Court's Summary Judgment Order Granting In Part the United States' Motion and Denying Named Plaintiffs' Cross-Motion ………………………………………………………………………………..10

   IV.  On Remand and Following Nearly Two Years of Arms-Length Negotiations, the District Court Approved the Parties' Class-Action Settlement......................11

     A.  The Parties Negotiated a Common Fund Settlement ................................11

     B.  The District Court Approved the Settlement Agreement as Fair, Reasonable, and Adequate ................................................................14

     C.  The District Court Awarded Attorney Fees and Service Awards................21

SUMMARY OF ARGUMENT ...........................................................................26

ARGUMENT......................................................................................................28

   I.    The District Court Possessed Jurisdiction to Approve the Settlement........28

   II.   The District Court Acted Well Within the Boundaries of Its Discretion in Approving the Settlement's Pro Rata Allocation ................................................30

   III.   The District Court's Award of Attorney Fees Was Reasonable .................38

   IV.   The District Court's Service Awards Were Reasonable ...........................40

CONCLUSION .................................................................................................43

## TABLE OF AUTHORITIES

<u>Cases</u>

*Alaska Airlines v. Austin*,
     801 F. Supp. 760 (D.D.C. 1992)......................................................9, 29

*Alaska Airlines, Inc. v. Johnson*,
     8 F.3d 791 (Fed. Cir. 1993) ...........................................................9, 29

*Am. Airlines, Inc. v. Austin*,
     778 F. Supp. 72 (D.D.C. 1991)........................................................... 9

*Bayer CropScience AG v. Dow AgroSciences LLC*,
     851 F.3d 1302 (Fed. Cir. 2017) ..........................................................31

*Bezdek v. Vibram USA, Inc.*,
     809 F.3d 78 (1st Cir. 2015)..................................................................33

*Caligiuri v. Symantec Corp.*,
     855 F.3d 860 (8th Cir. 2017) ...............................................................40

*China Agritech, Inc. v. Resh*,
     584 U.S. 732 (2018)..............................................................................42

*Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*,
     908 F.2d 951 (Fed. Cir. 1990) .............................................................29

*Chula Vista City Sch. Dist. v. Bennett*,
     824 F.2d 1573 (Fed. Cir. 1987) ...........................................................29

*Fager v. CenturyLink Commc'ns, LLC*,
     854 F.3d 1167 (10th Cir. 2016) ...........................................................37

*Haggart v. Woodley*,
     809 F.3d 1336 (Fed. Cir. 2016) ...........................................................31

*Hall v. Sec'y of Health & Hum. Servs.*,
     640 F.3d 1351 (Fed. Cir. 2011)............................................................38

*Health Republic Ins. Co. v. United States*,
    58 F.4th 1365 (Fed. Cir. 2023) .......................................................22, 24, 38, 39

*Herrera v. Charlotte Sch. of L., LLC*,
    818 F. App'x 165 (4th Cir. 2020) .....................................................................33

*In re Apple Inc. Device Performance Litig.*,
    50 F.4th 769 (9th Cir. 2022) .............................................................................41

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ...........................................................35, 36

*In re Blue Cross Blue Shield Antitrust Litig. MDL,*
    *2406*, 85 F.4th 1070 (11th Cir. 2023).................................................................35

*In re Genworth Fin. Sec. Litig.*,
    210 F. Supp. 3d 837 (E.D. Va. 2016)................................................................34

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020)...............................................................34

*In re Nat'l Football League Players Concussion Inj. Litig.*,
    821 F.3d 410 (3d Cir. 2016) .............................................................................37

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ............................................................................31

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) .............................................................................25

*John R. Sand & Gravel Co. v. United States*,
    457 F.3d 1345 (Fed. Cir. 2006) ........................................................................28

*Johnson v. NPAS Sols.*, LLC,
    975 F.3d 1244 (11th Cir. 2020) ....................................................................26, 41

*Juris v. Inamed Corp.*,
    685 F.3d 1294 (11th Cir. 2012) ........................................................................34

*Kang v. Fyson*,
No. 22-15694, 2022 WL 6943174 (9th Cir. Oct. 12, 2022) ...............................34

*Keil v. Lopez*,
862 F.3d 685 (8th Cir. 2017) ...............................................................37

*Moses v. New York Times Co.*,
79 F.4th 235 (2d Cir. 2023) ..............................................40, 41, 42

*Murray v. Grocery Delivery E-Servs. USA Inc.*,
55 F.4th 340 (1st Cir. 2022) ...............................................................41

*Norman v. United States*,
429 F.3d 1081 (Fed. Cir. 2005) .......................................................... 8

*NLVSP v. United States*,
968 F.3d 1340 (Fed. Cir. 2020) .................................................1, 11

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ........................................................................34

*R.R. & Banking Co. v. Pettus*,
113 U.S. 116 (1885) ........................................................................41

*Rohm & Haas Co. v. Brotech Corp.*,
127 F.3d 1089 (Fed. Cir. 1997) .......................................................31

*Ruzhinskaya v. Healthport Techs., LLC*,
311 F.R.D. 87 (S.D.N.Y. 2015) ......................................................36

*Safeguard Base Operations, LLC v. United States*,
989 F.3d 1326 (Fed. Cir. 2021) .......................................................28

*Scott v. Dart*,
99 F.4th 1076 (7th Cir. 2024) ..........................................................41

*Simanonok v. Simanonok*,
918 F.2d 947 (Fed. Cir. 1990) .........................................................30

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) .........................................................33, 34

*Trustees v. Greenough*,
   105 U.S. 527 (1881).........................................................................41

*United States v. Louisville & Nashville R.R. Co.*,
   221 F.2d 698 (6th Cir. 1955) ............................................................ 9

*United States v. Navarro*,
   160 F.3d 1254 (9th Cir. 1998) .........................................................30

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ..............................................................37

## Statutes

28 U.S.C. § 1292(b) .............................................................................10

28 U.S.C. §1295(a)(2).......................................................................2, 29

28 U.S.C. § 1346(a) ........................................................................1, 3, 8

28 U.S.C. § 1346(a)(2)......................................................................8, 29

28 U.S.C. § 1913..........................................................................6, 7, 13

Pub. L. 107-347 ................................................................................. 6

## Rules

Fed. R. of Civ. P. 23(e) .............................................................4, 15, 30

Fed. R. Civ. P. 23(e)(2)......................................................................17

Fed. R. Civ. P. 23(e)(2)(A)-(D)..........................................................31

Fed. R. Civ. P. 23(e)(2)(D)................................................................40

FED. R. CIV. P. 23(h) ................................................................................38

**STATEMENT OF RELATED CASES**

This class action was previously before this Court on interlocutory cross-appeals of the U.S. District Court for the District of Columbia's order denying plaintiffs' motion for summary judgment and granting in part defendant's cross-motion. The district court certified its summary judgment order for interlocutory appeal, and this Court granted the parties' motions for permission to appeal. The cross-appeals were docketed in this Court as *National Veteran Legal Services Program, et al. v. United States*, Nos. 18-154 & 18-155 (petitions for leave to appeal), 19-1081 (lead) & 19-1083 (cross-appeal). In a published opinion dated August 6, 2020, this Court affirmed the district court's summary judgment ruling. *NLVSP v. United States*, 968 F.3d 1340 (Fed. Cir. 2020).

On December 21, 2021, class member Michael T. Pines filed a notice of appeal to the U.S. Court of Appeals for the District of Columbia Circuit, seeking review of the district court's order denying his motion to intervene. This appeal was docketed by the D.C. Circuit as No. 21-5291. It was dismissed for lack of prosecution, by order of the Clerk of the Court, on September 28, 2022.

**STATEMENT OF JURISDICTION**

The district court had jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a). The district court entered final judgment approving the parties' class action settlement on March 20, 2024. Mr. Eric Isaacson, a member of the class,

1

objected to the settlement and filed a notice of appeal on April 18, 2024. This

Court has jurisdiction over this appeal under 28 U.S.C. §1295(a)(2).

## STATEMENT OF THE ISSUES

1.  Did the district court correctly decline to aggregate separate PACER

transactions, none of which had a fee in excess of $10,000, in concluding that it

had jurisdiction under the Little Tucker Act to approve the settlement?

2.  After considering the parties' litigation risks, the adequacy of Class

Counsel's advocacy, the nature of the negotiations between the parties, the

proposed settlement terms that would fully reimburse the majority of class

members, and both timely and untimely objections, did the district court abuse its

discretion in approving the class action settlement that includes pro rata

distribution for class members who paid over $350 in PACER fees during the class

period?

3.  After considering a reasonable fee based on a percentage of the fund

bestowed on the class and conducting a lodestar cross-check that showed Class

Counsel's requested attorney fees and expenses were within an acceptable range

under this Court's precedent, did the district court abuse its discretion in granting

Class Counsel its requested fees?

4.  Did the district court abuse its discretion when it granted reasonable service

awards to compensate Named Plaintiffs—lawyers who invested attorney time and

expenses—consistent with the overwhelming majority of circuit courts that have addressed the integrity of such payments?

## INTRODUCTION

This appeal arises from the district court's approval of a settlement resolving over 500,000 claims against the United States related to allegedly excessive PACER fees in exchange for $125 million. The settlement was the result of extensive and protracted arms' length negotiations between the United States and the Named Plaintiffs, and their respective, experienced counsel, and came only after years of litigation wherein the parties exchanged informal discovery, briefed class certification and dismissal motions, and filed competing cross-motions for summary judgment—followed by competing cross-appeals that resolved some but not all of the parties' disputes. From this settlement, the majority of class members—those who paid $350 or less in PACER fees during the class period— will receive full reimbursement for their fees; the remaining class members will receive $350 plus a pro rata payment proportional to their fees paid during the class period.

Now, one objector, Mr. Eric Isaacson, seeks to undo that settlement. Mr. Isaacson first argues that the district court lacked jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a), to approve the settlement. However, the district

court appropriately exercised jurisdiction under the Little Tucker Act because no PACER transaction fee was in excess of $10,000.

Mr. Isaacson also argues that the district court abused its discretion in finding that the settlement was fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e). Mr. Isaacson specifically attacks the settlement's pro rata allocation of funds, insisting that this plan unfairly favors large-scale users. He asserts that the cut-off for full reimbursement should have been "much higher," Isaacson Br. 46, and that any pro rata distributions of the remaining funds should not exceed $10,000 per claimant. But Mr. Isaacson offers no argument or authorities that support a finding of abuse of discretion by the district court, particularly when pro rata allocation plans are inherently equitable because they compensate claimants based on the extent of their injuries. Moreover, the district court approved the settlement's allocation plan only after a scrupulous review of the settlement's terms and the case's history against the commands of Rule 23. Where, as here, the district court faithfully applied the tenets of Rule 23 to hold that the settlement agreement was fair, reasonable, and adequate, there is no abuse of discretion and no basis for reversal.

Finally, Mr. Isaacson argues that the district court abused its discretion by granting Class Counsel's requested attorney fees, and that the district court erred in approving $10,000 service awards to the three Named Plaintiffs. Mr. Isaacson is

4

wrong. In awarding attorney fees, the district court followed precedent and awarded a reasonable fee based on a percentage of the fund bestowed on the class. The service awards reasonably and appropriately compensated Named Plaintiffs for their attorney time and expenses and foster the public policy of encouraging class representatives to participate in litigation.

For these reasons, the United States urges this Court to affirm the final judgment of the district court.

## STATEMENT OF THE CASE SETTING OUT RELEVANT FACTS

### I.   Congress Authorizes the Judiciary to Charge Reasonable PACER Fees

In 1988, the Judicial Conference of the United States "authorized an experimental program of electronic access to court information[,]" Appx3033, resulting in the creation of the "Public Access to Court Electronic Records System, or "PACER." Appx3, Appx2859. Prior to 1988, federal courts operated exclusively on paper, and members of the public who wanted to view court dockets or filings "had to travel to the courthouses where those records physically existed." Appx3. Through PACER, the public could access court documents without the need to review physical records. Appx3.

Shortly after its inception, Congress determined that PACER users, rather than taxpayers generally, should fund public access initiatives and required the federal judiciary to collect reasonable fees to cover the costs of providing "access

to information available through automatic data process equipment." Appx3084, Appx2742. By 1998, PACER transitioned from operating as a dial-up phone connection in which users were charged fees by the minute and moved online. Once online, the judiciary began charging users on a per-page basis. Appx2756, Appx3086. These fees were used to pay for programs such as Case Management/Electronic Case Filing (CM-ECF), the system allowing parties to file documents electronically, as well as Electronic Bankruptcy Noticing ("EBN"). Appx4, Appx2750.

In 2002, Congress passed the E-Government Act. *See* E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (2002) (codified at 28 U.S.C. § 1913 note). In relevant part, the E-Government Act amended the statutory note to 28 U.S.C. § 1913 to read:

COURT FEES FOR ELECTRONIC ACCESS TO INFORMATION

[. . . .]

(a) The Judicial Conference may, only to the extent necessary, prescribe reasonable fees . . . for collection by the courts . . . for access to information available through automatic data processing equipment. . . . The Director of the Administrative Office of the United States Courts . . . shall prescribe a schedule of reasonable fees for electronic access to information which the Director is required to maintain and make available to the public.

(b) . . . All fees hereafter collected by the Judiciary under paragraph (a) as a charge for services rendered shall be deposited as offsetting collections . . . to reimburse expenses incurred in providing these services.

6

28 U.S.C. § 1913 note (internal quotation marks omitted); *see* E-Government Act of 2002, § 205(e).

At the time of the E-Government Act's passage, PACER fees were set at $0.07 per page and thereafter increased to $0.08 per page in 2005 and $0.10 in 2012, reflective of the judiciary's understanding that Congress "expected [the judiciary] to use PACER fee revenue to fund CM/ECF operations and management." Appx2710, Appx2756. Before a user can download or access a record from PACER, they must agree to pay the associated per-page fee, not to exceed $3 per record. The user must pay the fee unless they receive a waiver or incur less than $15 in fees in a quarter. Appx2758. The judiciary ultimately used the fees to fund CM/ECF, EBN, courtroom technology upgrades, an online Jury Management System ("Web Juror"), a Violent Crime Control Act ("VCCA") notification system, and a study to determine the feasibility of providing access to state court documents through CM/ECF (the "State of Mississippi Study"). Appx5, Appx2750.

## II.    The Named Plaintiffs Sued the United States in District Court Alleging Violations of the E-Government Act and Obtained Class Certification

In April 2016, the National Veterans Legal Services Program, the National Consumer Law Center, and the Alliance for Justice (the Named Plaintiffs)—nonprofit organizations who pay PACER fees—sued the United States in the district court, Appx107, alleging that the judiciary violated the E-Government Act

by charging PACER fees that exceeded what was "necessary to recover the cost of providing access to electronic records." Appx111. The Named Plaintiffs are represented by Gupta Wessler LLP and Motley Rice LLC (Class Counsel). Appx2433.

The Named Plaintiffs specifically alleged that each individual download of a public record for which they were overcharged gave rise to a separate "illegal exaction" claim, Appx120—i.e., a claim that money was "improperly paid, exacted, or taken from the claimant" in violation of law, *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005)—and requested "refund[s] of the excessive PACER fees illegally exacted," Appx120. The Named Plaintiffs invoked the district court's jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a), which provides district courts concurrent jurisdiction with the Court of Federal Claims over a "civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon . . . any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2). The Named Plaintiffs alleged that "[e]ach plaintiff and putative class member has multiple individual illegal-exaction claims against the United States, none of which exceeds $10,000." Appx110.

Following the district court's denial of the United States' motion to dismiss, the district court certified a class (over the United States' objection) consisting of "[a]ll individuals and entities who have paid fees for their use of PACER between

April 21, 2010, and April 21, 2016, excluding class counsel in this case and federal government entities." Appx2433. Class members were given notice and an opportunity to opt out. Appx7.

When evaluating the Named Plaintiffs' request for class certification, the district court expressly considered whether potential class members possessed claims exceeding the Little Tucker Act's $10,000 jurisdictional cap. Appx2439. ("Although defendant has not raised any jurisdictional arguments in its opposition to class certification, courts must assure themselves that they have jurisdiction."). The court reasoned that "[a] suit in district court under the Little Tucker Act may seek over $10,000 in total monetary relief, as long as the right to compensation arises from separate transactions for which the claims do not individually exceed $10,000." Appx2440 (citing *Am. Airlines, Inc. v. Austin*, 778 F. Supp. 72, 76-77 (D.D.C. 1991); *Alaska Airlines v. Austin*, 801 F. Supp. 760, 762 (D.D.C. 1992), *aff'd in relevant part by Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 797 (Fed. Cir. 1993); *United States v. Louisville & Nashville R.R. Co.*, 221 F.2d 698, 701 (6th Cir. 1955). Having confirmed that the United States did not dispute that "no class member has a claim exceeding $10,000 for a single PACER transaction," Appx2440, the district court determined that plaintiffs' "monetary claims [did] not exceed the jurisdictional limitation of the Little Tucker Act." Appx2440.

9

**III.    This Court Affirmed the District Court's Summary Judgment Order Granting In Part the United States' Motion and Denying Named Plaintiffs' Cross-Motion**

Following class certification and informal discovery, the parties filed cross-motions for summary judgment on liability and asked the district court to decide the central question in this case: Under the E-Government Act, what categories of expenses may be funded by PACER fees? Appx7, Appx3444.

The Named Plaintiffs argued that the Act "prohibits the [judiciary] from charging more in PACER fees than is necessary to recoup the total marginal cost of operating PACER." Appx2617. Under the Named Plaintiffs' reading, no additional categories of expenses were permitted. The United States defended all additional categories of expenses as lawful and urged the court to adopt a broader reading of the statute that would allow the judiciary to "charge fees, as it deems necessary, for the provision of information to the public through electronic means[.]" Appx3013.

The district court rejected the Named Plaintiffs' interpretation as too narrow and the United States' interpretation as too broad. The district court concluded that the judiciary "properly used PACER fees to pay for CM/ECF and EBN, but should not have used PACER fees to pay for the State of Mississippi Study, VCCA, Web-Juror, and most of the expenditures for [c]ourtroom [t]echnology." Appx3476.

At the parties' request, the district court certified its summary judgment order for interlocutory appeal under 28 U.S.C. § 1292(b). Appx3669. With this

Court's permission, the parties filed cross-appeals and, in August 2020, this Court affirmed the district court's interpretation of the E-Government Act. *NVLSP v. United States*, 968 F.3d 1340 (Fed. Cir. 2020) (stating that the district court "got it just right"). This Court—understanding that Named Plaintiffs alleged "separate 'illegal exaction' claims," *id.* at 1345, stemming from "individual download[s]," *id.*—agreed that the E-Government Act "limited PACER fees to the amount needed to cover expenses incurred in services providing public access to federal court electronic docketing information." *Id.* at 1343, 1350. Applying this interpretation to the contested categories of expenses, a Panel of this Court agreed with the district court that the judiciary lawfully used PACER fees for PACER, CM-ECF, and EBN operating costs, but that it should not have used fees for the State of Mississippi Study, VCCA, Web-Juror, and most courtroom technology expenses. *Id.* at 1358. This Court declined to answer whether it was lawful for PACER fees to fund all CM/ECF expenditures, holding that the issue was not properly before it, *Id.* at 1358-59, and remanded for further proceedings.

## IV.     On Remand and Following Nearly Two Years of Arms-Length Negotiations, the District Court Approved the Parties' Class-Action Settlement

### A. The Parties Negotiated a Common Fund Settlement

On remand in September 2020, the parties began settlement discussions. Appx4225. The United States maintained it was not liable for any damages to class

members because the class could not prove that the PACER fees would have been lower but for the unlawful expenditures. Additionally, the United States explained that all CM/ECF expenditures, which made up a significant amount of the class's potential recovery, were properly funded by PACER fees. Appx4225. Conversely, the Named Plaintiffs contended that liability had been established, and that some portion of the CM/ECF expenditures were likely improper. Appx4225. The parties understood that, were the case to remain on a litigation track, a resolution would likely require years of protracted litigation, including a lengthy formal discovery process that would require the judiciary to reconstruct line-item expenses, a trial on damages, and potentially a second appeal. Appx4225. Moreover, there was considerable uncertainty about any resolution. Appx4226.

Hoping to bridge the divide and avoid years of costly litigation, the parties agreed to engage in mediation, Appx4225, and obtained a stay from the district court. Appx99.

In the months that followed, the parties prepared and exchanged substantive memoranda, providing comprehensive reviews of the strengths and weaknesses of their competing positions. Appx4225. They participated in an all-day mediation on May 3, 2021, Appx4225, and, after several weeks of negotiations and with the help of a skilled mediator, the parties ultimately settled on a common fund amount of $125 million. Appx4226-4227.

12

It would take many months of additional negotiations for the parties to agree to the settlement's terms, and the parties had starkly different positions on how the funds should be distributed. Appx4226. Plaintiffs argued that funds should be distributed pro rata to class members, while the United States insisted that any settlement include a large minimum amount per class member, Appx4226, which was in keeping with the Administrative Office of the U.S. Court's longstanding policy and statutory authority to "distinguish between classes of persons" in setting PACER fees "to avoid unreasonable burdens and to promote public access to such information." 28 U.S.C. § 1913 note.

Finally, in July 2022, the parties finalized a settlement agreement that balanced these competing approaches by creating a common fund of $125 million for distribution to over 500,000 persons or entities who paid PACER fees between April 21, 2010 and May 31, 2018 (the Class Period), excepting those who opted out, federal agencies, and Class Counsel.[1] Appx3977, Appx4227. All users who incurred $350 or less in PACER fees will recover those fees, reimbursing the majority of class members in full for their PACER expenses during the Class Period. Appx3982, Appx4231. All users who incurred more than $350 in PACER fees will recover $350 plus a pro rata share of their excess fees. Appx3982-3983.

_____

[1] This agreement was amended in September 2022 and again in April 2023 (collectively, the Settlement Agreement). Appx3993, Appx3997.

13

From the common fund, at least 80 percent ($100 million) is to be distributed to class members. Appx3982. Class members need not submit claims to receive their share of the common fund; instead, a claims administrator will use information provided by the judiciary, which maintains comprehensive records of PACER registrants and the fees paid, to identify class members and distribute payments. Appx3981.

Up to 20 percent of the common fund ($25 million) can be used for attorney fees, litigation expenses, and service awards for the class representatives. Appx3986. The Settlement Agreement provides for the district court to determine whether any requested attorney fees or service awards are reasonable, but specifies that the service awards cannot exceed $10,000 per class representative. Appx3986.

## B. The District Court Approved the Settlement Agreement as Fair, Reasonable, and Adequate

The district court granted preliminary approval of the settlement in May 2023. Appx4073. In July 2023, using the government's PACER registration data and billing records, the claims administrator identified 506,989 PACER account holders to be notified and transmitted the court-approved settlement notice through email and postcards, providing notice of the settlement amount, an overview of the litigation, information about opting out or submitting objections, and a link to a website dedicated to the settlement. Appx4287-4290. The claims administrator also issued publication notice through a widely disseminated press release and a

banking newsletter. Appx4289. Only thirty-three individuals opted out of the settlement class; two class members submitted timely objections. Appx11, Appx4292.

The district court held a fairness hearing to consider final approval of the Settlement Agreement on October 12, 2023 (the "Settlement Hearing"). Appx105, Appx4706. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the district court undertook an exhaustive review of the Settlement Agreement to determine whether it was fair, reasonable, and adequate, "looking to the paramount twin elements of procedural and substantive fairness." Appx14. At the Settlement Hearing, the parties presented opening statements, and the district court allowed objectors to offer statements, gave the parties an opportunity to respond to the objections, and heard from the parties and objectors on the issue of attorney fees. Appx11-12, Appx4706-4800.

As to procedural fairness, the district court appropriately considered whether: "(A) the class representatives and class counsel have adequately represented the class; [and] (B) the proposal was negotiated at arm's length." Appx14 (quoting FED. R. CIV. P. 23(e)). The district court recognized that the Named Plaintiffs and Class Counsel "more than 'adequately represented' the class," Appx15, having "vigorously litigated [the] case for nearly eight years, . . . engaged in informal discovery, argued (and in part, won) summary judgment, and

15

successfully defended the summary judgment ruling on appeal." Appx15. And, on remand, Named Plaintiffs and Class Counsel "engaged in [arm's length] settlement negotiations with the government . . . at a point in the litigation where liability was resolved but there were still significant questions about the possibility, and amount, of damages." Appx15. "[B]ecause of significant informal discovery . . . the parties were well-positioned to mediate their claims." Appx16 (internal quotation omitted). That these negotiations took nearly two years and came together with the help of an experienced mediator "indicat[ed] skilled negotiation on both sides." Appx16.

The district court also concluded that Rule 23's notice requirements were satisfied, stating that the notice provided "was more than sufficient and was reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Appx17 (internal quotations omitted).

The district court then endeavored to evaluate whether the Settlement Agreement was substantively fair under "the substantive factors enumerated in the Federal Rules of Civil Procedure." Appx19. The district court carefully considered the adequacy of the relief provided, the effectiveness of the proposed method of distributing relief, Appx19-28, and whether the settlement "treat[ed] class members equitably relative to each other." Appx19 (discussing FED. R. CIV. P. 23(e)(2)).

16

When evaluating the adequacy of the Settlement Agreement's relief, the district court recognized that the proposed relief was "substantial" and that a "majority of class members will receive a full refund for the PACER fees they paid[.]" Appx19. The minority of class members who paid over $350 in fees would still receive "substantially more than $350." Appx19. Given that "[t]here are not claims to process, and class members will receive the relief even if they never contacted the Class Counsel or claims administrator," "the proposed method of distributing relief is efficient." Appx19 (internal quotations omitted).

The district court contrasted this relief with the "potential costs, risks, and delay of trial and appeal." Appx20 (internal quotations omitted). This Court's liability ruling "left open the question of the extent to which it was lawful for the judiciary to fund CM/ECF through PACER fees." Appx20. At maximum, the class could recover $500 million—but, notwithstanding the costs of trial and another appeal, "the path to obtaining this $500 million would have been anything but smooth," Appx20, and there were several reasons to think full recovery was "unrealistic." Appx20.

First, the class would have to overcome the United States' contention that there were *no* damages because the class could not prove that PACER fees would have been lower but for the unlawful expenditures. Appx20. Even if the class could prove damages, much of the potential recovery came from fees to pay for CM/ECF

17

services—which may very well have been lawful. Appx20. There was thus an open

question as to the recoverability of a sizeable portion of the potential damages.

Appx21. In light of these "substantial risk[s]," the district court found the common

fund amount "was impressively large in comparison to the risks to continue

litigating." Appx21.

The district court next determined that the Settlement Agreement treated

class members equitably. Appx23. The court acknowledged that the Settlement

Agreement differentiated between those who paid $350 or less in PACER fees and

those who paid more, but recognized that "this difference in treatment is fair and

justified." Appx23. There was "no indication that Class Counsel 'sold out' any

group of class members in this case." Appx23. Instead, the Settlement Agreement

struck a balance between two competing goals: affording relief to small-scale

PACER users (including non-lawyer members of the public and individual law

practitioners), and treating all class members (including large-scale users like law

firms) equitably, based on what they actually paid. Appx23. That the parties

engaged in "vigorous negotiation[s]" further reflected the reasonableness of the

compromise. Appx24.

The district court also considered the handful of objections received. Only

two individuals from the class of over 500,000 submitted timely objections to the

Settlement Agreement, but the district court considered three additional tardy

objections, one of which came from an individual who likely did not qualify as a class member. Appx24. The district court noted that "the relative paucity of objections . . . is a strong indicator of the adequacy of relief." Appx22. As the district court accurately explained, the settlement class includes "hundreds of thousands of PACER users" including "the most litigious group of people and entities ever assembled in a single class action . . . including federal-court litigators, and law firms of every stripe." Appx22.

Mr. Isaacson lodged a series of objections. In relevant part,[2] Mr. Isaacson asserted that class members whose aggregated claims totaled over $10,000 were outside the district court's jurisdiction under the Little Tucker Act and should thus be excluded from the class. Appx26. The district court rejected this challenge, explaining that "[t]his argument misunderstands the law" and reiterating its earlier conclusion that "a suit in district court under the Little Tucker Act may seek over $10,000 in total monetary relief, as long as the right to compensation arises from separate transactions for which the claims do not individually exceed $10,000." Appx26.

Mr. Isaacson also objected to the pro rata distribution of the common fund, asserting that it unfairly favored large-scale over small-scale users. Appx24. The

---

[2] Mr. Isaacson made several objections that were overruled by the district court and have now been abandoned. For example, the district court concluded that Mr. Isaacson's argument that "the settling parties arranged with the court to keep class members' objections off the public record," Appx18, had no basis in fact.

district court explained, however, that "courts routinely approve settlements providing for pro rata distributions because such distributions directly account for the differences in the value of the claims of different class members." Appx25 (collecting cases). And, as the district court reasoned, "[Mr. Isaacson's] dissatisfaction arises from the amount of the common fund [and] there is simply not enough money in the common fund to reimburse every class member for all of what they paid in PACER fees – nor should there be, as some of the fees were lawful." Appx25.

Mr. Isaacson's grievance was also at odds with a fellow objector's complaint—that the settlement unfairly favored small-scale users over large scale users. Appx25. The district court observed that "these arguments cannot both be correct, and the fact that each was made indicates, if anything, a good compromise." Appx25.

Mr. Isaacson also objected that large law firms that had potentially received reimbursements from clients should not benefit from the Settlement Agreement. The district court overruled this objection, reasoning that only the law firms could have sued the government, because the clients paid the firms and "damages under the Little Tucker Act are available only to those who paid unlawful fees to the government[.]" Appx26. Whether the clients may have claims for reimbursement

against the law firms was "between lawyers and their clients and beyond the scope of this litigation." Appx27.

Having completed its exhaustive review of the Settlement Agreement, the district court described the settlement as "historic," Appx47, concluding that "the benefits offered to class members by the Agreement are substantial and the likely outcome for the class if the case were to proceed to trial is uncertain." Appx28. Thus, the district court held that "[t]he Agreement is fair, reasonable, and adequate." Appx28.

### C. The District Court Awarded Attorney Fees and Service Awards

The Settlement Agreement authorizes attorney fees, costs, and service awards up to 20 percent of the common fund, or $25 million. The Settlement Agreement does not fix an amount of attorney fees or service awards but instead sets the upper limit on what Class Counsel could request and specifies that service awards cannot exceed $10,000 per Named Plaintiff. The Settlement Agreement tasks the court with determining the reasonableness of any requested fees, expenses, and awards. Appx3986.

Class Counsel ultimately requested the maximum allowed by the settlement, $23,863,345.02 in attorney fees, $1,106,654.98 in costs, and $30,000 in service awards ($10,000 for each of the three Named Plaintiffs). Appx4133. Before undertaking a review of Class Counsel's request, the district court determined that

the "fees provision" was reasonable for it did "not fix an amount of attorney's fees or services awards"; "instead, it sets an upper limit on both" and "leaves to the Court the ultimate determinations of how much to award." Appx22, Appx3986.

The United States did not oppose Class Counsel's request. However, the government "provid[ed] some context and further information to aid the Court in its determination as to fees, costs, and service awards." Appx4356. Specifically, the United States conveyed that Class Counsel's "declarations . . . provide[d] little, if any, explanation" for nearly $1 million in anticipated future work. Appx4359. The United States also flagged for the district court's consideration this Court's preferred practice of conducting a "lodestar cross-check," Appx4362, where "the reasonableness of a potential percentage-of-the-fund fee is checked by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier." Appx32 (quoting *Health Republic Ins. Co. v. United States*, 58 F.4th 1365, 1372 (Fed. Cir. 2023)). If the "multiplier is too great, the court should reconsider its calculation . . . with an eye toward reducing the award." Appx32 (quoting *Health Republic Ins. Co.*, 58 F.4th at 1372). In sum, the United States counseled that "[t]he Court should carefully examine this [requested] fee to ensure that class members' rights and recovery are appropriately safeguarded." Appx4364.

In response, Class Counsel submitted supplemental declarations providing additional support for their estimates. Appx4365-4436. Class Counsel also

explained that the "possibility of an appeal is very real given that [Mr. Isaacson] . . . has objected to many class-action settlements and [] has pursed appeals after his objections were overruled." Appx4371. The United States confirmed at the Settlement Hearing that the supplemental declarations remedied its concerns with Class Counsel's initial submissions, Appx4785, Appx4788, while maintaining that "the Court, as a general matter, may conduct the [lodestar] cross-check anyways just to assure itself that the amount that is requested is reasonable." Appx4785.

With these materials in hand, as well as objections from Mr. Isaacson and others, and recognizing its duty in common-fund cases to "ensure that claims for attorneys are reasonable," the district court scrutinized Class Counsel's request, "carefully considering the submissions of the parties, the relevant Federal Rule, and the case law," as well as the objections. Appx29. The district court understood that its "independent scrutiny" was critical because "the fee award comes out of, and thus directly reduces, the class recovery." Appx30.

In conducting its review, the district court acknowledged the "two approaches to calculating reasonable attorney's fees in common funds cases." Appx30. One is the "percentage-of-the-fund method, through which 'a reasonable fee is based on a percentage of the fund bestowed on the class.'" Appx30 (quoting *Health Republic Ins. Co.*, 58 F.4th at 1371). The other is a lodestar method, "through which the court calculates the product of reasonable hours times a

23

reasonable rate," and adjusts if necessary. Appx30 (quoting *Health Republic Ins. Co.*, 58 F.4th at 1371). The district court recognized it had discretion to use either method, but the first was favored in common fund cases and endorsed by the Named Plaintiffs and the United States in this case. Appx30. The district court considered the following factors in completing this analysis:

> (1) the quality of counsel; (2) the complexity and duration of the litigation; (3) the risk of nonrecovery; (4) the fee that likely would have been negotiated between private parties in similar cases; (5) any class members' objections to the settlement terms or fees requested by class counsel; (6) the percentage applied in other class actions; and (7) the size of the award.

Appx31 (quoting *Health Republic Ins. Co.*, 58 F.4th at 1372).

The district court also recognized, as the United States asserted, that this Court "has strongly suggested using a lode-star cross-check" when the percentage method is used. Appx32 (citing *Health Republic Ins. Co.*, 58 F.4th at 1374 n.2). Thus, the district court considered the requested percentage award against each of this Court's enumerated factors and also conducted a lodestar cross-check. The district court rejected Mr. Isaacson's contention that it was required to use the lodestar method exclusively, noting that his argument "relie[d] primarily on Supreme Court precedent discussing fee-shift cases and on precedent predating Rule 23 and the modern class action lawsuit." Appx33 (collecting cases). The district court also rejected Mr. Isaacson's "demand [for] itemized records of hours

billed," which was the type of "bean counting" that courts caution against. Appx43 (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005)). The district court further declined the United States' invitation to estimate Class Counsel's hourly rates using the U.S. Attorney's Office Fitzpatrick Matrix (Fitzpatrick Matrix) instead of Class Counsel's actual rates, stating that this matrix was "intended for use in cases in which a fee-shift statute" applies, not "common fund class actions." Appx43.

With respect to the Rule 23 factors, the district court concluded that "there is no dispute about the competency of class counsel[,]" Appx34, that the litigation was "reasonably complex" (rejecting Mr. Isaacson's assertion that it was "easy to litigate"), Appx34, and presented an "exceptionally high risk of nonrecovery," Appx35, and that "the requested percentage is around the average for common funds in the range of the fund created by the settlement." Appx41. Although the size of the request is large, "so is the class members' total recovery," and the request was comparable to awards in comparator cases. Moreover, the district court's lodestar cross-check resulted in a multiplier of 3.96, which "is within the normal range of one to four[.]" Appx45. While "admittedly[] on the high end of" that range, the district court determined that the award was "warranted due to the risk Class Counsel took on in agreeing to litigate the case." Appx45.

The district court also granted the requested service awards, finding that it had discretion to do so and the requested awards were reasonable. Appx46. The district court did so over Mr. Isaacson's objection that the awards were "unlawful," a position supported primarily by "nineteenth-century Supreme Court precedent," and "disagree[d] with" by the "overwhelming majority of circuits." Appx46 (internal quotations omitted). Even the one outlier circuit to agree with Mr. Isaacson's position (the Eleventh Circuit) permitted plaintiffs to be reimbursed for attorney fees and expenses, and the Named Plaintiffs here, "having performed invaluable work" that otherwise "would have had to be performed by class counsel[,]" Appx46, had each "expended over $10,000 worth of attorney time and expenses[.]" Appx46 (citing *Johnson v. NPAS Sols.*, LLC, 975 F.3d 1244, 1255 (11th Cir. 2020)).

The district court entered its "Final Judgment and Order on Final Approval of Class Settlement, Attorney's Fees, Costs, and Service Awards" on March 30, 2024, Appx49, and this appeal followed.

## SUMMARY OF ARGUMENT

After years of contentious litigation and good faith, vigorous negotiations, the parties to this class action successfully executed a settlement agreement resolving over 500,000 claims against the United States and fully reimbursing the majority of class members. This settlement, meticulously reviewed by the district

court and approved in its sound discretion, should not be undone at the unsubstantiated request of a single objector.

First, the district court lawfully exercised jurisdiction over the Settlement Agreement under the Little Tucker Act because the PACER downloads were individual transactions and none had a fee in excess of $10,000.

Second, no part of the district court's careful analysis of the Settlement Agreement was abusive. Specifically, the district court's approval of the Settlement Agreement's pro rata plan of distribution stands on sound legal footing. The district court engaged in a conscientious study of the Settlement Agreement under governing law and reasonably determined that the common fund was "substantial," the class representation "adequate," and the negotiations appropriately conducted at "arms-length." Moreover, contrary to Mr. Isaacson's misstated contention that the Settlement Agreement harms small-scale users, the Settlement Agreement guarantees that the majority of users will receive full reimbursement of their expenses. Accordingly, this Court should affirm the district court's holding that the Settlement Agreement is fair, reasonable, and adequate.

Finally, the district court acted reasonably and did not abuse its discretion in granting Class Counsel's requested fees and expenses and the Named Plaintiff's service awards up to $10,000. After considering a reasonable fee based on a percentage of the fund bestowed on the class and conducting a lodestar cross-check

that showed Class Counsel's requested attorney fees and expenses were within an acceptable range under this Court's precedent, the district court appropriately granted Class Counsel its requested fees. And the district court reasonably granted the service awards to the Named Plaintiffs—lawyers who expended more than $10,000 in attorney time and expense—consistent with the overwhelming majority of circuit courts that have addressed the integrity of such payments. Indeed, even the one outlier circuit court supports compensation to the Named Plaintiffs here.

## ARGUMENT

### I.      The District Court Possessed Jurisdiction to Approve the Settlement

The district court had jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a), to resolve the class members' claims through the Settlement Agreement.

This Court "review[s] de novo the Claims Court's jurisdiction as a question of law." *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1339 (Fed. Cir. 2021) (citing *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354 (Fed. Cir. 2006)).

The Little Tucker Act provides district courts concurrent jurisdiction with the Court of Federal Claims over a "civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon . . . any express or implied

contract with the United States."[3] 28 U.S.C. § 1346(a)(2). In class actions, "there is no aggregation of claims." *Chula Vista City Sch. Dist. v. Bennett*, 824 F.2d 1573, 1579 (Fed. Cir. 1987). Instead, "[t]he claim of each member of the class must be examined separately to determine whether it meets the jurisdictional requirement." *Id.*

In this litigation, no class member possesses a claim exceeding $10,000 arising from an individual PACER transaction. Thus, even if the plaintiffs' claims in the aggregate exceeded $10,000, the district court had jurisdiction to adjudicate the case and approve the Settlement Agreement. As the district court recognized, a plaintiff's total recovery may exceed $10,000 without divesting the district courts of concurrent jurisdiction under the Little Tucker Act. *Alaska Airlines v. Austin*, 801 F. Supp. 760, 762 (D.D.C. 1992) (holding that jurisdiction existed under Little Tucker Act and that it was inappropriate to aggregate claims where each one arose from a transaction for less than $10,000 even though total recovery was in the millions), *aff'd sub nom. Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791 (Fed. Cir.

---

[3] This Court has exclusive jurisdiction over appeals from Little Tucker Act suits, and the law of this Court applies to both the merits of those cases and related procedural issues. 28 U.S.C. § 1295(a)(2); *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 952-53 (Fed. Cir. 1990).

1993) (stating that the district court had concurrent jurisdiction under Little Tucker

Act).[4]

Thus, the Little Tucker Act vested the district court with jurisdiction to

approve the Settlement Agreement inclusive of all claimants, including those

whose total recovery may exceed $10,000.

## II.     The District Court Acted Well Within the Boundaries of Its Discretion in Approving the Settlement's Pro Rata Allocation

Federal Rule of Civil Procedure 23(e) provides that the court may approve a

settlement of claims of a certified class that is "fair reasonable and adequate" based

on a consideration of whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;

---

[4] Mr. Isaacson attempts to rely upon the Department of Justice's Justice Manual (Justice Manual), which "publicly sets forth internal policies and procedures" for the Department of Justice, to support his position that a user's PACER transaction fees must be aggregated into a single claim for jurisdictional purposes. *See* U.S. Department of Justice, *Justice Manual*, § 1-1.100, https://www.justice.gov/jm/justice-manual. But the Justice Manual speaks only to how to assess the amount of a claim where the damages continue to "accrue," Justice Manual – Civil Resource Manual § 47, such as the back pay claims presented in *Simanonok v. Simanonok*, 918 F.2d 947, 950-51 (Fed. Cir. 1990) ("[T]he amount of a claim against the United States for back pay is the total amount of back pay the plaintiff stands ultimately to recover in the suit and is not the amount of back pay accrued at the time the claim is filed."). Here, in contrast, the PACER transactions have fully accrued and there is no dispute that each individual transaction was under $10,000. In any event, the Justice Manual is an internal document; it "does not have the force of law and could not itself affect . . . the jurisdiction of the courts." *United States v. Navarro*, 160 F.3d 1254, 1257 n.4 (9th Cir. 1998).

(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under RCFC 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2)(A)-(D).

This Court reviews the district court's determination that the agreement was "fair, reasonable, and adequate" for abuse of discretion. *Haggart v. Woodley*, 809 F.3d 1336, 1346 (Fed. Cir. 2016). Review for abuse of discretion is "extremely limited, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015), and when engaging in such review this Court"refuses to substitute its judgment for that of the trial court." *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1093 (Fed. Cir. 1997). Moreover, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Online DVD-Rental*, 779 F.3d at 944. A district court is guilty of abusing its discretion only where it commits "a clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings." *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017) (internal quotations omitted).

The district court faithfully discharged its duties under Rule 23, approving the Settlement Agreement only after scrutinizing the agreement's terms against

each of the factors delineated in Rule 23(e) and thoughtfully considering the handful of objections received. Specifically, the district court credited Class Counsel's "vigorous" advocacy over nearly a decade; the "skilled negotiations" on both sides that followed disputes over class certification, dispositive motions, and a cross-appeal; the significant recovery to class members including a full refund to most; the "substantial risks" the class would face in continued litigation; and the notice that was afforded to class members, whose objections the district court considered.

Mr. Isaacson's appeal focuses on one term of the Settlement Agreement: its pro rata distribution for those class members whose claims exceed $350, arising from Mr. Isaacson's belief that the Settlement Agreement unfairly favors "large-scale" PACER users over small-scale users and thus does not treat class members equitably. Mr. Isaacson argues that "the first distribution . . . should have been capped at a much higher level than $350 apiece." Isaacson Br. 46. Mr. Isaacson does not otherwise contest the substance of the settlement as reasonable, fair, and, adequate.

Thus, the sole question this Court must answer regarding the Settlement Agreement's fairness is the adequacy of its allocation plan. This plan, which reimburses all class members up to $350 (ensuring that the majority of class members are fully compensated) and then provides pro rata distributions of the

remaining funds, is equitable and the district court did not abuse its discretion in approving it. The district court possessed discretion over how to "allocate the proceeds among the claiming class members equitably," *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011), and the specific question of whether pro rata allocation is "fair, reasonable, and adequate" "is intensely fact-based, falling within the purview of the district court's [discretion]." *Id.* The district court here acted soundly within that discretion when approving the Settlement Agreement.

First, the district court approved the Settlement Agreement only after analyzing it "with painstaking care," *Herrera v. Charlotte Sch. of L., LLC*, 818 F. App'x 165, 176 (4th Cir. 2020), and "carefully consider[ing] . . . the plan of allocation," *Sullivan*, 667 F.3d at 328, against the backdrop of this class action and Rule 23. No part of this analysis was erroneous or abusive, including the district court's approval of the partial pro rata distribution plan. Indeed, as the district court aptly put it, such plans are on "sound legal footing." Appx25 (collecting cases). The district court correctly recognized that pro rata allocation plans are widely recognized as equitable because "such distributions directly account for the differences in the value of the claims of different class members." Appx25. *See*, *e.g.*, *Sullivan*, 667 F.3d at 328 (recognizing that pro rata distribution plans are widely accepted as equitable in class actions and affirming the district court's approval thereof); *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 80 (1st Cir. 2015)

33

(affirming approval of class action settlement that refunded members on a pro rata basis); *Kang v. Fyson*, No. 22-15694, 2022 WL 6943174, at *3 (9th Cir. Oct. 12, 2022) ("[P]ro rata calculation is a simple, efficient, and reasonable way of allocating damages. The district court therefore did not abuse its discretion in approving it."); *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020) (explaining that courts "uniformly approve" class action settlements allocating funds on a pro rata basis as "equitable"); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 843 (E.D. Va. 2016) (approving pro rata allocation as "fair, reasonable, and adequate").

Not only do courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable," *Sullivan*, 667 F.3d at 328, but "fair treatment" has been historically "assured by . . . pro rata distribution[.]"*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (discussing Rule 23 requirements in "limited fund" class action). Contrary to Mr. Isaacson's allegations of inequity, claimants "can hardly make any challenge to the equity among the class members" when they are compensated on a "pro rata basis." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1336 n.45 (11th Cir. 2012) (discussing *Ortiz*, 527 U.S. at 856).

Second, Mr. Isaacson's position that the Settlement Agreement here unfairly favors large-scale users to the detriment of small-scale users is incorrect. Due to

the United States' vigorous advocacy in negotiations, the Settlement Agreement *does* protect small-scale users: before the pro rata distribution kicks in, the majority of class members (those who paid less than $350 in PACER fees during the class period) will receive full compensation for their claims. It is true that large scale users will receive greater payouts—but they also "bore a heavier monetary burden" than small scaler users, *In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1101 (11th Cir. 2023); the pro rata distribution thus "might be *unequal*, but it is not *inequitable*." *Id.* (emphasis added). And, as the district court correctly analyzed, it is reasonable that there will not be full compensation for all class members because at least *some* PACER fees were lawfully charged. Appx25.

Mr. Isaacson's insistence that the proposed pro rata distribution is inequitable stems, at least in part, from his belief that large-scale users may have been reimbursed by clients and thus have not suffered as much as small-scale users such as himself. But the district court soundly addressed this concern: regardless of whether large firms were reimbursed, only the firms have claims under the Little Tucker Act, because the clients never paid any unlawful fees to the judiciary, Appx27—a point Mr. Isaacson does not dispute. If the law firms are excluded from recovering, then no compensation will ever be paid for those PACER transactions. To the extent the clients may have claims against the firms for reimbursement, that is "between lawyers and their clients and beyond the scope of this litigation."

Appx27 (citing *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 967 (N.D. Ill. 2011) (explaining that if class members were reimbursed by third parties, "then the question whether such Class Members must in turn reimburse [the third parties] is a separate matter involving a question of law and equity between the [Class Member] and [third party].")); *see also Ruzhinskaya v. Healthport Techs., LLC*, 311 F.R.D. 87, 101 (S.D.N.Y. 2015) (granting class certification over objection that some potential attorney class members may have been reimbursed by clients and noting that "it is reasonable to expect an attorney to abide by a fiduciary and/or contractual duty to return to the client money the client paid but which has been recouped.").

And, as the district court reasonably opined, it would be unduly burdensome on the claims administrator to review and resolve questions related to whether and what extent law firms' PACER bills were ultimately reimbursed by clients. Such disputes are best left to the law firm class members and their clients. The clients may very well have legal claims for reimbursement against the law firms to the extent the law firms do not *sua sponte* reimburse them for any fees paid. But these inquiries raise "question[s] of law and equity," *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d at 967, separate from the present matter. "Allowing [that] process to play out" does not make the Settlement Agreement "inequitable." Appx28.

Finally, the "paucity of objections received" from "the most litigious group of people and entities ever assembled in a single class action," Appx22, and that two of those objections challenged the pro rata allocation from opposite angles, Appx24, as well as the nominal number of opt outs, further supports the district court's conclusion that the settlement is fair, reasonable, and adequate. *E.g.*, *Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) (explaining that the "small" number of objections "weigh[ed] in favor of approving the settlement) (collecting cases); *Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1175 (10th Cir. 2016) (affirming where "the [district] court found that . . . the dearth of opposition—only a few class members opted out and [Mr. Isaacson] filed the only objection— implied that the settlement is fair."); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

For these reasons, the Court should credit the thoughtful and thorough analysis of the district court. A settlement need not satisfy every class member to pass muster under Rule 23. *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 447 (3d Cir. 2016) ("It is the nature of a settlement that some will be dissatisfied with the ultimate result[,]" and a class action settlement does not have to be "perfect" to be "fair"). As the district court correctly recognized, the parties here carefully crafted a compromise that balances competing interests and

risks, and that will provide complete relief to the majority of class members and

compensate the remaining class members proportional to their alleged injuries.

That this balance was indisputably struck only after extensive arms-lengths

negotiations between sophisticated parties with conflicting perspectives, and that

one objector wanted more pro rata distribution and one objector wanted less,

reflects what the district court properly identified as a "good compromise."

## III.    The District Court's Award of Attorney Fees Was Reasonable

Mr. Isaacson disputes the reasonableness of the district court's decision to

grant Class Counsel's requested attorney fees and expenses of $23,663,345.02.

"[T]he standard of review for the determination of reasonable attorneys' fees

is abuse of discretion." *Hall v. Sec'y of Health & Hum. Servs.*, 640 F.3d 1351, 1356

(Fed. Cir. 2011).

The district court's decision to grant Class Counsel's requested attorney fees

and expenses after applying the factors delineated in Rule 23 was reasonable and

well within its discretion. *See Hall*, 640 F.3d at 1356; FED. R. CIV. P. 23(h) ("In a

certified class action, the court may award reasonable attorney's fees and

nontaxable costs that are authorized by law or by the parties' agreement."). The

district court also acted reasonably and well within its discretion in utilizing the

percentage-of-the-fund approach. *See Health Republic Ins. Co. v. United States*, 58

F.4th 1365, 1371 (Fed. Cir. 2023).

The United States did not oppose the request in the district court because the information presented supported the attorney fee award. The United States "provided some context and further information," Appx4356, for the district court's consideration "to ensure that the Court had sufficient information in the record [upon which] to base its decision in awarding the full amount of fees." Appx4788. The United States also identified discrepancies in the Class Counsel's declarations accompanying the fees requests and invited the district court to conduct a lodestar crosscheck, Appx4359-4363. The district court accepted this invitation, and its lodestar crosscheck confirmed that the Class Counsel's request fell within an acceptable range (1-4). Appx42, Appx45 (collecting cases); *see also Health Republic*, 58 F.4th at 1367 ("A number of courts have surveyed relevant fee awards and noted a norm of implicit multipliers in the range of 1 to 4.").

In response to the United States' comments, Class Counsel filed supplemental declarations resolving the United States' concerns arising from gaps in Class Counsel's initial submissions related to work that had to yet to be performed. Appx4365, Appx4788. And, while the United States directed the district court to the Fitzpatrick Matrix, which can serve as a useful tool when identifying the reasonableness of fee requests, the United States ultimately recognized that the district court was authorized to award reasonable fees in its discretion. Appx4789.

For these reasons, the district court was well within its discretion in awarding Class Counsel the requested fee award.

## IV.    The District Court's Service Awards Were Reasonable

Finally, Mr. Isaacson challenges the district court's grant of $10,000 service awards to the Named Plaintiffs. This decision is also reviewed for abuse of discretion. *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867-68 (8th Cir. 2017).

The district court acted within its discretion in granting $10,000 service awards to the Named Plaintiffs, who "expended over $10,000 worth of attorney time and expenses in leading this litigation." Appx46. Mr. Isaacson does not contest that the Named Plaintiffs made these expenditures or that they exceeded $10,000. Instead, Mr. Isaacson contends that any service (or incentive) awards are prohibited by the Supreme Court (and the Eleventh Circuit). Not so.

Service awards are consistent with Rule 23, which requires courts to approve settlement proposals only if they "treat[] class members equitably *relative* to each other." Fed. R. Civ. P. 23(e)(2)(D) (emphasis added). "[A]n overwhelming majority of [] circuits have concluded that district courts are permitted to grant incentive awards" because they "encourage class representatives to participate in class action lawsuits" and "often level the playing field and treat differently situated class representatives equitably relative to the class members who simply sit back until they are alerted to a settlement." *Moses v. New York Times Co.*, 79 F.4th 235, 253

(2d Cir. 2023) (collecting case from the First, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and D.C. Circuits). The Eleventh Circuit is the only federal court of appeals to "depart from this universal[] consensus." *Id.* at 254 (rejecting objector Eric Isaacson's request to follow the Eleventh Circuit's ruling in *Johnson v. NPAS Sols.*, LLC, 975 F.3d 1244, 1257 (11th Cir. 2020)). *Compare Scott v. Dart*, 99 F.4th 1076, 1088 (7th Cir. 2024) ("Consistent with historical practice, our precedent, and the majority view on the issue, we conclude that incentive awards to named plaintiffs are permitted so long as they comply with the requirements of Rule 23."); *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 353 (1st Cir. 2022) ("[W]e choose to follow the collective wisdom of courts over the past several decades that have permitted these sorts of incentive payments."); *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 787 (9th Cir. 2022) ("So long as [incentive payments] are reasonable, they can be awarded."), *with Johnson*, LLC, 975 F.3d at 1257 ("We reverse the district court's approval of [the] incentive award[.]"). And, notably, even the Eleventh Circuit, despite its rejection of awards "designed to induce a class representative to participate in a suit," endorses reimbursing plaintiffs, such as the Named Plaintiff attorneys here, for their attorney fees and expenses. *Johnson*, 975 F.3d at 1257 (internal quotations omitted).

Mr. Isaacson's reliance on two Supreme Court cases from more than 135 years ago is similarly misplaced. Isaacson Br. 49 (citing *Trustees v. Greenough*,

105 U.S. 527 (1881), and *R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885)). As the Second Circuit explained last year, "*Greenough* and *Pettus* have been superseded, not merely by practice and usage, but by Rule 23, which creates a much broader and more muscular class action device than the common law predecessor that spawned the nineteenth-century precedents." *Moses*, 79 F.4th at 254-55 (concluding it was "bound by the framework of Rule 23 in modern class actions"). Thus, *Greenough* and *Pettus* are not, and could not be, controlling on the question before the district court and this Court: the fairness and propriety of the service awards granted to the Named Plaintiffs under Rule 23. Moreover, "the Supreme Court appears to have left *Greenough* and *Pettus* in the rear view"—in 2018, "without reference to either case, the Supreme Court acknowledged that a class representative 'might receive a share of class recovery above and beyond her individual claim.'" *Id.* at 255 (citing *China Agritech, Inc. v. Resh*, 584 U.S. 732, 747 n.7 (2018)).

Thus, the district court's provision of service awards to the Named Plaintiffs is not contrary to law and the district court was well within its discretion to award $10,000 to each Named Plaintiff.

## CONCLUSION

For the reasons stated herein, the judgment of the district court should be affirmed.

October 11, 2024                    Respectfully submitted,

                                   BRIAN M. BOYTON
                                   Principal Deputy Assistant
                                   Attorney General
                                   KIRK T. MANHARDT
                                   Director
                                   MARCUS S. SACKS
                                   Senior Litigation Counsel

                                   ALEXIS M. DANIEL
                                   Commercial Litigation Branch
                                   Civil Division
                                   Department of Justice
                                   P.O. BOX 875, Ben Franklin Station
                                   Washington, DC 20044-0875
                                   Telephone: (202) 507-6073

                                   Attorneys for Appellee United States

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2024, I electronically filed the foregoing brief with the Clerk of this Court by using the CM/ECF system. Service will be accomplished through the CM/ECF system.

/s/ Alexis M. Daniel
ALEXIS M. DANIEL

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** <u>24-1757</u>

**Short Case Caption:** <u>NVLSP v. US</u>

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [✓] the filing has been prepared using a proportionally-spaced typeface and includes <u>9615</u> words.

- [ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

- [ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>10/11/2024</u>

Signature: <u>/s/ *Alexis M. Daniel*</u>

Name: <u>Alexis M. Daniel</u>

Save for Filing