**2024-1757**

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

NATIONAL VETERANS LEGAL SERVICES PROGRAM, NATIONAL CONSUMER LAW CENTER, ALLIANCE FOR JUSTICE, Plaintiffs-Appellees,

v.

UNITED STATES, Defendant-Appellee.

v.

ERIC ALAN ISAACSON, Interested Party-Appellant

Appeal from the United States District Court
for the District of Columbia
in 1:16-cv-00745-PLF
The Honorable Paul L. Friedman

PETITION FOR REHEARING
AND FOR REHEARING EN BANC

ERIC ALAN ISAACSON
LAW OFFICE OF ERIC ALAN ISAACSON
6580 Avenida Mirola
La Jolla, CA 92037-6231
Telephone: (858) 263-9581
Email: ericalanisaacson@icloud.com

*Interested Party-Appellant*

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-1757

**Short Case Caption** National Veterans Legal Services Prog. v. United State

**Filing Party/Entity** Eric Alan Isaacson, Interested Party-Appellant

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: May 4, 2026

Signature: s/ Eric Alan Isaacson

Name: Eric Alan Isaacson

**FORM 9. Certificate of Interest**                                    Form 9 (p. 2)
                                                                      March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Eric Alan Isaacson | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES ..................................................................... ii

RULE 40(b)(2) STATEMENT ................**Error! Bookmark not defined.**

QUESTION PRESENTED ...................................................................... 2

I.    STATEMENT OF THE CASE ....................................................... 3

II.   REASONS FOR GRANTING EN BANC REHEARING ................. 5

III.  REASONS FOR GRANTING PANEL REHEARING ................... 16

IV.   CONCLUSION ............................................................................ 18

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Sandoval,*
     532 U.S. 275 (2001)......................................................................14–15

*Alyeska Pipeline Serv. Co. v. Wilderness Society,*
     421 U.S. 240 (1975)...........................................................................6

*Amchem Products, Inc. v. Windsor,*
     521 U.S. 591 (1997)..........................................................................14

*Boeing Co. v. Van Gemert,*
     444 U.S. 472 (1980)......................................................................2, 6–7

*Central R.R. & Banking Co. v. Pettus,*
     113 U.S. 116 (1885).............................................1–3, 5–10, 15–16

*China Agritech, Inc. v. Resh,*
     584 U.S. 732 (2018)..........................................................................16

*In re Dry Max Pampers Litig.,*
     724 F.3d 713 (6th Cir.2013)...........................................................12

*Egbert v. Boule,*
     596 U.S. 482 (2022)..........................................................................15

*In re Equifax Inc. Customer Data Sec. Breach Litig.,*
     999 F.3d 1247 (11th Cir.2021)..................................................... 5, 7

*Fikes Wholesale, Inc. v. HSBC Bank USA,*
     62 F.4th 704 (2d Cir.2023).........................................................2, 8–9

*Fleischmann Distilling Corp. v. Maier Brewing Co.,*
     386 U.S. 714 (1967)............................................................................6

*Hadix v. Johnson,*
     322 F.3d 895 (6th Cir.2003).......................................................12–13

*Haggart v. Woodley,*
　　809 F.3d 1336 (Fed.Cir.2016)......................................................5–6

*Hyland v. Navient Corp.,*
　　48 F.4th 110 (2d Cir.2022)............................................................8

*Johnson v. NPAS Solutions, LLC,*
　　975 F.3d 1244 (11th Cir.2020),
　　*reh'g denied,* 43 F.4th 1138
　　(11th Cir.2022)........................................................................2, 5, 7

*Knight v. United States,*
　　982 F.2d 1573 (Fed.Cir.1993)........................................................6

*Medical & Chiropractic Clinic, Inc. v. Oppenheim,*
　　981 F.3d 983 (11th Cir.2020)......................................................5, 7

*Melito v. Experian Marketing Solutions,*
　　923 F.3d 85 (2d Cir.2019)..............................................................8

*Mickens v. Taylor,*
　　535 U.S. 162 (2002)......................................................................16

*Moses v. New York Times Co.,*
　　79 F.4th 235 (2d Cir. 2023)............................................................9

*Shalala v. Illinois Council on Long Term Care,*
　　529 U.S. 1 (2000)..........................................................................16

*Shane Group v. Blue Cross Blue Shield of Michigan,*
　　825 F.3d 299 (6th Cir. 2016)....................................................12–13

*Smith v. Swormstedt,*
　　57 U.S. (16 How.) 288 (1853)..........................................................9

*Supreme Tribe of Ben-Hur v. Cauble,*
　　255 U.S. 356 (1921)........................................................................9

*Thornton v. E. Tex. Motor Freight,*
　　497 F.2d 416 (6th Cir.1974)......................................................10–12

*Touche Ross & Co. v. Redington,*
        442 U.S. 560 (1979)..................................................................................15

*Trustees v. Greenough,*
        105 U.S. 527 (1882)..................................................1–3, 5–10, 15–16

*US Airways, Inc. v. McCutchen,*
        569 U.S. 88 (2013)......................................................................................6

*Vassalle v. Midland Funding LLC,*
        708 F.3d 747 (6th Cir.2013)................................................................12

**Statutes**

Rules Enabling Act
        28 U. S. C. §2072(b)................................................................................14

**Rules**

FRAP 40(b)(2).................................................................................................1

Fed.R.Civ.P. 23..........................................................................................8–13

**Miscellaneous**

Anne Ashmore,
        *Dates of Supreme Court Decisions and Arguments:*
        *United States Reports Volumes 2-107 (1791-1882)*
        (Library of the Supreme Court of the United States,
        August 2006), online:
        https://www.supremecourt.gov/opinions/datesofdecisions.pdf ;
        https://bit.ly/3G8HQGm ; https://perma.cc/4DJC-JT4S ..................3

John P. Dawson,
*Lawyers and Involuntary Clients:*
*Attorney Fees from Funds,*
87 Harv.L.Rev. 1597 (1974).......................................................7, 10

Howard M. Downs,
*Federal Class Actions: Diminished Protection*
*for the Class and the Case for Reform,*
73 Neb.L.Rev. 646 (1994)................................................................13

Theodore Eisenberg & Geoffrey P. Miller,
*Incentive Awards to Class Action Plaintiffs:*
*An Empirical Study,* 53 U.C.L.A. L.Rev. 1303 (2006)....................13

Geoffrey C. Hazard, Jr., et al.,
*An Historical Analysis of the Binding Effect of Class Suits,*
146 U.Pa.L.Rev. 1849 (1998)..........................................................11

Thomas E. Willging, Laural L. Hooper & Robert J. Niemic,
*An Empirical Analysis of Rule 23 to Address*
*the Rulemaking Challenges,*
71 N.Y.U. L.Rev. 74 (1996)............................................................13

**FED.CIR. RULE 40(c)(1) STATEMENT**

Based on my professional judgment, I believe the panel decision is contrary to the following decisions of the Supreme Court of the United States:

*Trustees v. Greenough,* 105 U.S. 527, 537-38 (1882)

*Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116, 122 (1885)

/s/ Eric Alan Isaacson
Eric Alan Isaacson

LAW OFFICE OF ERIC ALAN ISAACSON
6580 Avenida Mirola
La Jolla, CA 92037-6213
Telephone: (858) 263-9581
Email: ericalanisaacson@icloud.com

-1-

## QUESTION PRESENTED

"Since the decisions in *Trustees v. Greenough,* 105U.S. 527 (1882), and *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116 (1885)," the Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). But those decisions also hold that payments to representative plaintiffs for their own "personal services" in litigating such cases are "decidedly objectionable," "illegally made," *Greenough,* 105 U.S. at 537–38, and "unsupported by reason or authority." *Pettus,* 113 U.S. at 122.

The Eleventh Circuit thus holds that "Supreme Court precedent prohibits incentive awards" designed to reward settling plaintiffs for serving as class representatives. *Johnson v. NPAS Solutions, LLC,* 975 F.3d 1244, 1255 (11th Cir.2020), *reh'g denied,* 43 F.4th 1138 (11th Cir.2022). The Second Circuit recognized in *Fikes Wholesale, Inc. v. HSBC Bank USA,* 62 F.4th 704, 721 (2d Cir.2023), moreover, that such "[s]ervice awards are likely impermissible under Supreme Court precedent." The question presented for en banc consideration thus is:

> May federal courts, consistent with the common-fund doctrine of *Greenough* and *Pettus,* approve payments from class-action common-fund settlement funds to compensate litigants for their personal service as representative plaintiffs?

-2-

## I.    STATEMENT OF THE CASE

This appeal involves the settlement of a class action creating a common fund of $125 million. Under the common-fund doctrine established by the Supreme Court's decisions in *Trustees v. Greenough,* 105 U.S. 527, 537-38 (1882)("*Greenough*"), and *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, 122 (1885)("*Pettus*"), class counsel applied for, and was awarded, a common-fund attorney's fee award of approximately 19.1% of the settlement fund. [1]

The Named Plaintiffs also applied for, and were awarded, $10,000 apiece as "incentive awards" or "service awards" to compensate them for their service as representative plaintiffs in this class-action litigation under Federal Rule of Civil Procedure 23, and to encourage others to pursue future litigation.

---

[1] Although the Panel Opinion gives *Greenough'*s year of decision as 1881, it was in fact argued on March 15, 1882, and decided on May 8, 1882. *See* Anne Ashmore, *Dates of Supreme Court Decisions and Arguments: United States Reports Volumes 2-107 (1791-1882)* at 162 (Library of the Supreme Court of the United States, August 2006), online: https://www.supremecourt.gov/opinions/datesofdecisions.pdf                ; https://bit.ly/3G8HQGm ;  https://perma.cc/4DJC-JT4S.

A member of the plaintiff class, Intervenor-Appellant Eric Alan Isaacson objected below, both to the requested common-fund attorney's fee award, and to the $10,000 incentive awards.

Isaacson objected to the amount of the requested attorney's fees, contending that Class Counsel would be adequately compensated by an unenhanced lodestar award, and that they had submitted inadequate documentation to support even a cross-check of the percent-of-fund fee award that they sought. Appx4505-4510(DE166-5:9-14).

Isaacson also objected that "service award" payments of $10,000 apiece to each of the Named Plaintiffs are prohibited by Supreme Court precedent. Appx4510-4513(DE166-5:14-17).

On appeal, a panel of this Court affirmed the incentive awards, rejecting Isaacson's contention that *Greenough* and *Pettus* prohibit such payments from common-fund recoveries. Isaacson respectfully seeks en banc review of this ruling. *Infra* 5–16.

With respect to Isaacson's objection to the attorney's fee award, the Panel Opinion relies on documentation that the District Court expressly excluded. Isaacson respectfully seeks panel rehearing to correct this error. *Infra* 16–17.

-4-

## II.    REASONS FOR GRANTING EN BANC REHEARING

The Panel Opinion's decision sustaining "incentive awards" or "service awards" that compensate representative plaintiffs from common-fund recoveries directly conflicts with the Supreme Court's foundational common-fund precedents: *Trustees v. Greenough,* 105 U.S. 527, 532 (1882), and *Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116, 128 (1885). The Eleventh Circuit soundly holds: "Supreme Court precedent prohibits incentive awards." *Johnson v. NPAS Solutions, LLC,* 975 F.3d 1244, 1255 (11th Cir.2020), *reh'g denied,* 43 F.4th 1138 (11th Cir.2022).[2]

Hailing from bondholder's class actions of the late nineteenth century, *Greenough* and *Pettus* still are controlling precedents that continue to govern the litigation and settlement of common-fund class actions. As this Court explained in *Haggart v. Woodley*, 809 F.3d 1336, 1352 (Fed.Cir.2016):

> The common fund doctrine is rooted in the traditional practice of courts of equity and derives from the equitable power of the courts under the doctrines of *quantum meruit, Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116, 128 (1885), and unjust enrichment, *Trustees v. Greenough,* 105 U.S. 527, 532 (188[2]).

---

[2] *Accord In re Equifax Inc. Customer Data Sec. Breach Litig.,* 999 F.3d 1247, 1257 (11th Cir.2021)("such awards are prohibited"); *Medical & Chiropractic Clinic, Inc. v. Oppenheim,* 981 F.3d 983, 994 n.4 (11th Cir.2020)("such service awards are foreclosed by Supreme Court precedent").

*Haggart*, 809 F.3d at 1352; *see also Knight v. United States,* 982 F.2d 1573, 1580 (Fed.Cir.1993)(discussing *Greenough* and *Pettus*). *Greenough* and *Pettus* remain vibrant controlling precedents in common-fund cases like this one. *See, e.g., Boeing v. Van Gemert,* 444 U.S. at 478; *US Airways, Inc. v. McCutchen,* 569 U.S. 88, 100 & 104 (2013)(favorably citing *Greenough* and *Pettus*); *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 257–58 (1975)(same); *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 719 (1967)(same); *Haggart,* 809 F.3d at 1352 (same); *Knight,* 982 F.2d 1573, 1580 (same).

Together, *Greenough* and *Pettus* hold that attorney's fees may be awarded from a common fund or equitable fund based either on the attorney's fees reasonably incurred and billed, *see Greenough*, 105 U.S. at 530-31, 537-38, or as a modest percentage of the fund, *see Pettus,* 113 U.S. at 128 (cutting fee award from 10% to 5%), but that payments to representative plaintiffs for their own "personal services" in litigating such cases are prohibited. *See Greenough,* 105 U.S. at 537–38; *Pettus,* 113 U.S. at 122.

"Since the decisions in *Trustees v. Greenough*, 105 U.S. 527 (1882), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885), [the Supreme] Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a

whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *see generally* John P. Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds,* 87 Harv.L.Rev. 1597, 1601-09 (1974).

But *Greenough* and *Pettus* also hold that while representative plaintiffs whose efforts produce a common fund for the benefit of a class may recover their reasonable attorney's fees and litigation expenses from the common fund, payments to compensate named plaintiffs for their personal services as class representatives are flatly illegal. *See Greenough,* 105 U.S. at 537-38; *Pettus,* 105 U.S. at 122. The Supreme Court's foundational common-fund precedents directly hold that payments to representative plaintiffs for their own "personal services" are "decidedly objectionable," "illegally made," *Greenough,* 105 U.S. at 537–38, and "unsupported by reason or authority." *Pettus,* 113 U.S. at 122.

These decisions have never been overruled, whether by judicial decision, statute, or rule. The Eleventh Circuit thus has soundly concluded that ""Supreme Court precedent prohibits incentive awards." *Johnson v. NPAS Solutions, LLC,* 975 F.3d 1244, 1255 (11th Cir.2020), *reh'g denied,* 43 F.4th 1138 (11th Cir.2022).[3] A Second Circuit panel

---

[3] *Accord In re Equifax Inc. Customer Data Sec. Breach Litig.,* 999 F.3d 1247, 1257 (11th Cir.2021)("such awards are prohibited"); *Medical & Chiropractic Clinic, Inc. v. Oppenheim,* 981 F.3d 983, 994 n.4 (11th

recognized in *Fikes Wholesale v. HSBC Bank USA,* 62 F.4th 704, 721 (2d Cir.2023), moreover, that "[s]ervice awards are likely impermissible under Supreme Court precedent."

The *Fikes Wholesale* panel nonetheless adhered to Second Circuit precedent that, in the interim, had erroneously allowed incentive awards—in direct conflict with the Supreme Court's foundational common-fund decisions—because in the Second Circuit "practice and usage seem to have superseded *Greenough* (if that is possible)." *Fikes Wholesale,* 62 F.4th at 721. In a concurring opinion *Fikes Wholesale*'s author, Judge Dennis Jacobs, explained that the panel could not follow the Eleventh Circuit's "thorough and well-reasoned opinion" in *Johnson v. NPAS Solutions*, because the Second Circuit "has twice come out the opposite way," first in *Melito v. Experian Marketing Solutions,* 923 F.3d 85, 96 (2d Cir.2019), which had contained no real analysis, and then in *Hyland v. Navient Corp.,* 48 F.4th 110, 124 (2d Cir.2022), which "over-read *Melito* to hold that 'Rule 23 does not per se prohibit service awards.'" *Fikes Wholesale,* 62 F.4th at 729 (Jacobs, Cir.J., concurring). As a consequence of *Melito* and *Hyland*, Judge Jacobs observed, "we now find ourselves on the wrong side of a circuit split." *Fikes Wholesale,*, 62 F.4th at 729 (Jacobs, Cir.J., concurring). The Second Circuit thus continues to

---

Cir.2020)("such service awards are foreclosed by Supreme Court precedent").

sustain incentive awards, whatever *Greenough* and Pettus may say. *See id.; see also, e.g., Moses v. New York Times Co.,* 79 F.4th 235, 253 (2d Cir. 2023)(following *Fikes Wholesale, Melito,* and *Hyland*). This Court should not.

The Panel Opinion asserts that *Greenough* and *Pettus* may be ignored because the "law-suits at issue in Greenough and Pettus bear little resemblance to today's class actions." Panel Op. 22. But that is not true. Although the Federal Rules date to 1938, the both the common-fund doctrine and class actions preceded Rule 23 by many decades. *See Supreme Tribe of Ben-Hur v. Cauble,* 255 U.S. 356, 363 (1921)("Class suits have long been recognized in federal jurisprudence.")(citing, e.g., *Smith v. Swormstedt,* 57 U.S. (16 How.) 288, 303 (1853)).

In fact, the *Greenough* and *Pettus* cases were themselves class actions filed on behalf of bondholders, and are therefore directly analogous to more recent securities class actions. *Greenough* in particular was filed as a class action by Francis Vose, a bondholder "of the Florida Railroad Company, on behalf of himself and the other bondholders." *Greenough,* 105 U.S. at 528. He prosecuted the case as a class action that he had "filed not only in behalf of the complainant himself, but in behalf of the other bondholders." *Id.* at 532. As a bondholder, the Supreme Court explained, Vose "was a creditor, suing on behalf of himself and other

creditors, for his and their own benefit and advantage." *Greenough,* 105 U.S. at 537. *Greenough* plainly was a common-fund class action.

*Pettus* was similarly "framed as a class action,"[4] and emphasized that *Greenough* "was instituted by the holder of the bonds of a railroad company, on behalf of himself and other bondholders." *Pettus,* 113 U.S. at 122. These were not merely common-fund cases; they were common-fund class actions. The Panel Opinion errs by dismissing *Greenough* and *Pettus* as irrelevant to class actions.

Adopted in 1938 to standardize proceedings in federal class actions, and amended in 1966 to rationalize and expand the class-action device, Rule 23 says absolutely nothing to overrule or limit *Greenough* and *Pettus*. The Panel Opinion acknowledges that "Rule 23 is silent with respect to incentive awards." Panel Op. 18. So *Greenough* and *Pettus* still control common-fund class actions.

Citing a 1974 Sixth Circuit decision, the Panel Opinion nonetheless asserts that in the face of Rule 23's silence,

> soon after Rule 23's inception, courts began approving incentive awards for class representatives. *See, e.g., Thornton v. E. Tex. Motor Freight,* 497 F.2d 416, 420 (6th Cir.1974).

---

[4] John P. Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds,* 87 Harv.L.Rev. 1597, 1608 (1974).

Panel Op. 18.

That is not really accurate. Class actions were well known in American jurisprudence when the rules governing them were standardized in Rule 23, which has governed federal class actions since 1938. Federal courts found in Rule 23 no authorization for awarding special bonuses to class representatives, and half a century they declined to do so. Amendments of 1966 modernized Rule 23 class-action procedures in several respects. *See* Geoffrey C. Hazard, Jr., et al., *An Historical Analysis of the Binding Effect of Class Suits,* 146 U.Pa.L.Rev. 1849, 1861–65 (1998).

But the modifications said nothing to authorize incentive awards, and federal courts, for decades more, found no basis for creating a system of special payments to reward representative plaintiffs.

The Panel Opinion accordingly errs in asserting that federal courts did so "soon after Rule 23's inception." Panel Op. at 18. It gives the Sixth Circuit's decision in *Thornton v. E. Tex. Motor Freight,* 497 F.2d 416, 420 (6th Cir.1974), as an example. Panel Opinion 18. *Thornton,* of course, was decided 36 years after Rule 23's inception in 1938, and roughly eight years after Rule 23's 1966 revision. That said, the Sixth Circuit's opinion

11

in *Thornton* neither mentions nor approves of incentive awards to representative plaintiffs. Far from authorizing incentive awards since the 1970s, the Sixth Circuit has repeatedly questioned the practice.

In 2013, for example, the Sixth Circuit invalidated a settlement that included the payment of incentive awards, writing:

> Our court has never approved the practice of incentive payments to class representatives, though in fairness we have not disapproved the practice either. *See Vassalle* [*v. Midland Funding LLC,* 708 F.3d 747,] 756 [(6th Cir.2013)]. Thus, to the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design. And we have expressed a "sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain."

*In re Dry Max Pampers Litig.,* 724 F.3d 713, 722 (6th Cir.2013)(quoting *Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir.2003)).

In 2016, the Sixth Circuit reiterated that ""[o]ur court has never approved the practice of incentive payments to class representatives."" *Shane Group v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299, 311 (6th Cir.2016)(quoting *Dry Max Pampers,* 322 F.3d at 722)(quoting *Hadix,* 322 F.3d at 897). In fact, the Sixth Circuit's decisions have repeatedly expressed "a 'sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise

the interest of the class for personal gain.'" *Shane Group,* 825 F.3d at 311 (quoting *Hadix,* 322 F.3d at 897). These decisions avoided "the 'difficult issue' of the propriety of incentive awards." *Id.* (quoting *Hadix,* 322 F.3d at 898).

Not until the late 1980s and early 1990s—decades after the 1966 revisions to Rule 23—did federal district courts' nonprecedential orders and opinions begin to include the unprecedented novelty of incentive awards to representative plaintiffs. "Beginning around 1990, however, awards for representative plaintiffs began to find readier acceptance," and soon orders "approving incentive awards proliferated," so that "[b]y the turn of the century, some considered these awards to be 'routine.'"[5] The Panel Opinion recognizes as much. Panel Opinion 19. But it offers no explanation for why it took decades before federal courts started

---

[5] Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 U.C.L.A. L.Rev. 1303, 1310-11 & n.21 (2006); *see also* Howard M. Downs, *Federal Class Actions: Diminished Protection for the Class and the Case for Reform,* 73 Neb.L.Rev. 646, 673 (1994)("Cases in the late 1970s and early 1980s abhorred such preferences, but recent cases permit such practices more freely.")(footnotes omitted); Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *An Empirical Analysis of Rule 23 to Address the Rulemaking Challenges,* 71 N.Y.U. L.Rev. 74, 101 n.102 (1996).

awarding incentive awards that were suddenly needed to realize Rule 23's longstanding policies.

The Panel Opinion suggests that incentive awards are good public policy, because they encourage the filing and settlement of class actions. But it is for Congress, not the judiciary, to decide whether class-action litigation needs any special incentivizes. By its terms, Rule 23 creates no new right to any incentive award in addition to the attorneys' fees and litigation expenses long authorized by *Greenough* and *Pettus.* "Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right.'" *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 613 (1997) (quoting 28 U. S. C. §2072(b)).

Federal judges are no more entitled to create incentive awards under Rule 23 than they are to create new implied causes of action under any other statute or rule. Financial incentives to sue, like "private rights of action to enforce federal law[,] must be created by Congress." *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001)(citing *Touche Ross & Co. v. Redington,* 442 U.S. 560, 578 (1979)(available remedies are limited

to those "that Congress enacted into law")). Whether or not federal judges think that incentive awards promote policies underlying Rule 23, "Congress is 'far more competent than the Judiciary' to weigh such policy considerations." *Egbert v. Boule,* 596 U.S. 482, 491(2022). It is for Congress to create incentive awards, not the courts. Without clear congressional intent to create a new cause of action, none exists, "and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute" or rule that it supposedly promotes. *Alexander,* 532 U.S. 275, 286–87 (2001). "'Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.'" *Id.* at 287 (citation omitted).

The Panel Opinion suggests that the rule of *Greenough* and *Pettus* may be ignored for the further reason that the payment sought by Vose was too extravagant, amounting perhaps to a "salary." But the Supreme Court never suggested that smaller request would be permitted. *Greenough* and *Pettus* lay down a bright-line rule that payments to representative plaintiffs for their own "personal services" in litigating such cases are "decidedly objectionable," "illegally made," *Greenough,* 105

15

U.S. at 537–38, and "unsupported by reason or authority." *Pettus,* 113 U.S. at 122.

Although the Panel Opinion also notes dictum in *China Agritech v. Resh,* 584 U.S. 732, 747 n.7 (2018), to the effect that "class representative might receive a share of class recovery above and beyond her individual claim," that decision does not cite, let alone, overrule the holdings of *Greenough* and *Pettus.* The Supreme Court "does not normally overturn, or so dramatically limit, earlier authority sub silentio." *Shalala v. Illinois Council on Long Term Care,* 529 U.S. 1, 18 (2000). "The notion that [it] created a new rule sub silentio—and in a case where certiorari had been granted on an entirely different question, and the parties had neither briefed nor argued the ... issue—is implausible." *Mickens v. Taylor,* 535 U.S. 162, 172 (2002).

En banc rehearing is needed to evaluate and resolve the Panel Opinion's conflict with *Greenough* and *Pettus.*

## III.  REASONS FOR GRANTING PANEL REHEARING

Panel rehearing is warranted to correct the Panel Opinion's error in accepting and relying on supplemental documentation concerning

attorney's fees that the District Court expressly excluded from consideration.

The Panel Opinion rejects Isaacson's "contention that class counsel failed to submit sufficient documentation to support a meaningful lodestar cross-check," explaining that the objection "was based in part on a concern expressed by the Government." Panel Opinion at 17. "What Objector omits from his argument, however, is that the Government advised the district court that any concern was 'remedied' by additional documentation that was supplied by the Plaintiffs." Panel Opinion at 17.

The Panel Opinion here overlooks the fact that the District Court expressly rejected the additional documentation—as Isaacson pointed out in his Reply Brief at pp.30–31. The District Court explained that "class members lack a meaningful opportunity to object to attorney's fees requests if counsel submits declarations raising new bases of support for the requested fees after the objection deadline." Appx0039(DE169:39). Appellees did not cross appeal the District Court's ruling on this point.

Isaacson respectfully submits that the Panel Opinion errs by relying on documentation that the District Court excluded from consideration.

## IV.  CONCLUSION

The matter should be reheard en banc.


DATED: May4, 2026


/s/ Eric Alan Isaacson

Eric Alan Isaacson

Eric Alan Isaacson
LAW OFFICE OF ERIC ALAN ISAACSON
6580 Avenida Mirola
La Jolla, CA 92037-6213
Telephone: (858) 263-9581
Email: ericalanisaacson@icloud.com

*Interested Party-Appellant*

-18

## CERTIFICATE OF COMPLIANCE

According to the software used to prepare it, this petition complies with FRAP 40(d)(3)(A) because it contains 3,387words, excluding the parts of the brief exempted by Rule 32(f). This petition complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word for Mac (Version 16.108(26041915) in 14-point Century Schoolbook font.

/s/ Eric Alan Isaacson
Eric Alan Isaacson

Eric Alan Isaacson
LAW OFFICE OF ERIC ALAN ISAACSON
6580 Avenida Mirola
La Jolla, CA 92037-6213
Telephone: (858) 263-9581
Email: ericalanisaacson@icloud.com

*Interested Party-Appellant*

19

**ADDENDUM**

Panel Opinion filed March 20, 2026

# United States Court of Appeals
# for the Federal Circuit

---

**NATIONAL VETERANS LEGAL SERVICES
PROGRAM, NATIONAL CONSUMER LAW
CENTER, ALLIANCE FOR JUSTICE,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**v.**

**ERIC ALAN ISAACSON,**
*Interested Party-Appellant*

---

2024-1757

---

Appeal from the United States District Court for the District of Columbia in No. 1:16-cv-00745-PLF, Senior Judge Paul L. Friedman.

---

Decided: March 20, 2026

---

DEEPAK GUPTA, Gupta Wessler LLP, Washington, DC, argued for plaintiffs-appellees. Also represented by JONATHAN TAYLOR; WILLIAM H. NARWOLD, Motley Rice LLC, Hartford, CT; MEGHAN OLIVER, Mt. Pleasant, SC.

ALEXIS M. DANIEL, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by KIRK THOMAS MANHARDT, YAAKOV ROTH, MARCUS S. SACKS.

ERIC ALAN ISAACSON, Law Office of Eric Alan Isaacson, La Jolla, CA, argued pro se.

_____

Before LOURIE and HUGHES, *Circuit Judges*, and FREEMAN,[1] *District Judge*.

FREEMAN, *District Judge*.

This appeal challenges the settlement of a nationwide class action claiming that the federal judiciary overcharged members of the public for access to court records through the Public Access to Court Electronic Records ("PACER") system. The suit was brought in the United States District Court for the District of Columbia by three nonprofit organizations, the National Veterans Legal Services Program, the National Consumer Law Center, and the Alliance for Justice (collectively, "Plaintiffs"), asserting that the Government exceeded its statutory authority by exacting PACER fees to fund not only the expense of operating PACER itself but also other expenses unrelated to the operation of PACER. After nearly eight years of litigation, which encompassed substantial motion practice, an interlocutory appeal, and protracted negotiations, the case settled for $125,000,000.

The district court approved the settlement, noting that hundreds of thousands of PACER users will be fully or

_____

[1]    Honorable Beth Labson Freeman, District Judge, United States District Court for the Northern District of California, sitting by designation.

substantially reimbursed for all PACER fees they incurred during the eight-year class period. The district court also approved awards of attorneys' fees and costs, as well as incentive awards[2] to each of the three nonprofit organizations that served as class representatives.

Appellant-Objector Eric Isaacson ("Objector"), proceeding *pro se*, appeals the judgment. He asserts that the district court lacked subject matter jurisdiction, abused its discretion in approving the settlement and awarding attorneys' fees, and acted contrary to Supreme Court precedent in granting the incentive awards. We affirm.

## BACKGROUND

Collection of PACER fees is governed by a statutory note to 28 U.S.C. § 1913 titled "Court Fees for Electronic Access to Information." 28 U.S.C. § 1913 note (2002) (the "§ 1913 Note"). The § 1913 Note permits the federal judiciary to "prescribe reasonable fees . . . for collection by the courts . . . for access to information available through automatic data processing equipment." *Id.* The § 1913 Note was amended by the E-Government Act of 2002, Pub. L. No. 107-347, § 205(e), 116 Stat. 2899, 2915, which added language providing that the judiciary may prescribe such reasonable fees "only to the extent necessary." *Id.*

Since 2012, PACER users have been charged $0.10 per page for downloading and printing court records. J.A. 2863, 4218. Prior to this litigation, PACER fees were used not only to fund the operation of PACER, but also to fund six other categories of expenses: (1) the Case Management and Electronic Case Filing ("CM/ECF") System; (2) Electronic Bankruptcy Noticing ("EBN"); (3) the State of Mississippi Study; (4) the Violent Crime Control Act

---

[2]    The terms "incentive award" and "service award" are used interchangeably in the parties' briefs and applicable authorities.

Notification System; (5) Web-Based Juror Services; and (6) Courtroom Technology. J.A. 5, 2865–87.

In April 2016, Plaintiffs filed this class action in the United States District Court for the District of Columbia. J.A. 107–21. Plaintiffs claimed that they had been charged PACER fees in excess of those allowed under the § 1913 Note, as amended by the E-Government Act, because the fees "far exceed the cost of providing the records" accessed through PACER. J.A. 107. They sought refund of the allegedly excessive PACER fees they had paid, asserting that the district court had subject matter jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a). J.A. 120–21. The Little Tucker Act gives district courts original jurisdiction of certain civil actions and claims against the United States that do not exceed $10,000. 28 U.S.C. § 1346(a)(2). The Plaintiffs alleged that each individual download of a public record through PACER gave rise to a separate "illegal exaction" claim falling within the Little Tucker Act's jurisdictional maximum. J.A. 120.

The case was vigorously litigated, with the parties engaging in substantial motion practice, including a motion to dismiss, class certification, and cross-motions for summary judgment. J.A. 506, 2433, 3443. The district court certified a class of PACER users and certified one class claim: "that the fees charged for accessing court records through the PACER system are higher than necessary to operate PACER and thus violate the E-Government Act, entitling plaintiffs to monetary relief from the excessive fees under the Little Tucker Act." J.A. 2433.

In our prior opinion addressing the parties' interlocutory cross-appeals of the district court's summary judgment order, we affirmed the district court's determination that the certified class claim fell within the district court's subject matter jurisdiction under the Little Tucker Act. *See Nat'l Veterans Legal Servs. Program v. United States*, 968 F.3d 1340, 1346–49 (Fed. Cir. 2020). We also affirmed

the district court's statutory interpretation of the § 1913 Note, holding that the "§ 1913 Note limits PACER fees to the amount needed to cover expenses incurred in services providing public access to federal court electronic docketing information." *Id.* at 1357. Finally, we agreed with the district court that the Government had been using PACER fees to fund categories of expenses not authorized by the § 1913 Note. *See id.*

We remanded the case to the district court in August 2020. *See id.* at 1359. After nearly two years of negotiations, the parties reached the class action settlement at issue here ("Settlement Agreement"). J.A. 3977, 3993, 3997. The Settlement Agreement provides that the United States will create a common fund of $125,000,000 to settle the claims of class members, defined as "all persons or entities who paid PACER fees between April 21, 2010, and May 31, 2018," the date the judiciary stopped using PACER fees to fund prohibited expenses (the "class period"). J.A. 12, 3977–79, 3993.

The Settlement Agreement requires that no less than 80% of the $125,000,000 common fund, or $100,000,000, be distributed to the class. J.A. 3982. Class members will not be required to submit claim forms to receive payments. J.A. 3981. The claims administrator will use information provided by the federal judiciary, which maintains records of PACER registrants and fees paid, to identify class members and distribute settlement funds. *Id.* The administrator will disburse to each class member a minimum payment equal to the lesser of $350 or the total amount of PACER fees the class member paid during the class period. J.A. 3982. The administrator will disburse any remaining settlement funds to class members who paid more than $350 in PACER fees pro rata based on the total amount of PACER fees class members paid in excess of $350 during the class period. J.A. 3982–83. Any unclaimed settlement funds will be distributed equally among class members who paid more than $350 in PACER fees during the class

period and collected their payment from the first distribution, with the caveat that class members may not recover more than the total amount of PACER fees they paid during the class period. J.A. 3983–84. The Settlement Agreement provides that the total amount of attorneys' fees, incentive awards, and administrative costs shall not exceed 20% of the $125,000,000 settlement fund, or $25,000,000, and that incentive awards shall not exceed $10,000 per class representative. J.A. 3986.

The district court granted preliminary approval of the settlement on May 8, 2023, after which notice was provided to more than 500,000 PACER account holders through email, postcards, a press release, and a banking newsletter. J.A. 4078, 4287–90. There were thirty-three opt-outs and five objections, only two of which were timely, including that of Objector. J.A. 11, 4292. The district court held a fairness hearing at which Objector appeared and presented oral argument. J.A. 1, 17–18. The district court thereafter issued a thorough and carefully reasoned order finding the settlement to be fair, reasonable, and adequate under the relevant factors identified in Rule 23(e)(2) of the Federal Rules of Civil Procedure. *Nat'l Veterans Legal Servs. Program v. United States*, 724 F. Supp. 3d 1 (D.D.C. 2024) ("Final Approval Order"). The district court also awarded attorneys' fees in the amount of $23,863,345.02, attorney expenses in the amount of $29,654.98, and settlement administration costs in the amount of $1,077,000. *Id.* at 30–31. Finally, the district court approved incentive awards in the amount of $10,000 for each of the three class representatives. *Id.* at 30.

A substantial portion of the Final Approval Order was devoted to addressing arguments raised by Objector. *See, e.g., id.* at 17–21, 23–24, 26–27, 29–30. Objector argued that class members whose aggregate claims exceeded $10,000 fell outside the subject matter jurisdiction of the district court under the Little Tucker Act; too much of the common fund was allocated pro rata, favoring large-scale

PACER users over small-scale PACER users; the attorneys' fees award should have been limited to counsel's lodestar; and incentive awards to class representatives were unlawful under Supreme Court authority. The district court rejected each of those arguments. *Id.*

Objector timely filed this appeal. This Court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(2).

STANDARD OF REVIEW

"Whether a district court has subject matter jurisdiction over an action is a question of law that we review *de novo.*" *Nat'l Veterans Legal Servs. Program*, 968 F.3d at 1347 (quoting *De Archibold v. United States*, 499 F.3d 1310, 1313 (Fed. Cir. 2007)). We apply the law of the regional circuit to substantive legal issues relating to general areas of law that are not assigned exclusively to the Federal Circuit. *United States v. One (1) Cadillac Coupe De Ville*, 833 F.2d 994, 997–98 (Fed. Cir. 1987). The approval of a class action settlement and award of reasonable attorneys' fees and service awards are reviewed for abuse of discretion. *Cobell v. Salazar*, 679 F.3d 909, 924 (D.C. Cir. 2012); *Haggart v. Woodley*, 809 F.3d 1336, 1346, 1354 (Fed. Cir. 2016).

DISCUSSION

I

We first consider whether the district court had subject matter jurisdiction under the Little Tucker Act to approve the settlement. Previously, in connection with the interlocutory cross-appeals of the district court's summary judgment order, we found that the complaint stated a claim over which the district court had Little Tucker Act jurisdiction. *Nat'l Veterans Legal Servs. Program*, 968 F.3d at 1346–49. Now, subject matter jurisdiction is challenged on different grounds. We find that the district court correctly determined that it had Little Tucker Act jurisdiction to approve the settlement.

8                                                    NVLSP v. US

With exceptions not relevant here, the Little Tucker Act grants district courts original jurisdiction, concurrent with the United States Court of Federal Claims, over any "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1346(a)(2).

Objector argues that the district court lacked jurisdiction under the Little Tucker Act to approve the settlement. He contends that some class members' total recovery exceeded $10,000, and district courts lose Little Tucker Act jurisdiction when "the recovery sought on behalf of any plaintiff or class member grows to exceed $10,000."  Appellant's Br. 18.  While Objector is correct that district courts can lose jurisdiction over the course of a case if a claim grows to exceed $10,000, here, the proper understanding of what constitutes a claim under the Little Tucker Act leads to the clear conclusion that no single claim exceeded $10,000.

The Little Tucker Act grants federal district courts jurisdiction to hear claims that do not exceed $10,000. 28 U.S.C. § 1346(a)(2).  Where the members of a class are not suing with respect to a common interest, their claims are not aggregated for purposes of evaluating Little Tucker Act jurisdiction. *See Chula Vista City Sch. Dist. v. Bennett*, 824 F.2d 1573, 1579 (Fed. Cir. 1987).  Instead, the "claim of each member of the class must be examined separately to determine whether it meets the jurisdictional requirement." *Id.*  Thus, the relevant inquiry is whether any class member had a single claim that exceeded the $10,000 limit. We conclude that none did.

A pair of cases involving airlines helps clarify the issue. *See Am. Airlines v. Austin*, 778 F. Supp. 72, 74 (D.D.C.

1991); *Alaska Airlines, Inc. v. Austin*, 801 F. Supp. 760, 762 (D.D.C. 1992), *aff'd on other grounds*, *Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791 (Fed. Cir. 1993). In both cases, airlines sued the government seeking withheld payments for tickets the government had purchased. And in both cases, each alleged overcharge for an airline ticket was treated as a separate claim for purposes of Little Tucker Act jurisdiction, although the sum of relief sought far exceeded $10,000.

In *American Airlines*, the plaintiff airlines sued the General Services Administration ("GSA") based on its withheld offsets of approximately $350,000 for unused tickets. 778 F. Supp. at 74, 76. The district court determined that it had Little Tucker Act jurisdiction because each individual ticket represented a single claim that did not exceed $10,000. *Id.* at 76. The court explained that "[t]he government cannot escape this Court's jurisdiction by taking a lump sum offset that totals over $10,000 and then alleging that the claims should be aggregated." *Id.*

In *Alaska Airlines*, the plaintiff airlines sought from GSA the return of withheld funds amounting to $100 million. 801 F. Supp. at 762. The government contested Little Tucker Act jurisdiction. *Id.* In its jurisdictional analysis, the district court characterized the $100 million as the "accumulation of disputes over alleged overcharges on thousands of individual tickets," and likewise found that each claim was based on a single ticket for less than $10,000. *Id.* Accordingly, the district court found that it had Little Tucker Act jurisdiction.[3]

---

[3]    GSA did not directly challenge the district court's definition of "claim" on appeal and instead argued that the district court lacked authority to award "money damages." *See Alaska Airlines*, 8 F.3d at 796–97. We rejected GSA's argument, holding that "the airlines received money to

In the airlines cases, each individual ticket gave rise to a separate claim for purposes of Little Tucker Act jurisdiction. So too here, each individual download of a public record for which a class member was charged gives rise to a separate claim. A class member's total recovery of more than $10,000 did not divest the district court of Little Tucker Action jurisdiction, because each PACER transaction was below the jurisdictional limit.

This interpretation of the Little Tucker Act is consistent with *United States v. Louisville & Nashville Railroad Co.*, 221 F.2d 698 (6th Cir. 1955). There, the Sixth Circuit considered whether the district court had Little Tucker Act jurisdiction over a railroad's claims against the government based on seventy-four separate bills of lading. *Id.* at 701. The Sixth Circuit determined that each bill of lading gave rise to a separate claim, and each claim was for less than the $10,000 jurisdictional limit. *Id.* at 702. As a consequence, the Sixth Circuit found that the district court had subject matter jurisdiction, although the claims in the aggregate exceeded $10,000. *Id.* at 702–03. The bills of lading in *Louisville*, like the individual plane tickets in the airlines cases, are analogous to the claims arising from the PACER transactions here.

According to Objector, *American Airlines*, *Alaska Airlines*, and *Louisville* are distinguishable because those cases were based on contract claims, while the present class action is not. Appellant's Br. 29. That argument is not well taken. As an initial matter, the relief ordered in *Alaska Airlines* was based not on the individual ticket contracts, but on whether funds were illegally withheld under the relevant statute. *Alaska Airlines, Inc. v. Austin*,

which they were entitled under the statute, not 'money damages.'" *Id.* at 797. We also noted that "the district court had concurrent jurisdiction with the Court of Federal Claims over the contracts." *Id.*

801 F. Supp. 3d  at 763; *accord Alaska Airlines, Inc. v. Johnson*, 8 F.3d at 798.  Moreover, whether the claims in the cited cases were based in contract was not determinative.  Both contract claims and illegal exaction claims can give rise to Little Tucker Act jurisdiction.  *See* 28 U.S.C. § 1346(a)(2).  In *American Airlines*, *Alaska Airlines*, and *Louisville*, the existence of subject matter jurisdiction turned on whether the at-issue transactions gave rise to separate claims, such that their aggregation did not defeat Little Tucker Act jurisdiction.

Objector asserts that this case is more akin to two cases in which Little Tucker Act jurisdiction was lost with respect to back pay claims that were under $10,000 when filed but later accrued to more than $10,000.  *See* Appellant's Br. 24 (citing *Simanonok v. Simanonok*, 918 F.2d 947, 950 (Fed. Cir. 1990); *Smith v. Orr*, 855 F.2d 1544, 1553 (Fed. Cir. 1988)).  Objector's reliance on those cases is misplaced.  As both opinions recognize, the "claim" in a back pay case is expressly defined as "the total amount of back pay the plaintiff stands ultimately to recover in the suit and is not the amount of back pay accrued at the time the claim is filed."  *Simanonok*, 918 F.2d at 950–51 (quoting *Smith*, 855 F.2d at 1553).  Thus, once a back pay claim grows to exceed $10,000, Little Tucker Act jurisdiction is lost.  Here, by contrast, each individual PACER transaction gave rise to a separate claim.  So unlike in the back pay cases, no claim here grew (or had the potential to grow) to exceed $10,000, even if an individual class member's recovery in the aggregate might have exceeded $10,000.

Objector also contends—for the first time on reply—that *Keene Corp. v. United States*, 508 U.S. 200 (1993), is "fatal" to Appellees' jurisdictional argument.  *See* Appellant's Reply Br. 6.  He asserts that *Keene* stands for the proposition that the term "claim" has an expansive meaning under the Tucker Act, 28 U.S.C. § 1491(a)(1).  Appellant's Reply Br. 5–10.  Because the Little Tucker Act is part of the same statutory scheme, he argues the same

expansive definition of claim should apply here.    Appellant's Reply Br. 10.

Objector's argument does not withstand even cursory scrutiny.    *Keene* interpreted a statute not at issue in this case, 28 U.S.C. § 1500, which restricts the jurisdiction of the Court of Federal Claims when a related action is pending elsewhere.    *Keene*, 508 U.S. at 202.    The statute was enacted "to put an end to parallel litigation seeking duplicative relief against the United States and its agents." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 318 (2011) (Sotomayor, J., concurring in the judgment).    In *Keene*, the Supreme Court interpreted the word "claim" in the context of evaluating when "two suits are for or in respect to the same claim."    *Tohono O'Odham*, 563 U.S. at 311 (discussing *Keene*).    The *Keene* Court held that, under § 1500, the jurisdictional analysis turns on whether the two claims are "based on substantially the same operative facts[,] . . . at least if there [is] some overlap in the relief requested."    *Keene*, 508 U.S. at 212.    The Supreme Court's discussion of the meaning of the term "claim" in determining whether two lawsuits are duplicative does not illuminate the jurisdictional issue here and simply has no bearing on whether a "claim" is an individual PACER transaction or an aggregate of all of a class member's PACER transactions for purposes of Little Tucker Act jurisdiction.

In sum, we hold that each individual PACER transaction gave rise to a separate claim, and since no single claim exceeded $10,000, the district court properly exercised Little Tucker Act jurisdiction.

## II

Turning to the merits, Objector urges that the district court erred in three respects.    First, he argues that the district court abused its discretion in approving the Settlement as fair, reasonable, and adequate.    Second, he asserts that the district court abused its discretion in awarding

class counsel attorneys' fees of $23,863,345.02.  Third, he contends that the district court's approval of incentive awards to the class representatives was unlawful.

## A

Objector asserts that the district court abused its discretion when it approved the Settlement Agreement as fair, reasonable, and adequate.  We disagree.

As relevant here, the Settlement Agreement provides that each class member will be reimbursed for up to $350 in class period PACER fees.  J.A. 3982.  The remainder of the settlement fund is to be distributed pro rata based on the amount of PACER fees paid in excess of $350 during the class period.  J.A. 3982–83.  Objector argues that this distribution plan will provide a windfall for class members with the largest total class period PACER fees, because those class members are likely to be large law firms that have already been reimbursed for their PACER expenses by their clients.  Appellant's Br. 40–46.

Rule 23 of the Federal Rules of Civil Procedure provides that a court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Nothing in the district court's order suggests that it abused its discretion in approving the Settlement Agreement.  To the contrary, the order, which followed a hearing on the fairness of the Settlement Agreement, reflects a careful analysis of Rule 23's enumerated factors in light of the objections.  After consideration of those factors, the district court concluded that the benefits of the Settlement Agreement were "substantial" while the likely outcome for the class if the case proceeded to trial was "uncertain."  Final Approval Order, 724 F. Supp. 3d at 21.

The thrust of Objector's argument is that the Settlement Agreement "abandoned" the interests of "the little user" in favor of large-scale users.  Appellant's Br. 44.

Objector, a solo practitioner with class period PACER fees of $3,823.50, appears to count himself among the little users. Appellant's Br. 21. He speculates that some class members have class period PACER fees that total "tens and even hundreds of thousands of dollars," and protests what he perceives to be preferential treatment for those class members. *Id.*

The district court followed the routine practice of approving settlements that provide pro rata distributions of common funds where the settlement fund is insufficient to fully reimburse all class members. Final Approval Order, 724 F. Supp. 3d at 18–21. The nature of a settlement is compromise, and the district court acknowledged that "[n]o settlement is perfect." *Id.* at 19. The district court resolved the tension between the competing interests of small-scale users and large-scale users by fully reimbursing all PACER fees paid up to $350. *Id.* at 18. The $350 threshold ensured that "the vast majority of class members [would] receive a full refund." JA. 4232. That the district court drew the line below the level that would maximize Objector's personal recovery is not sufficient to demonstrate an abuse of discretion. The district court properly found that the $350 threshold was a fair and reasonable compromise. Final Approval Order, 724 F. Supp. 3d at 18–20.

The district court also expressly considered Objector's argument that many of the class members are large law firms, which likely would have already been reimbursed for their class period PACER fees. *Id.* at 18–20. Noting that this contention "makes some sense in the abstract," the district court concluded that large law firms' claims are just as valid as all other class members' claims and the law firms were likely the only plaintiffs that could have brought those claims because they—not their clients—paid the fees. *Id.* at 20. Moreover, the district court reasoned that any potential disputes between those firms and their clients regarding the class period PACER fees are best

addressed outside the settlement of this case. *Id.* We find this conclusion reasonable.

Thus, we conclude that the district court acted well within its discretion in approving the settlement.

### B

Next, Objector contends that the district court abused its discretion in granting attorneys' fees of $23,863,345.02. He argues that the district court merely "rubber-stamped" the requested attorneys' fees. Appellant's Br. 47–67. We find that the district court applied the correct legal standard and did not abuse its discretion.

Rule 23 provides that a "court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). There are two approaches that may be used to calculate attorneys' fees in common fund cases: the percentage-of-the-fund method and the lodestar method. *See, e.g.*, *Health Republic Ins. Co. v. United States*, 58 F.4th 1365, 1371 (Fed. Cir. 2023).

The district court recognized that it must engage in "independent scrutiny of an award's reasonableness," and correctly explained that district courts have discretion to use either the percentage-of-the-fund method or the lodestar method in applying that scrutiny. Final Approval Order, 724 F. Supp. 3d at 21–23. "[B]ecause the percentage method promotes efficiency and ensures that class counsel is compensated primarily based on the result achieved," the district court opted to use the percentage method with a lodestar cross-check to "confirm that the fee awarded properly accounts for the effort [c]lass [c]ounsel expended." *Id.* at 23–24. This approach was entirely consistent with governing law. *See Health Republic*, 58 F.4th at 1371; *Haggart*, 809 F.3d at 1355.

Objector's argument to the contrary is unpersuasive because we have recognized that, in common fund cases,

"courts may determine the amount of attorney fees to be awarded from the fund by employing a percentage method." *Haggart*, 809 F.3d at 1355. Moreover, the authority on which Objector relies is inapplicable. *Perdue v. Kenney A. ex rel. Winn*, 559 U.S. 542, 546 (2010), interpreted a fee-shifting statute, which arose in an entirely distinct context from the award of attorneys' fees in common fund cases. *See Haggart*, 809 F.3d at 1355.

Nothing in the record supports Objector's contention that the district court presumed the requested attorneys' fees of 19.1% were reasonable. To the contrary, the district court tested the fee request against each of the seven factors set forth in *Health Republic*: (1) the quality of counsel; (2) the complexity and duration of the litigation; (3) the risk of nonrecovery; (4) the fee that likely would have been negotiated between private parties in similar cases; (5) any class members' objections to the settlement terms or fees requested by class counsel; (6) the percentage applied in other class actions; and (7) the size of the award. Final Approval Order, 724 F. Supp. 3d at 24–28; *see also Health Republic*, 58 F.4th at 1372 (citing *Moore v. United States*, 63 Fed. Cl. 781, 787 (2005)). For instance, the district court found that the requested percentage of the common fund was consistent with percentages awarded in comparable complex class actions. Final Approval Order, 724 F. Supp. 3d at 27–28. The district court also found that class counsel was exceptionally well qualified to handle this "reasonably complex" case where there "was a significant risk of nonrecovery" until "the moment" the settlement was reached. *Id.* at 24–25. The district court noted that the fee request was below the "typical 33% contingency fee." *Id.* at 25–26.

The district court went on to conduct a lodestar cross-check of the requested attorneys' fees, which resulted in a multiplier of 3.96. *Id.* at 28–30. A lodestar cross-check is "an approach taken in many judicial decisions, under which the reasonableness of a potential percentage-of-the-

fund fee is checked by 'dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier.'"[4] *Health Republic*, 58 F.4th at 1372 (quoting *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006)).

Contrary to Objector's assertion that an "unenhanced lodestar" is presumptively sufficient, Appellant's Br. 51–52, the normal range for a multiplier in class actions is one to four. *See Health Republic*, 58 F.4th at 1375. In *Health Republic*, which Objector acknowledges is the guiding precedent, *see* Appellant's Br. 48–49, we found that the Court of Federal Claims abused its discretion in approving a $185 million fee that was eighteen to nineteen times the lodestar without conducting a lodestar crosscheck. 58 F.4th at 1372–73. Here, by contrast, the district court acknowledged that the multiplier in this case was at the high end of the generally accepted one-to-four range. Taking into account the facts of this case, the district court found the multiplier to be warranted given the risks class counsel took in agreeing to litigate this case and the exceptional service provided to the class for more than seven years. Final Approval Order, 724 F. Supp. 3d at 29–30.

Objector's further contention that class counsel failed to submit sufficient documentation to support a meaningful lodestar cross-check was based in part on a concern expressed by the Government. Appellant's Br. 63. What Objector omits from his argument, however, is that the Government advised the district court that any concern was "remedied" by additional documentation that was supplied by the Plaintiffs. J.A. 4785–86. The district court also explained that a lodestar cross-check is just that—a cross-check—and appropriately declined to engage in "bean-counting." Final Approval Order, 724 F. Supp. 3d

---

[4] The lodestar calculation is the product of the number of hours and the rate. *Haggart*, 809 F.3d at 1355.

at 29–30 (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306–07 (3d Cir. 2005)).

At bottom, Objector's position is that an unenhanced lodestar is all that should be awarded, and nothing more. But that is not the law. *Health Republic*, 58 F.4th at 1375–76; *Haggart*, 809 F.3d at 1355. We conclude that nothing in the record supports Objector's assertion that the district court applied the wrong legal standard or abused its discretion.

## C

The district court approved incentive awards of $10,000 for each of the three class representatives. Final Approval Order, 724 F. Supp. 3d at 30. Objector contends that the district court erred by "paying" the class representatives incentive awards. Appellant's Br. 67–71. He argues that such awards are unlawful under *Trustees v. Greenough*, 105 U.S. 527 (1881), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885). We join the clear majority of our sister circuits in holding that district courts are permitted to approve incentive awards, and we find that the district court did not abuse its discretion in approving the incentive awards here.

### 1

Rule 23 provides that a district court may approve a settlement agreement "only on finding that it is fair, reasonable, and adequate" after considering whether it "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). While Rule 23 is silent with respect to incentive awards, courts have uniformly approved such awards on the basis of implementing Rule 23's goals and mandates. Indeed, soon after Rule 23's inception, courts began approving incentive awards for class representatives. *See, e.g.*, *Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974).

"Beginning around 1990," incentive awards "began to find readier acceptance." Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. REV. 1303, 1310–11 (2006). By the early 2000s, they were commonplace. *Id.* at 1311. Thereafter, circuit courts' acceptance of incentive awards in class actions was universal until 2020, when the Eleventh Circuit broke away by holding that incentive awards are unlawful *per se* under *Greenough* and *Pettus*. *See Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020), *reh'g denied*, 43 F.4th 1138 (11th Cir. 2022). The decision acknowledged that incentive awards are commonplace but dismissed the ubiquitous practice as "a product of inertia and inattention, not adherence to law." *Id.* at 1259. Contrary to the Eleventh Circuit's decision in *Johnson*, an overwhelming majority of our sister circuits have concluded that *Greenough* and *Pettus* do not preclude district courts from granting incentive awards. *See Moses v. N.Y. Times Co.*, 79 F.4th 235, 253 (2d Cir. 2023) (collecting cases).[5]

---

[5] Since *Johnson*, every circuit to have expressly considered the question of whether *Greenough* and *Pettus* preclude incentive awards has rejected the Eleventh Circuit's interpretation of those cases and found that district courts are permitted to approve incentive awards. *See Scott v. Dart*, 99 F.4th 1076, 1088 (7th Cir. 2024); *Moses*, 79 F.4th at 256; *Murray v. Grocery Delivery E-Services USA Inc.*, 55 F.4th 340, 353 (1st Cir. 2022); *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 786–87 (9th Cir. 2022). Every other circuit—with the exception of the Eleventh—still accepts the long-standing practice of permitting incentive awards. *See Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017); *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 303 (5th Cir. 2017) (vacating a class-action settlement with an incentive

Objector urges us to join the Eleventh Circuit and find that incentive awards are *per se* unlawful.[6] We decline to do so. Joining our sister circuits, we hold that *Greenough* and *Pettus* do not compel a contrary result.

In 1881, the Supreme Court in *Greenough* overturned an award for "personal services and private expenses" given to a railroad bondholder, who sued on behalf of himself and other bondholders. *Greenough*, 105 U.S. at 537. The plaintiff, who sued the Florida Railroad Company for the trustees' alleged mismanagement of the railroad's bonds, litigated the case "with great vigor and at much expense." *Id.* at 529. The district court awarded the

---

award on other grounds and affirming the same settlement after the district court provided further explanation in 742 F. App'x 846 (5th Cir. 2018)); *Pelzer v. Vassalle*, 655 F. App'x 352, 361 (6th Cir. 2016) (nonprecedential); *Tennille v. W. Union Co.*, 785 F.3d 422, 434–35 (10th Cir. 2015); *Berry v. Schulman*, 807 F.3d 600, 613–14 (4th Cir. 2015); *Cobell*, 679 F.3d at 922–23; *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (en banc).

[6] Objector also directs us to *Fikes Wholesale v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023). There, citing *Greenough* and *Johnson*, the Second Circuit explained that "[s]ervice awards are likely impermissible under Supreme Court precedent," but nonetheless concluded that "practice and usage seem to have superseded *Greenough*" and followed Second Circuit cases approving of such awards. *Id.* at 721. Later that year, in *Moses*, the Second Circuit again considered the issue of whether incentive awards are permissible and "decline[d] to depart from Rule 23's mandate, which permits fair and appropriate incentive awards." 79 F.4th at 254–55. The *Moses* court further held that "neither *Greenough* nor *Pettus* prohibits incentive awards in class actions." *Id.* at 256. Accordingly, we find Objector's reliance on *Fikes* to be misplaced.

bondholder's attorneys' fees, litigation expenses, personal fees for litigation-related travel, and a ten-year allowance for "personal services." *Id.* at 529–30.

The Supreme Court affirmed the award of attorneys' fees and litigation expenses. *Id.* at 537. However, the award for personal services and private expenses was struck down because it was held to be analogous to "a salary." *Id.* at 537–38. The Court expressed concern that such an allowance "would present too great a temptation to parties to intermeddle in the management of valuable property or funds." *Id.* at 538. For context, we note that the ten-year allowance of $2,500 for "personal services" and award of $15,003.35 for "personal expenditures," *id.* at 530, would be equivalent to more than $1.4 million today, *Scott v. Dart*, 99 F.4th 1076, 1087 (7th Cir. 2024).

Four years later, in *Pettus*, the Supreme Court confirmed that attorneys may recover expenses for their work on behalf of clients. 113 U.S. at 127–28. *Pettus* involved the "outgrowth of certain litigation in the courts of Alabama," relating to "railroad property." *Id.* at 117–18. Railroad creditors successfully sued a railroad company, requesting that their debts be satisfied. *Id.* at 118–19. In holding that the attorneys were entitled to reasonable compensation for their services, the Court reiterated *Greenough*'s conclusion that a leading plaintiff's claim for compensation for personal services and private expenses is unlawful. *Id.* at 122–23.

135 years after *Pettus*, the Eleventh Circuit held that incentive awards in modern class actions are categorically unlawful under *Greenough* and *Pettus* because they compensate class representatives. *Johnson*, 975 F.3d at 1258.

*Greenough* and *Pettus* are recognized for authorizing attorneys' fees in a common fund case. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). And they disallow salaried class representatives. As the decades since have borne out, however, *Greenough* and *Pettus* do not

illuminate the lawfulness of incentive awards in the context of modern class actions, which represent "a significant historical development." *Scott*, 99 F.4th at 1085. The lawsuits at issue in *Greenough* and *Pettus* bear little resemblance to today's class actions. Unlike in the nineteenth century when courts were "confined to the application of federal general common law and equitable principles," *Moses*, 79 F.4th at 254, there is no "federal general common law" today, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The prohibited salary-like payments to bondholder-plaintiffs in lawsuits in equity are nothing like the types and amounts of incentive awards in modern class actions. Here, for example, the relatively modest award of $10,000 for each class representative out of a $125,000,000 settlement for participation over eight years of litigation is a far cry from the "salary" prohibited in *Greenough*, which would exceed $1.4 million in today's dollars. Even the Eleventh Circuit found that today's incentive awards in class actions are only "roughly analogous to a salary" when it precluded such awards. *Johnson*, 975 F.3d at 1257.

Incentive awards are not like salaries. They are token amounts to encourage the participation of representative plaintiffs, who "invest in the case more heavily than their unnamed counterparts." *Scott*, 99 F.4th at 1086 (citing *Moses*, 79 F.4th at 253). A "named plaintiff is an essential ingredient of any class action" and incentive awards may be appropriate where they are "necessary to induce an individual" to take on this important role. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Representative plaintiffs step up, often at significant personal and financial cost, "to vindicate the rights of others." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990). Courts recognize that class representatives take on a "meaningful burden," including facing reputational risks and expending time and effort. *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 202 (S.D.N.Y. 1997). Therefore, it has been established for decades that modest

incentive awards are sometimes "appropriate to recognize the efforts of the representative plaintiffs to obtain recovery for the class." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 358 (N.D. Ga. 1993). Because class representatives take on this extra burden, incentive awards are also in line with Rule 23's requirement that class members be treated equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D); *see also Murray*, 55 F.4th at 353.

We disagree with the characterization of incentive awards in *Johnson* as improper inducement to participate in the suit, like a "bounty." 975 F.3d at 1258. The awards here at issue are so modest that the amount cannot reasonably be likened to a "bounty."

Although incentive awards are widely accepted as a mechanism for recognizing named plaintiffs, Rule 23 protects against awarding unwarranted or excessive amounts. District courts have a duty to approve settlement agreements only where they are fair, reasonable, and adequate. Courts are attentive to the possibility that incentive awards may be "'unfair' to other class members." *Smith v. Tower Loan of Miss.*, 216 F.R.D. 338, 368 (S.D. Miss. 2003). For example, the Ninth Circuit has instructed district courts to "be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). Incentive awards are prohibited where they create a conflict between the class representatives and the rest of the class or otherwise undermine the equitable treatment of class members relative to each other. *See, e.g., In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013). Rule 23's safeguards address many of the concerns animating the Supreme Court's prohibition against salary-like payments. In 1881, the Supreme Court lacked these tools, but under Rule 23, protection of the other plaintiffs' rights can be assured.

With the exception of the Eleventh Circuit, the uniform acceptance of incentive awards has been met with silence as to *Greenough*'s impact on their lawfulness. *Moses*, 79 F.4th at 255. The Supreme Court has never suggested that incentive awards in the context of modern-day class actions are unlawful. To the contrary, the Supreme Court recently noted that a "class representative might receive a share of class recovery above and beyond her individual claim." *China Agritech v. Resh*, 584 U.S. 732, 747 n.7 (2018). Objector urges us to disregard *China Agritech*, arguing that the "Supreme Court does not overrule its own decisions so nonchalantly." Appellant's Reply Br. 35. Perhaps not, but the Supreme Court appears to have regarded class action incentive awards as distinct from the salary-like payments prohibited in *Greenough*. *Greenough* and *Pettus* did not speak to Rule 23 class actions, which would not exist for another eight decades. Moreover, Objector cites no case prior to *Johnson* in which a court precluded incentive awards based on the holding in *Greenough*, and we are aware of none. *See Scott*, 99 F.4th at 1085.

Likewise, Congress and the Advisory Committee on Civil Rules have not revised the Rules to include a blanket ban.[7] *Moses*, 79 F.4th at 255. Instead, in the Class Action Fairness Act of 2005, Congress noted that class members are "sometimes harmed" where "*unjustified* awards are made to certain plaintiffs at the expense of other class members," suggesting that reasonable awards are allowed. Pub. L. No. 109-2, § 2, 119 Stat. 4 (2005) (emphasis added).

---

[7]    This inaction is notable when compared to the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, § 101, 109 Stat. 737, 743 (codified at 15 U.S.C. § 78u-4), which expressly prohibits incentive awards in connection with securities class action settlements. *See Moses*, 79 F.4th at 255.

We conclude that a *per se* exclusion of incentive awards is not mandated by *Greenough* and *Pettus* because the modest incentive awards in today's class actions bear no resemblance to the prohibited salary in *Greenough*. And, when unjustified incentive awards are sought, it is well within the purview of a district court to reject such awards under the review and approval mandates of Rule 23. Case-by-case evaluation of an incentive award is an integral part of a district court's scrutiny of a proposed class action settlement. Thus, it cannot be said that the existence of an incentive award is, itself, sufficient to undermine a settlement agreement. Accordingly, we join the vast majority of our sister circuits in holding that incentive awards are permitted so long as they are found to be reasonable by a district court.

2

Having concluded that incentive awards are not *per se* prohibited, we turn to consideration of whether the district court abused its discretion in approving the incentive awards granted to the class representatives here. We find that it did not.

Other than his argument that service awards are categorically prohibited, Objector does not contend that the district court's award of $10,000 to each class representative was unreasonable or resulted in unequal treatment of the class representatives relative to other class members. The district court recognized that incentive awards "must be reasonable and proportionate to class representatives' role in the case." Final Approval Order, 724 F. Supp. 3d at 23. After considering the time and effort expended by each class representative in this action, the district court found the incentive awards to be appropriate. *Id.* at 30. We conclude that the district court's approval of the incentive awards was well within its discretion.

CONCLUSION

We have carefully considered all of Objector's arguments and conclude that they are without merit. Thus, we affirm the district court's order.

**AFFIRMED**

# CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2026, I am electronically filing the foregoing motion with the Clerk of the Court for the U.S. Court of Appeals for the Federal Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Eric Alan Isaacson
Eric Alan Isaacson

LAW OFFICE OF ERIC ALAN ISAACSON
6580 Avenida Mirola
La Jolla, CA 92037-6213
Telephone: (858) 263-9581
Email: ericalanisaacson@icloud.com